KING & SPALDING LLP
Counsel for Gene Kaufman
Arthur Steinberg Esq.
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2158 (Telephone)
(212) 262-7402 (Facsimile)

Hearing Date and Time: July 16, 2014 at 10:00 a.m.
Objection Deadline: July 7, 2014 at 11:30 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| New York City Opera, Inc. | Case No. 13-13240 (SHL) |
| Debtor. | |

**OBJECTION OF GENE KAUFMAN TO DEBTOR'S THIRD MOTION TO EXTEND EXCLUSIVITY, AND CROSS-MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR RESPONSIBLE PERSON TO SUPERVISE THE SALE PROCESS OF THE DEBTOR'S ASSETS**

Gene Kaufman ("**GK**"), a creditor and party in interest, by his attorneys, hereby objects to the Debtor's third motion to extend exclusivity, dated June 30, 2014 ("**Exclusivity Motion**"), and cross-moves for the appointment of a Chapter 11 Trustee or responsible person to supervise the sale process of the Debtor's assets and, in support thereof, alleges as follows:

**PRELIMINARY STATEMENT**

1.  The Debtor filed for bankruptcy more than 9 months ago.

2.  When its bankruptcy case commenced, the Debtor filed the declaration of its then general manager George Steel, dated October 3, 2014 ("**Steel Declaration**"), which painted the following grim picture of the Debtor's business affairs:

    (a)  The Debtor ran out of money to continue with the 2012-2013 season. Steel Declaration, ¶ 20.

1

  (b)  The Debtor tried to raise $7 million from donors in order to keep its doors open. It fell woefully short of the mark. Steel Declaration, ¶ 19.

  (c)  Several years ago, the Debtor had an endowment fund of $55 million. Steel Declaration, ¶ 16.  Now, that sum has been drastically reduced by over 90% to less than $5 million.

  (d)  Opera is the most expensive art form to produce. Ticket sales cannot cover production expenses. The Debtor loses money on every performance. Steel Declaration, ¶ 18. It subsists on donations. Steel Declaration, ¶ 15 (ticket sales approximately $2.3 million, contributions $12.8 million).

  (e)  Absent a "dramatic change in circumstances," the Chapter 11 process will be used to orderly wind-down the Debtor's operations. Steel Declaration, ¶ 22.

  3.  Since filing for bankruptcy, the Debtor has started that wind-down process. It sold costumes and sets which undermined its future ability to put on stage productions.  It shut down substantially all of its business operations (except for the thrift shop). Exclusivity Motion, ¶ 23. Substantially the entire work force (including Mr. Steel) are no longer with the Debtor. The Spring 2014 season is lost, the Fall 2014 season is highly unlikely, and the 2015 season is in doubt.

  4.  The longer the Debtor remains shut down, the harder it will be for it to restart operations.  The Court did not approve the Debtor's motion to refund ticket purchases because of the uncertain reorganization prospects of this Chapter 11 case. Time is not on the Debtor's side. The Debtor needs to attract donors to subsidize its money losing business, and the longer it is non-operational, the likelier it is that the donors will move on to their next charitable endeavor. Similarly, any future purchaser of the Debtor's assets has to love opera and be prepared to

2

subsidize a money-losing proposition in order to achieve the greater cultural good of bringing additional opera events to the New York City community. These potential purchasers need to be shown a clearly defined, impartial, and well run sale process in order to maintain their interest in the Debtor's former business. The Debtor and its Board have squandered that opportunity, and it is time for others to see whether something beneficial can be done.

5. Throughout its bankruptcy case, the Debtor has alluded to the fact that there are people willing to invest in the Debtor to restart its operations.  GK knows that is true insofar as he has submitted an offer to privately fund the Debtor's operations.[1]  But the Debtor remains stuck in neutral, has not negotiated with GK, and has failed to "pull the trigger" on any sale proposal.  The time is well past due for GK and others to be permitted to offer a plan that allows the Debtor to fulfill its mission statement—the production of opera to the New York City community.  The Exclusivity Motion must be denied to allow that to occur.  The Debtor should not be given another 3 months of exclusivity to control this process.

6. In addition, a responsible person other than the Debtor's Board should be appointed to spear-head the over-all sale process.  That person could be a Chapter 11 Trustee, or a Chief Restructuring Officer, or someone with a different title.  But whatever title is given to that person, he/she should have control over the sale process, and that person's actions should be subject to only this Court's scrutiny, with full disclosure to the creditors and other parties in interest.  The Debtor's Board should not be in control of the sale process any longer.

7. Support for this "managerial change" can easily be premised on two basic facts. *First*, the Debtor has been in bankruptcy for over 9 months, remains shut down, and has not been able to propose, let alone consummate, a sale transaction.  Time is working against the Debtor.

---

[1] On January 10, 2014, GK submitted his proposed plan to continue operations of New York City Opera for the next three years including a possible Spring Season for 2014.  It is believed that others submitted plans at around the same time.

Its aspirational goal when it filed for bankruptcy was an orderly wind-down.  Others should be given an opportunity to do better.

8. *Second*, there is a significant overlap between the Board that presided when the $55 million endowment was dramatically eroded, and the present Board.  That is not a good track record to ask for more time to put together a deal, or control the process of how a deal is put together.[2]  By way of illustration, 65% of today's Board is the same as the Board in 2008 that used $24 million of the endowment fund to fund a renovation which caused the cancelation of a season and an $11 million operating deficit.

