Hearing Date and Time: November 20, 2014 at 2:00 p.m. (Eastern Time)
Objection Deadline: November 13, 2014 at 4:00 p.m. (Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur J. Steinberg

*Counsel for Gene Kaufman*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**NEW YORK CITY OPERA, INC.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 13-13240 (SHL) |

**OBJECTION OF GENE KAUFMAN TO DEBTOR'S FIFTH MOTION
TO EXTEND EXCLUSIVITY, AND CROSS-MOTION TO COMPEL
THE DEBTOR TO SELL ITS ASSETS IN A COURT- SUPERVISED AUCTION**

Gene Kaufman ("**Kaufman**"), a creditor and party in interest, by its attorneys King & Spalding LLP, hereby objects to the Debtor's *fifth* motion to extend exclusivity, dated October 28, 2014 ("**Exclusivity Motion**"), and cross-moves to compel the Debtor to sell is assets in a court-supervised auction and, in support thereof, alleges as follows:

**PRELIMINARY STATEMENT**

1.    The Debtor filed for bankruptcy more than one year ago. During the last thirteen months, the Debtor has not submitted any plan for reorganization, and remains non-operational.

1

2.      Its primary assets are an Endowment Fund (as herein defined) and its' intellectual property (i.e. its' name). The value of the Debtors' intellectual property continues to erode the longer the Debtor remains non-operational.

3.      What is more, the longer the Debtor remains non-operational, the harder it will be for the purchaser of the Debtor's business to attract donors to support and sustain the business. In addition, maintaining the non-operational status quo does not help the public at large which is being deprived of the cultural benefits of another working opera company.

4.      This case is most suited for a 363 Sale – not a Plan. The Debtor's Board appears to be stuck in neutral. It is time for a different approach. The Debtor's assets should be put up for auction.

5.      Kaufman has been critical of the Board's mishandling of the Debtor's business. The Endowment Fund was frittered away by the Board. Kaufman believes that the auction should be supervised by the Court so there will be no question that a fair and balanced review will be given to the bids made by Kaufman and others.

6.      Kaufman is prepared to bid on the intellectual property alone. Kaufman is also prepared to bid on the intellectual property and the Endowment Fund.

## **FACTS**

7.      When its bankruptcy case was commenced, the Debtor filed the declaration of its then general manager George Steel, dated October 3, 2014 ("**Steel Declaration**"), which painted the following grim picture of the Debtor's business affairs:

(a)     The Debtor ran out of money to continue with the 2012-2013 season. Steel Declaration, ¶ 20.

(b)     The Debtor tried to raised $7 million from donors in order to keep its doors open. It fell woefully short of the mark. Steel Declaration, ¶ 19.

2

(c)    Several years ago, the Debtor had an endowment fund of $55 million. Steel Declaration, ¶ 16. At the time of the Steel Declaration, that sum had been drastically reduced by over 90% to less than $5 million ("**Endowment Fund**").

(d)    Opera is the most expensive art form to produce. Ticket sales cannot cover production expenses. The Debtor loses money on every performance. Steel Declaration, ¶ 18. It subsists based on donations. Steel Declaration, ¶ 15 (ticket sales approximately $2.3 million, contributions $12.8 million).

(e)    Absent a "dramatic change in circumstances," the Chapter 11 process will be used to orderly wind-down the Debtor's operations. Steel Declaration, ¶ 22.

8.    Since filing for bankruptcy, the Debtor started that wind-down process. It sold costumes and sets which undermined its future ability to put on stage productions. It shut down substantially all of its business operations. Exclusivity Motion, ¶ 27. The Spring 2014 season was lost, the Fall 2014 season was lost, and the 2015 season is in serious doubt. The longer the Debtor remains shut down, the harder it will be for it to restart operations.

9.    Throughout its bankruptcy case, the Debtor has alluded to the fact that there are people who may be willing to purchase the Debtor's business. Kaufman knows that is true insofar as he has indicated to the Board a willingness to purchase the Debtor's operations.