9. Six months has now elapsed since GK and others presented plans for the Debtor's Board to consider.   There is no reason to give the Board more time to contemplate what to do.  To the extent the Board is deadlocked or otherwise suffering from internal paralysis, the appointment of a Chapter 11 Trustee or responsible person as requested herein will remedy the situation and allow meaningful progress towards reviving the Debtor's business.

## DISCUSSION

## The Appointment of a Trustee or Other Responsible Person is Warranted

10. The appointment of an independent fiduciary is warranted in this case under either subsection (a)(1) or (2) of Section 1104(a) of the Bankruptcy Code.  Specifically, § 1104(a) provides:

---

[2] See the following articles that justifiably criticize the Board for its actions relating to the dissipation of the endowment funds. New York Times article, 10/11/2013, A Ransacked Endowment at New York City Opera, http://www.nytimes.com/2013/10/12/business/ransacking-the-endowment-at-new-york-city-opera.html?_r=0

New York Times article, 10/03/2013, New York City Opera Files for Bankruptcy, http://www.nytimes.com/2013/10/04/arts/music/new-york-city-opera-files-for-bankruptcy.html?module=Search&mabReward=relbias%3Ar

Nonprofit Quarterly article, 10/10/2013, Should New York City Opera Board be Held Accountable?, https://nonprofitquarterly.org/governancevoice/23048-should-new-york-city-opera-board-be-held-accountable.html

New York Times article, 06/15/2011, How People's Opera Orchestrated its Peril, http://www.nytimes.com/2011/06/19/arts/music/new-york-city-operas-recent-history.html?pagewanted=all

4

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1)  for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause….
>
> (2)  if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11.     Section 1104(a) allows "two discrete predicates for the appointment of a reorganization trustee." In re V. Savino Oil & Heating Co., Inc., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).  Both alternative provisions are satisfied here.

12.     "Section 1104(a) represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession." In re V. Savino Oil & Heating Co., Inc., 99 B.R. at 525.  The willingness to leave a debtor-in-possession in place is premised upon an expectation that current management can be depended upon to carry out the fiduciary responsibilities and if "the debtor-in-possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee." Id.  See also, Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985).

13.     A finding of "cause" under § 1104(a)(1) mandates the appointment of a trustee. Oklahoma Refining Co. v. Bialik (In re Oklahoma Refining Co.), 838 F.2d 1133, 1136 (10th Cir. 1988); In re V. Savino Oil & Heating Co., Inc., 99 B.R. at 525.  The list of wrongs constituting "cause" is non-exclusive. Relevant factors to the appointment of a trustee under § 1104(a)(1) in

5

this case include incompetence and gross mismanagement. The basis for such assertions include the dramatic reduction of the endowment fund, monies lost in operating the business, the shut down of the business, steps taken to pursue a wind down when there are other restructuring alternatives, and the failure to promptly conduct and conclude a sales effort.

14. Alternatively, Section 1104(a)(2) of the Bankruptcy Code allows for the appointment of a trustee even when no "cause" exists.[3] See In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989); In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Under Section 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2). See, e.g., Sharon Steel, 871 F.2d at 1226; Comm. Of Dalkon Shield Claimants v. A.H. Robins Co., 828 F. 2d 239, 242 (4th Cir. 1987). Under Section 1104(a)(2), courts look to the practical realities and necessities. In re Ionosphere Clubs, Inc., 113 B.R. at 168; In re Adelphia Comm's Corp., 336 B.R. 610, 658 (Bankr S.D.N.Y. 2006), aff'd, 342 B.R. 122 (S.D.N.Y. 2006); In re Euro-American Lodging Corp, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). Accordingly, the standard for appointment of a Chapter 11 trustee under Section 1104(a)(2) is flexible. Adelphia; 336 B.R. at 658; In re The 1031 Tax Group, LLC, 374 B.R. 78, 90-91 (Bankr. S.D.N.Y. 2007). Among the factors considered by the courts in assessing motions brought under this section include (1) the trustworthiness of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence – or lack thereof – of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment. Adelphia; 336 B.R. at 658; Euro-American, 365 B.R. at 427; 1031 Tax Group, 374 B.R. at 91.

---

[3] Should the Court decline to direct the appointment of a Chapter 11 Trustee under Section 1104(a)(1), there are grounds to support an order directing the appointment under section 1104(a)(2).

6

15.     Where, as here, the Debtor's Board has been unable to formulate a business plan and seek to reorganize for months, thereby engendering negative publicity and undermining public confidence in the Debtor's ability to reorganize, Courts have appointed a Chapter 11 Trustee pursuant to the discretionary authority allowed under Section 1104(a)(2).  See In re Ionosphere Clubs, Inc., 113 B.R. at 170-71. Accordingly, the Court should appoint a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a)(2) as such appointment is in the best interests of creditors, the estate and the New York City community.

16.     Section 105 of the Bankruptcy Code gives the Court flexibility to appoint someone other than a Chapter 11 Trustee to accomplish the same relief as GK requests herein.

## CONCLUSION

WHEREFORE, it is respectfully requested that this Court enter an order (a) denying the Exclusivity Motion, (b) appointing a Chapter 11 Trustee or responsible person to supervise the sale process, and (c) granting such other relief as the Court deems just, fair, and equitable.

Dated: New York, New York
       July 7, 2014

                                        Respectfully submitted,

                                        KING & SPALDING LLP

                                        By:  /s/ Arthur Steinberg
                                        Attorneys for GK
                                        1185 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 556-2158

                                        Michael Yetnikoff
                                        2135 N. Southport Avenue #301
                                        Chicago Illinois 60614

7