10.    Kaufman objected to the Debtor's *Third Motion for Entry of an Order Extending the Debtor's Exclusive Periods in Which to File a Chapter 11 Plan and Solicit Votes Thereon* [Dkt. No. 171]. His objection ("**Kaufman Objection**") included a cross-motion for the appointment of a chapter 11 trustee [Dkt. No. 174]. Ultimately, the Kaufman Objection was resolved by the *Consent Order Further Extending The Debtor's Exclusive Periods In Which To File A Chapter 11 Plan And Solicit Votes Thereon* ("**Consent Order**") [Dkt. No. 185] on July

3

16, 2014, whereby Kaufman agreed to withdraw the Kaufman Objection and the Debtor agreed: (a) "to timely provide [Kaufman] with the information it request[ed] so that [Kaufman could] finalize [his] bid for the Debtor's business, (b) to meet with [Kaufman] to discuss [his] bid for the Debtor's business, and (c) that [Kaufman] will be given the opportunity to make a 'higher or better' bid, in the event the Debtor seeks to transfer its business (either through a plan or asset sale) to a third party, other than [Kaufman]." Consent Order, at 2.

## ARGUMENT

### A. Exclusivity Should Be Terminated

11.     The Debtor has failed to "pull the trigger" on any sale proposal. The time is well past due for the Debtor to propose an exit strategy so that it can fulfill its mission statement—the production of opera to the NYC community. The Exclusivity Motion must be denied for progress to be made in the case. The Debtor should not be given another two months of exclusivity to control the sale process.

12.     The Debtor has been in bankruptcy for over thirteen months and remains shut down. Time is not on its side. Its aspirational goal when it filed for bankruptcy was an orderly wind-down. That is what should occur. A court supervised auction of its assets should take place promptly so that an opera company bearing the Debtor's name can be restarted in 2015. That is the only clear solution to salvage the Debtor's dire situation.

13.     Pursuant to Section 1121 of the Bankruptcy Code, a Debtor has the exclusive right to file a plan during the first 120 days after filing its voluntary petition. 11 U.S.C. § 1121(b). Section 1121(d)(1) provides that "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period . . . ." 11 U.S.C. § 1121(d)(1). The term "cause" is not defined in the Bankruptcy Code. *In*

4

*re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y.) *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006). While the elements that constitute "cause" for termination of the exclusive periods are not stated in the Code, "courts have held that certain factors should be considered when determining whether 'cause' exists to, on the one hand, extend, or on the other, terminate, a debtor's statutory period of exclusivity." *Id.* (internal quotation omitted). Those factors include: "(a) the size and complexity of the case; (b) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan; (c) the existence of good faith progress towards reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists." *Id.*

14. The Debtor has failed to demonstrate that cause exists to extend exclusivity. Most of the above cited factors favor the termination of exclusivity. For example: (i) this case is not large or complex; (ii) the Debtor has already received ***four*** exclusivity extensions and has failed to propose a plan, and (iii) the Debtor is not operating a business, has few assets to liquidate, and has not made good faith progress towards confirming a plan.

15. Courts have denied exclusivity extensions when debtors' cases had been pending for smaller time periods. *See, e.g., In re R.G. Pharmacy, Inc.*, 374 B.R. 484 (Bankr. D. Conn. 2007) (case pending for approximately seven months); *In re Gen. Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992) (case pending for approximately five months).

16. In sum, the Debtor cannot meet its' burden to show cause for the extension of exclusivity.

### B. Court-Supervised Auction Process Should Be Ordered

17. A competitive auction process must be mandated in order to salvage what is left of the Debtor's Estate.

18. The Board has not shown the requisite transparency, or even-handedness, to supervise the auction. The process should be played out before the Court to ensure that a fair and prompt resolution is had.

19. As noted, Kaufman will participate in the auction and bid on the assets.

### CONCLUSION

WHEREFORE, it is respectfully requested that the Court enter an order denying the Exclusivity Motion, mandate a Court supervised auction process, and grant such other relief as the Court deems just, fair, and equitable.

Dated: New York, New York
       November 12, 2014

                                              KING & SPALDING

                                               _/s/ Arthur Steinberg_____
                                              Arthur J. Steinberg
                                              King & Spalding LLP
                                              1185 Avenue of the Americas
                                              New York, New York 10036
                                              Telephone: (212) 556-2100
                                              Facsimile: (212) 556-2222
                                              Email: asteinberg@kslaw.com

                                              *Attorneys for Gene Kaufman*