**ERIC T. SCHNEIDERMAN, ATTORNEY
GENERAL OF THE STATE OF NEW YORK**
Rose Firestein
Paula Gellman
Enid Nagler Stuart
120 Broadway, 3rd Floor
New York, NY 10271
(212)416-8325
*Statutory Representative of the Ultimate
Charitable Beneficiaries*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
                                                    :
In re New York City Opera, Inc.           :          Chapter 11
                                                    :
                        Debtor.               :          Case No. 13-13240 (SHL)
                                                    :
-----------------------------------------------------X


**Memorandum of Law of the Attorney General of the State of
New York in Response to the Debtor's Motion for Orders
(I) Approving (A) Bidding Procedures, (B) Certain Bid
Protections, (C) Form and Manner of Sale Notice, and (D) Sale
Hearing Date, (II) Authorizing the Debtor to Enter into the
Assigned Contract, and (III) Authorizing the Sale of Certain
<u>Assets Free and Clear of Liens, Claims, and Encumbrances</u>**

# TABLE OF CONTENTS

Page

*Table of Authorities*

Preliminary Statement.................................................................................................1

Summary of Argument ...............................................................................................2

Argument ....................................................................................................................3

    A.    The Debtor's Donor-Restricted Funds Are Not Part of
          The Bankruptcy Estate Under 11 U.S.C. § 541(a)(1) ...........................3

         1.    The Debtor's Donor-Restricted Funds.........................................3

         2.    The Scope of the Bankruptcy Estate.............................................3

         3.    Under New York Law, a Charitable Corporation Has No Interest in
              Donor-Restricted Assets Once it Ceases its Benevolent Activities,
              Placing them Outside the Bankruptcy Estate................................5

    B.    New York's Statutory Procedure for Determining the Proper Disposition of
          the Debtor's Donor-Restricted Funds ....................................................7

Conclusion ..................................................................................................................9

*Unpublished Decisions*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*60 East 80th Street Equities, Inc. v. Sapir*,
    218 F.3d 109 (2d Cir. 2000)....................................................................................8

*Alco Gravure, Inc. v. The Knapp Foundation, Inc.*,
    64 N.Y.2d 458 (1985) .......................................................................................5

*Butner v. United States*,
    440 U.S. 48 (1979)..............................................................................................4

*Estate of Bell*, Aug. 12, 1991 N.Y.L.J. at 23 (Sur. Ct. N.Y. County)...........................6

*In re 51-53 West 129th Street HDFC, Inc.*,
    475 B.R. 391 (Bankr. S.D.N.Y. 2012)................................................................1

*In re Boston Regional Medical Center, Inc.*,
    410 F.3d 100 (1st Cir. 2005)................................................................................7

*In re Crossroad Health Ministry, Inc.*,
    319 B.R. 778 (Bankr. D.D.C. 2005), *aff'd sub nom. Bierbower v. McCarthy*, 334 B.R.
    478 (D.D.C. 2005..................................................................................................4

*In re Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.*,
    902 F.2d 1098 (2d Cir. 1990)..............................................................................4

*In re Payne*,
    512 B.R. 421 (Bankr. E.D.N.Y. 2014)................................................................4

*In re Save our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202 (Bankr. W.D. Tex. 2008)
    *aff'd on other grounds*, 2009 U.S. Dist. LEXIS 121177 (W.D. Tex. Sept. 29, 2009),
    *aff'd on other grounds sub nom. Save Our Springs Alliance, Inc. v. WSI (II)-COS*,
    *LLC*, 632 F.3d 168 (5th Cir. 2011) ......................................................................4

*Lawrence v. Commonwealth of Ky. Transp. Cabinet* (*In re* Shelbyville Rd. Shoppes
    LLC), 2013 Bankr. LEXIS 2249 (Bankr. D. Ky., June 3, 2013), *aff'd* 2014 U.S. Dist.
    LEXIS 9490 (W.D. Ky. Jan. 27, 2014)................................................................3

*Lefkowitz v. Lebensfeld*,
    68 A.D.2d 488 (1st Dep't 1979) ..........................................................................5

*Matter of the Application of Trustco Bank (Lally)*, 37 Misc. 3d 1045 (Sur. Ct.
    Schenectady County 2012), *aff'd sub nom. Matter of Lally*, 112 A.D.3d 1099 (3d
    Dep't 2013) ...........................................................................................................6

*Matter of Lally*, 112 A.D.3d 1099 (3d Dep't 2013)..............................................................8

*Matter of Estate of Coffey*,
  187 A.D.2d 929 (4th Dep't 1992)........................................................................6

*Matter of Estate of Kraetzer*,
  119 Misc. 436 (Sur. Ct. Kings County 1983) ..................................................5, 6

*Matter of Friends for Long Island Heritage*,
  80 A.D.3d 223 (2d Dep't 2010)...........................................................................7

*Matter of Goehringer*,
  69 Misc. 2d 145 (Sur. Ct. Kings County 1972) ..................................................3

*Matter of Hummel*,
  30 A.D.3d 802 (3d Dep't 2006)...........................................................................7

*Matter of Jones*,
  2006 N.Y. Misc. LEXIS 8186 (Sur. Ct. N.Y. County Mar. 9, 2006) ......................6

*Matter of Luiggi*, Nov. 7, 1994 N.Y.L.J. at 27 (Sur. Ct. New York County Nov. 7, 1994) ...........6

*Sherman v. Richmond Hose Co.*,
  230 N.Y. 462 (1921)............................................................................................5

*St. Joseph's Hosp. v. Bennett*,
  281 N.Y. 115 (1939)............................................................................................5

*Weber v. SEFCU*,
  719 F.3d 72 (2d Cir. 2013)...................................................................................4

*Wornick v. Gaffney*,
  544 F.3d 486 (2d Cir. 2008).................................................................................4

**Federal Statutes**

11 U.S.C.
  § 363(d).................................................................................................................1
  § 541(a)(1) ...................................................................................................*passim*

**State Statutes**

EPTL
  § 8-1.1(c)(1) .................................................................................................*passim*
  § 8-1.1(f) .............................................................................................................9

N-PCL

§ 102(3-a)................................................................................................................1
§ 201(b) (2013) ........................................................................................................1
§ 510........................................................................................................................1
§ 511........................................................................................................................1
§ 513(a) ....................................................................................................................5
§ 513(b) ....................................................................................................................5
§ 551(b) and (e).......................................................................................................3
§ 555(c) ....................................................................................................................2

## PRELIMINARY STATEMENT

ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, appears in this

matter as the statutory representative of the ultimate beneficiaries of the charitable gifts made to

New York City Opera, Inc., the debtor and debtor in possession in this proceeding (the

"**Debtor**").  The Attorney General submits this memorandum (1) in response to the Debtor's

motion to establish the procedure for selling the Debtor's marks, including the use of its name,

and its thrift shop[1] (the "**Debtor's motion**") and (2) to address some of the issues raised at the

hearing held in this matter on November 20, 2014, concerning the interplay between federal

bankruptcy law and New York law in determining the disposition of a charitable corporation's

donor-restricted funds once it has ceased its charitable activities, which is the case with the

Debtor.[2]  The Attorney General fully supports the Debtor's position that its donor-restricted

funds – whether restricted as to spending (endowment funds) or as to use – are not within the

scope of the Debtor's motion, but takes no position with respect to the remainder of that motion.[3]

The Attorney General submits that the donor-restricted funds are not part of the bankruptcy

---

[1] The Debtor's motion (Doc. 213, filed December 10, 2014) was denominated "Debtor's Motion for Orders (I) Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date, (II) Authorizing the Debtor to Enter into the Assigned Contract, and (III) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances."

[2] In 2014, the taxonomy of not-for-profit corporations contained in the Not-for-Profit Corporation Law ("**N-PCL**") changed.  Although the name of the Debtor's category changed from a "Type B" corporation to a "charitable corporation," the definition remained substantially unchanged: a corporation formed for "charitable purposes," which include purposes that are "charitable, educational, religious, scientific, literary, cultural or for the prevention of cruelty to children or animals." N-PCL § 102(3-a) and (3-b)(2014);  N-PCL § 201(b) (2013).

[3] The Attorney General would also have an interest in the Debtor's motion if the total value of the non-donor-restricted property to be sold constitutes "substantially all" of the Debtor's assets. N-PCL § 510.  Because the proposed Asset Purchase Agreement (exhibit C to Debtor's motion) does not specify the value of the recordings and non-exclusive use of the Debtor's marks that it proposes to sell, the Attorney General cannot determine whether this, in fact, is the case.  If the sale would dispose of substantially all of the Debtor's assets, it must comply with the state law procedure applicable to such a sale, which is set out in N-PCL § 511.  *See* 11 U.S.C. § 363(d) ; *see In re 51-53 West 129th Street HDFC, Inc.*, 475 B.R. 391, 397-98 (Bankr. S.D.N.Y. 2012).

estate and their disposition in accordance with state law should be determined by the New York

State Supreme or Surrogate's Court.

## SUMMARY OF ARGUMENT

The bankruptcy estate does not include gifts made to the Debtor that are subject to donor-imposed restrictions. These include endowment funds regardless of purpose and gifts that were not intended to be held in perpetuity but could be used only for the specific purposes set out in the gift instrument. Section § 541(a)(1) of the Bankruptcy Code defines the estate as including all of the Debtor's property *interests* but does not define what constitutes a property interest. That is determined by applying state law.

New York courts have consistently held that when a charitable corporation ceases to act in furtherance of its charitable mission, it no longer may use donor-restricted funds to pay creditors or for any other purpose. The Debtor has terminated its charitable activities and therefore cannot sell, lease, transfer or use the donor-restricted funds. It has no interest in the donor-restricted funds and they are not within the definition of the property in the bankruptcy estate.

The disposition of the Debtor's donor-restricted funds must be accomplished through a proceeding brought in state court pursuant to NY Estates, Powers and Trusts Law ("**EPTL**") § 8-1.1(c)(1). [4] The repurposing or redirection of charitable gifts that cannot be administered in literal compliance with the donor's restrictions is a purely statutory matter, but is often referred to by the common law term "**cy pres**." The Attorney General is a necessary party to these

---

[4] The Debtor could opt instead to initiate a proceeding under N-PCL § 555(c), which provides for a somewhat different procedure but applies substantially the same legal standards. The Debtor's motion indicates that it intends to proceed under EPTL § 8-1.1(c)(1).

proceedings in which the court orders the disposition of the donor-restricted funds that will

"most effectively accomplish [the gift's] general purposes."  EPTL § 8-1.1(c)(1).

## ARGUMENT

### A.    THE DEBTOR'S DONOR-RESTRICTED FUNDS ARE NOT PART OF THE BANKRUPTCY ESTATE UNDER 11 U.S.C. § 541(a)(1)

#### 1.    The Debtor's Donor-Restricted Funds

The Debtor's donor-restricted funds consist of more than 20 gifts with a current value in

excess of $4 million.  They run the gamut from endowment funds[5] with the income used to

support the Debtor's general operations to endowment funds and other gifts limited to narrow

purposes such as giving an award to a female singer who has reached an important stage in her

career, producing new operas, and rewarding mid-career singers for their commitment to the

Debtor.[6]

#### 2.    The Scope of the Bankruptcy Estate

Section 541(a)(1) of the Bankruptcy Code provides that the "estate is comprised of all the

following property, wherever located and by whomever held:  (1) Except as provided in

subsections (b) and (c)(2) of this section, all legal or equitable *interests* of the debtor in property

as of the commencement of the case."  11 U.S.C. § 541(a)(1) (emphasis added).  "Section 541(a)

'specifies that the estate is comprised of only the debtor's "*interest*" in  property, not the actual

property.'"  *Lawrence v. Commonwealth of Ky. Transp. Cabinet* (*In re* Shelbyville Rd. Shoppes,

---

[5] Pursuant N-PCL § 551(b) and (e), an "endowment fund" is a fund maintained by a charitable organization or trust that, in accordance with the donor's direction, "is not wholly expendable by the institution on a current basis."

[6] There may be some donor-restricted funds that are not yet in the Debtor's possession.  If the Debtor's right to these undistributed gifts vested before its interest in them was extinguished, they should be treated the same as the donor-restricted funds in the Debtor's possession (see discussion below at section A.3 of this memorandum).  *See Matter of Goehringer*, 69 Misc. 2d 145, 148 (Sur. Ct. Kings County 1972).  The disposition of any gifts that vested after the Debtor's interest was terminated depends on the terms of the gift instrument (a will or other document).

LLC), 2013 Bankr. LEXIS 2249, *9-*10 (Bankr. D. Ky., June 3, 2013) (emphasis in original) (*quoting In re Coomer*, 375 B.R. 800, 804 (Bankr. N.D. Ohio 2008)), *aff'd* 2014 U.S. Dist. LEXIS 9490 (W.D. Ky. Jan. 27, 2014). [7]

"Although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, state law determines the 'nature of a debtor's interest' in a given item." *In re Crysen/Montenay Energy Co. v. Esselen Assoc., Inc.*, 902 F.2d 1098, 1101 (2d Cir. 1990) (*quoting In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989)); *accord, e.g., Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008); *see Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding").

State law determines whether the debtor has a legally cognizable interest in specific property. If not, the property is not included in the bankruptcy estate. *E.g., In re Crysen/Montenay Energy Co.*, 902 F.2d at 1101; *Weber v. SEFCU*, 719 F.3d 72, 76-77 (2d Cir. 2013); *In re Payne,* 512 B.R. 421 (Bankr. E.D.N.Y. 2014). *Compare In re Save our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202 (Bankr. W.D. Tex. 2008), *aff'd on other grounds*, 2009 U.S. Dist. LEXIS 121177 (W.D. Tex. Sept. 29, 2009), *aff'd on other grounds sub nom. Save Our Springs Alliance, Inc. v. WSI (II)-COS, LLC*, 632 F.3d 168 (5th Cir. 2011) (the unpublished affirmance is not attached) (donor-restricted funds were not part of the bankruptcy estate because Texas law does not permit them to be used to pay creditors when doing so is contrary to a donor-imposed use restriction) *with In re Crossroad Health Ministry, Inc.*, 319 B.R. 778 (Bankr. D.D.C. 2005), *aff'd sub nom. Bierbower v. McCarthy*, 334 B.R. 478 (D.D.C. 2005) (donor-restricted funds were included in the bankruptcy estate because under D.C. law, donor-restricted

---

[7] Unless otherwise noted, a copy of the unpublished decisions cited in this memorandum is annexed as an appendix.

funds are an asset of the corporation that it can use to pay creditors after filing the bankruptcy

case).  Whether the donor-restricted funds are part of the Debtor's bankruptcy estate thus turns

on New York law.

> **3.      Under New York Law, a Charitable Corporation Has No Interest in
> Donor-Restricted Assets Once it Ceases its Benevolent Activities,
> Placing them Outside the Bankruptcy Estate**

In New York, charitable gifts are "not the property of the corporation"; rather, the charity

holds "the property in trust – not a trust imposed by the donor but by the [corporation's] charter

which required the corporation to perpetually devote its funds to such purposes." *Sherman v.*

*Richmond Hose Co.*, 230 N.Y. 462, 472 (1921); *accord, e.g., Lefkowitz v. Lebensfeld*, 68 A.D.2d

488, 495-96 (1st Dep't 1979), *aff'd* 51 N.Y.2d 442 (1980).[8]  The Debtor is, moreover, required to

use its donor-restricted assets only for the purposes specified by the donors.  N-PCL § 513(b);

*e.g., Alco Gravure, Inc. v. The Knapp Foundation*, 64 N.Y. 2d 458, 468 n.7 (1985); *St. Joseph's*

*Hosp. v. Bennett*, 281 N.Y. 115, 121-23 (1939); *Lefkowitz v. Lebensfeld*, 68 A.D. at 496-97 ("a

donor who attaches conditions to his gift has a right to have his intention enforced").

The seminal New York case, *Matter of Estate of Kraetzer*, 119 Misc. 436, 438 (Sur. Ct.

Kings County 1983), applied this rule honoring a donor's restriction to hold:

> the cessation of [a charitable corporation's] benevolent functions, whether or not
> accompanied by bankruptcy, has invariably been held to defeat its claim to the
> disposition notwithstanding continued corporate existence. . . .

---

[8] As shown by the cases cited below (the first of which was decided in 1983), the 1969 enactment of N-PCL
§ 513(a) did not change the principle announced in *Sherman*.  Section 513(a) provides that charitable corporations
"hold full ownership rights in any . . . [property] that may be given . . . in trust for, or with a direction to apply the
same to, any purpose specified in its certificate of incorporation, and shall not be deemed a trustee of an express
trust of such assets."  The New York Court of Appeals has recognized that this provision was intended to mandate
that corporate law, not the highly technical creation and administration requirements of trust law, applies to
charitable gifts, whether or not donated in the form of an express trust.  *Alco Gravure, Inc. v. The Knapp
Foundation, Inc.*, 64 N.Y.2d 458, 468 n.7 (1985), (*quoting* the January 13, 1969 Memorandum of the Joint
Legislative Committee to Study Revision of Corporation Laws (reprinted in McKinney's Cons. Laws of NY, Book
37, N-PCL, p XV) and *St. Joseph's Hosp. v. Bennett*, 281 N.Y. 115, 123 (1939) ("The charitable corporation is not
bound by all the limitations and rules which apply to a technical trustee.  It may not, however, receive a gift made
for one purpose and use it for another, unless the court applying the *cy pres* doctrine so commands."))

> . . .
>
> . . . [T]ermination of its benevolent services causes the loss of a charity's
> right to receive an absolute disposition or continued income, as the case may be,
> despite the prior vesting of the bequest or devise.

Because the charitable corporation lost its right to the gift by terminating the services the donor

intended to benefit, the court held that, contrary to the assertion of the bankruptcy trustee, the

restricted funds could not be used to pay creditors for obligations incurred while still operating

the now-closed hospital. *Id.* at 439.  "[T]he gift was for the objects of the corporation and not to

the corporation itself." *Id.* at 440.

This principle has been unswervingly followed by New York courts. *E.g., Matter of

Estate of Coffey*, 187 A.D.2d 929 (4th Dep't 1992) (bankruptcy trustee not entitled to gift to

hospital that ceased its hospital operations but maintained its corporate existence); *Matter of

Jones*, 2006 N.Y. Misc. LEXIS 8186 (Sur. Ct. N.Y. County Mar. 9, 2006) (closed hospital was

not entitled to the income from an endowment on the ground that its tax exempt status had not

been formally revoked, because donors of charitable gifts do not intend them to be used by an

entity that has ceased to function as a charity; the gift was intended to advance charitable

purposes not to benefit the hospital's creditors); *Matter of Luiggi*, Nov. 7, 1994 N.Y.L.J. at 27

(Sur. Ct. New York County Nov. 7, 1994) (the charitable purpose of the gift would be defeated if

it were paid to bankruptcy trustee); *Estate of Bell*, Aug. 12, 1991 N.Y.L.J. at 23 (Sur. Ct. N.Y.

County) (after the hospital at issue in *Kraetzer* terminated its operations and filed for bankruptcy,

charitable gift was redirected to another hospital, not to the bankruptcy trustee); *see Matter of the

Application of Trustco Bank* (Lally), 37 Misc. 3d 1045, 1053-54 (Sur. Ct. Schenectady County

2012), *aff'd sub nom. Matter of Lally*, 112 A.D.3d 1099 (3d Dep't 2013) (gifts to a charitable

corporation are intended to fund its charitable purposes and when those functions have ceased,

-6-

even if the corporation has not been dissolved, such gifts must be redirected to an active charity

that engages in the same functions); *Matter of Hummel*, 30 A.D.3d 802, 804 (3d Dep't 2006)

(same); *Matter of Friends for Long Island Heritage*, 80 A.D.3d 223, 235 (2d Dep't 2010) (in a

dissolution proceeding, charitable corporation was not permitted to use its donor-restricted assets

to pay secured or unsecured creditors; "We find that New York's long-standing policy honoring

donors' restrictions on the use of the property they donate has greater weight than the claims of

creditors); *see generally In re Boston Regional Medical Center, Inc.*, 410 F.3d 100, 110 (1st Cir.

2005) (bankruptcy court should not distribute a closed hospital's assets to a corporation created

solely to marshal bankrupt hospital's assets and pay them to creditors for debts incurred while

the hospital was caring for patients, because the purpose of a gift to a charitable corporation is to

further its charitable purposes, not the charitable organization itself or the satisfaction of

creditors' claims (citing *Kraetzer*); "the extension of credit is not itself an act of charity").

There can be no dispute that under New York law, the Debtor has no right to use or,

absent a state court order under EPTL § 8-1.1(c)(1), to dispose of the donor-restricted funds. It,

therefore, has no *interest* in this property and the donor-restricted funds are not part of the

bankruptcy estate as defined by 11 U.S.C. § 541(a)(1).  The disposition of the Debtor's donor-

restricted funds should be determined by the New York State Supreme or Surrogate's Court.

## B.    New York's Statutory Procedure for Determining the Proper Disposition of the Debtor's Donor-Restricted Funds

Since the Debtor's donor-restricted funds are not part of the bankruptcy estate, the Debtor

will have to initiate a proceeding in state court under EPTL § 8-1.1(c)(1) to have these funds

redirected to another charitable corporation.  To be entitled to such relief, the Debtor must show

that the specific donor-restricted gift was made for a charitable purpose, the donor had a general

charitable intent and circumstances have so changed that literal compliance with the donor's

restriction is now impracticable or impossible. *E.g., Matter of Lally*, 112 A.D.3d at 1100.  If the

Debtor can make this showing, which cannot be seriously disputed for any of its donor-restricted

funds, the court will "make an order or decree directing that such disposition be administered and

applied in such manner as in the judgment of the court will *most effectively* accomplish [the

gift's] general purposes."  EPTL § 8-1.1(c)(1) (emphasis added).

This standard for selecting an alternative recipient of a donor-restricted charitable gift

differs significantly from the one applied to a proposed sale of an asset in the bankruptcy estate

— that the sale reflects the exercise of good business judgment and will benefit the debtor.  *See*

*60 East 80th Street Equities, Inc. v. Sapir*, 218 F.3d 109, 116 (2d Cir. 2000).  If this Court were

to approve the Debtor's plan to sell the use of its name to a particular buyer, that decision would

not be dispositive (and may not be especially probative) of whether the purchaser is the

charitable corporation that can "most effectively" accomplish the general purposes of a particular

donor-restricted fund.

It is, moreover, highly unlikely that the state court will redirect all of the Debtor's donor-

restricted funds to just one charitable corporation.  There may not be a candidate that has the

Debtor's specific mission, scope and gravitas and can therefore "most effectively accomplish"

the purposes of all of the donor-restricted gifts.  The possibility that one charity may obtain the

use of the Debtor's name while another receives the bulk of its donor-restricted funds is

unavoidable due to the differing roles of the bankruptcy and state courts.  It is an artifact of our

federalist judicial system.

On a practical level, an EPTL § 8-1.1(c)(1) proceeding generally begins with the

charitable corporation proposing a disposition of its donor-restricted funds to the Attorney

General.  Ordinarily the charity and the Office of the Attorney General attempt to resolve any

differences concerning the proposal.  The charity then files its § 8-1.1(c)(1) petition, with notice

to the Attorney General who is a necessary party to the proceeding as the representative of the

ultimate charitable beneficiaries, EPTL § 8-1.1(f), and the Attorney General can interpose any

objections that were not resolved.  If the court finds the elements for relief are met, it determines

what relief, if any, is needed so the gift's purposes can be "most effectively" achieved.  The

relief fashioned by the court can include redirecting the donor-restricted funds to other charitable

corporations or modifying the restrictions.

## CONCLUSION

For the reasons set forth above, the Attorney General of the State of New York submits

that the Debtor's donor-restricted funds are neither within the scope of the Debtor's motion nor

part of its bankruptcy estate and that ultimately their disposition should be determined by the

New York State Supreme or Surrogate's Court.

Dated: December 18, 2014

Respectfully submitted,
ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for the Ultimate Charitable Beneficiaries


By: /s/ Rose Firestein
        Rose Firestein
        Assistant Attorney General
Charities Bureau
120 Broadway,  3rd Floor
New York, New York 10271
(212) 416-8325

## UNPUBLISHED DECISIONS

Attached is a copy of the following unpublished decisions that are cited in the foregoing Memorandum of Law:

*Estate of Bell*, Aug. 12, 1991 N.Y.L.J. at 23 (Sur. Ct. N.Y. County);

*Lawrence v. Commonwealth of Ky. Transp. Cabinet* (In re Shelbyville Rd. Shoppes, LLC), 2013 Bankr. LEXIS 2249 (Bankr. D. Ky., June 3, 2013), *aff'd* 2014 U.S. Dist. LEXIS 9490 (W.D. Ky. Jan. 27, 2014);

*Matter of Jones*, 2006 N.Y. Misc. LEXIS 8186 (Sur. Ct. N.Y. County Mar. 9, 2006);

*Matter of Luiggi*, Nov. 7, 1994 N.Y.L.J. at 27 (Sur. Ct. New York County Nov. 7, 1994).



3 of 4 DOCUMENTS

Copyright 1991 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

𝕹𝖊𝖜 𝖄𝖔𝖗𝖐 𝕷𝖆𝖜 𝕵𝖔𝖚𝖗𝖓𝖆𝖑

New York Law Journal


August 12, 1991 Monday

**SECTION:** Pg. 23, (col. 6) Vol. 206

**LENGTH:** 766   words

**HEADLINE:** ESTATE OF MARY E. BELL, DECEASED;
Court Decisions;
First Judicial Department;
New York County;
Surrogate's Court

**BYLINE:** Surrogate Roth

**BODY:**

Court Decisions

First Judicial Department

New York County

Surrogate's Court

   Incident to their final accountings, the trustees of two trusts created by Mary E. Bell request construction of the direction of the disposition of a portion of the remainder of each trust to a hospital that has long since ceased to function.

   On April 30, 1942, Mary E. Bell signed an Indenture by which she created an inter vivos trust. On that same dated she executed a will in which she created a testamentary trust.   Mrs. Bell died in 1955.   The remainder interests in the trusts she created are similar, but not identical.   Each trust was to terminate on the death of Mrs. Bell's daughter, Virginia D. Bell, who died on March 18,

ESTATE OF MARY E. BELL, DECEASED; Court Decisions; First Judicial Department; New York County;
Surrogate's Court New York Law Journal August 12, 1991 Monday

1990.   Each trust designates Knickbocker Hospital to receive a share of the remainder.   Knicker-
bocker Hospital ceased operations in 1979 after filing for bankruptcy.

Petitioners propose to distribute Knickerbocker Hospital's remainder interest under each trust to
the other charitable remainderman of the inter vivos trust, the Hospital for Joint Diseases.

Under the governing statute, EPTL 81.1(c)(1), the court has the authority to direct the manner in
which a charitable disposition should be administered in order to most effectively accomplish its
general purpose whenever circumstance have so changed that literal compliance with the terms of a
charitable bequest is impracticable or impossible.   However, before the court may apply such cy
pres power, it must be shown that the creator's primary purpose was a general charitable one rather
than an intent to benefit only the particular named institution (Matter of Syracuse Univ., 3 NY2d
665, 668; De Pew v. Union Free Dist. NO. 4, 41 AD2d 308, 310; Matter of Goehringer, 69 Misc 2d
145, 148).

In this respect it has been held that where a testator has apparently sought to leave money for a
charitable purpose, a liberal construction is to be given to the terms of the will in order to uphold it
and validate the bequest;; (Matter of NUrse, 35 NY2D 381, 388; Matter of Potter, 307 NY 504, 517;
Matter of Dubrow, 245 NY 469, 475; Matter of Kratzer, 119 Misc 2d 436).

In the instant case, a reading of the indenture and the will establish that Mary E. bell had a gen-
eral charitable intent. According to the inter vivos trust, one-half of the remainder was to go to
Knickerbocker Hospital and one-quarter to the hospital for Joint Diseases, with a provision for a
gift-over of the remaining one-quarter to the latter hospital if the disposition to a friend failed.   No
alternative recipient was named if the charitable gifts failed.   Under the terms of her will, half the
remainder of the testamentary trust was to go to Knickerbocker Hospital, again with no provision
for an alternative disposition if the charitable gift failed.   The failure to provide for a gift-over of
the charitable dispositions in both trusts indicates a general charitable intent), see, Matter of Fletch-
er, 280 NY 867; Matter of Price, 2674 App Div 29, affd 289 NY 751).

When Knickerbocker Hospital filed a petition in bankruptcy in 1979 and cased operations, it
occasioned a change of circumstances that makes literal compliance with th etrusts impossible if
Mrs. Bell's charitable purpose is to be effectuated.   It is not necessary that the corporation be judi-
cially dessolved to make the charitable gift ineffectual; it was rendered ineffectual by reason of the
cessation of the intended beneficiary's charitable operation (Matter of Lauterbach, NYLJ, July 11,
1980, p 7, col 3, citing Matter of Mills, 121 Misc 147).   The court in Matter of Kraetzer (119 Misc
2d 436), reached the same conclusion when considering a different bequest to this same bankrupt
charity, Knickerbocker Hospital.   In any event, this court granted Knickerbocker Hospital its final
discharge from bankruptcy on January 30, 1991 and decreed that it no longer existed.   It has no
known successors in interest.

Mrs. Bell obviously had an interest in both Knickerbocker Hospital and the Hospital for Joint
Diseases.   Although her will names only the former, both hospitals are designated remaindermen in
her inter vivos trust (and, incidentally, in the testamentary trust created by her husband under the
will be executed at the same time).   In order to effectuate Mrs. Bell's charitable purpose, Knicker-
bocker Hospital's remainder interest in each trust should be distributed to the Hospital for Joint
Diseases (Estate of Vaun G. McNeile, NYLJ, Jan 5, 1991, p 11, col 5).   Based upon the foregoing,
the application is granted.   The accounts, being proper, are settled.

Submit order on notice.

ESTATE OF MARY E. BELL, DECEASED; Court Decisions; First Judicial Department; New York County;
Surrogate's Court New York Law Journal August 12, 1991 Monday

**LOAD-DATE:** August 2, 2011



**IN RE: SHELBYVILLE ROAD SHOPPES, LLC, Debtor; WILLIAM
W. LAWRENCE AS TRUSTEE FOR THE ESTATE OF SHEL-
BYVILLE ROAD SHOPPES, LLC, Plaintiff v. THE COMMON-
WEALTH OF KENTUCKY TRANSPORTATION CABINET, De-
fendant**

**CASE NO. 11-30124, CHAPTER 7, ADV NO.: 12-3049**

**UNITED STATES BANKRUPTCY COURT FOR THE WESTERN
DISTRICT OF KENTUCKY**

**2013 Bankr. LEXIS 2249**

**June 3, 2013, Decided
June 3, 2013, Filed, Entered**

**SUBSEQUENT HISTORY:** Affirmed by Lawrence v. Commonwealth of Ky. Transp. Cabinet,
2014 U.S. Dist. LEXIS 9490 (W.D. Ky., Jan. 27, 2014)

**PRIOR HISTORY:** Lawrence v. Kentucky Transp. Cabinet (In re Shelbyville Rd. Shoppes, LLC),
486 B.R. 848, 2013 Bankr. LEXIS 648 (Bankr. W.D. Ky., 2013)

**COUNSEL:**   [*1] For Shelbyville Road Shoppes, LLC (11-30124), Debtor: Robert W. (Tad) Ad-
ams, III, Louisville, KY.

For William W. Lawrence (11-30124), Trustee: Robert W. (Tad) Adams, III, William W. Law-
rence, Louisville, KY.

For William W. Lawrence (12-03049), Plaintiff: Robert W. (Tad) Adams, III, Louisville, KY.

For The Commonwealth of Kentucky Transportation Cabinet (12-03049), Defendant: Taylor Ham-
ilton, John A. Majors, Bradley S. Salyer, Louisville, KY.

**JUDGES:** Alan C. Stout, United States Bankruptcy Judge.

**OPINION BY:** Alan C. Stout

**OPINION**

## MEMORANDUM

This matter comes before the Court on the Motion for Partial Summary Judgment (Docket No. 14) filed by the Plaintiff, William Lawrence, the Chapter 7 Trustee for the Estate of Shelbyville Road Shoppes, LLC (the "Trustee"). The Commonwealth of Kentucky Transportation Cabinet (the "Cabinet") has responded (Docket No. 45) and the Trustee has replied to the response (Docket No. 47). This matter is now ripe for adjudication. For the following reasons, the Trustee's Motion for Partial Summary Judgment will be denied.

## JURISDICTION

Determinations for turnover of property of the estate are core proceedings under 28 U.S.C. § 157(b)(2)(E). The Court has jurisdiction over core proceedings under [*2] 28 U.S.C. §§ 1334 and 157(a).

## FACTUAL AND PROCEDURAL BACKGROUND

On July 18, 2007, a Purchase Agreement -- Public Sale (the "Purchase Agreement") was entered into between Eagle Development, LLC ("Eagle"), assignor of the Debtor, Shelbyville Road Shoppes, LLC (the "Debtor"), and the Cabinet whereby Eagle agreed to pay the sum of $4,812,874.65 to purchase certain property owned by the Cabinet. Pursuant to the Purchase Agreement, Eagle paid a non-refundable down-payment deposit to the Cabinet in the sum of $962,574.93 (the "Deposit"). The Purchase Agreement was assigned to the Debtor on August 7, 2007.

The Debtor filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code, on January 11, 2011, and the Trustee was appointed as Chapter 7 Trustee for the Bankruptcy Estate. The Trustee has made demand that the Cabinet return the Deposit to the Bankruptcy Estate. To date, the Cabinet has refused to return the Deposit to the Trustee.

On May 23, 2012, the Trustee initiated this Adversary Proceeding alleging causes of action against the Cabinet on four separate theories: Count I -- Turnover of Property to the Estate pursuant to 11 U.S.C. §§ 541 and 542; Count II -- Fraud in [*3] the Inducement; Count III -- Breach of Contract; and Count IV -- Unenforceable Penalty. In the Prayer for Relief, the Trustee sought a return of the Deposit and that the Cabinet's claim be determined as zero. The Trustee also sought attorney's fees, interest on the Deposit, and an award of punitive damages.

On June 20, 2012, the Cabinet filed its answer to the complaint. The answer asserted numerous defenses, including that the causes of action are barred by the doctrine of sovereign immunity and that the Trustee's causes of action are barred by the Eleventh Amendment to the United States Constitution.

On October 17, 2012, the Cabinet moved for partial judgment on the pleadings. The Cabinet sought a judgment as to Counts II - IV. The Trustee opposed the motion. Upon consideration of the motion, the response, and the applicable law, on February 21, 2013, the Court entered an Order granting the motion for partial judgment on the pleadings. With the resolution of Counts II - IV, the only remaining allegations are contained in Count I (turnover). The Trustee has now moved for Partial Summary Judgment with respect to that Count. The Trustee seeks a judgment 1) ordering the Cabinet to turnover [*4] the Deposit as property of the Bankruptcy Estate; 2) allowing the Cabinet, as an unsecured creditor, the opportunity to seek a determination and allowance of its claim for damages against the Debtor, if any, as of the day immediately before the date of the filing of the Pe-

tition; and (3) declaring as void as an unenforceable penalty the contract provision providing for forfeiture of the Deposit. [1]

> 1    The Trustee's request for a determination declaring as void as an unenforceable penalty the contract provision providing for forfeiture of the Deposit was the allegation contained in Count IV of the complaint and addressed in the Motion for Partial Judgment on the Pleadings.

The Cabinet responded that the Deposit is not property of the estate, and thus, it is not subject to turnover under § 542 of the Bankruptcy Code. The Cabinet contends the Trustee takes no greater interest in the Deposit than the Debtor, and under state law, the Debtor did not have the right to possess the Deposit. Consequently, the Cabinet contends the Trustee does not have the right to compel turnover of the Deposit. Finally, the Cabinet contends that the deemed rejection of the purchase agreement, an executory contract,    [*5] does not permit the Trustee to unwind the pre-petition performance and rescind the Purchase Agreement.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." Jones v. Union County, 296 F.3d 417, 423 (6th Cir. 2002). See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997) (emphasis added).    [*6] In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir. 1996). Absent such evidence from the nonmoving party in a motion for summary judgment, the Court need not comb the entire record to determine if any of the available evidence could be construed in such a light. See In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (holding that the "trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact").

## DISCUSSION

This is a turnover action pursuant to 11 U.S.C. § 542. There is only one discernible issue with regard to liability under this statute: whether the Deposit constitutes property of the estate under Bankruptcy Code § 541 as of January 11, 2011, the date the Debtor filed its bankruptcy petition.

The Trustee brings his Complaint for "Turnover of the Deposit to the Estate" under §§ 541 and 542. (Doc. No. 1). Subsection (a) of § 542 provides:

Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian,   [*7] in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Subject to some limitations, by its very terms, § 542(a) allows a trustee to obtain the turnover of any property which can be used, sold, or leased or which the debtor can claim as exempt. Pursuant to § 363(b)(1), a trustee can only use, sell, or lease property of the estate. Under § 522(b)(1), a debtor may only exempt property of the estate. Section 541 defines property of the estate as being comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."

Section 542 is dependent upon § 363 and § 522, while these two sections are dependent upon § 541 for its definition of property of the estate. "Thus, although not specifically stated in § 542, fundamental to the concept of [turnover] is that the asset to be turned over must be property of the debtor's bankruptcy estate." In re Coomer, 375 B.R. 800, 803-804 (Bankr. N.D. Ohio 2007)   [*8] (citing In re Sims, 278 B.R. 457, 475 (Bankr. E.D. Tenn. 2002).

The Trustee correctly notes that property of the estate under the Bankruptcy Code should be defined broadly. United States v. Whiting Pools, Inc., 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) (observing that "Congress intended a broad range of property to be included in the estate" because "reorganization ... would have small chance of success ... if property essential to running the business were excluded from the estate")). Section 541 fixes property of the estate as of the date of filing. In re Seafort, 669 F.3d 662 (6th Cir. 2012).

Under § 541(a), the determination as to whether a debtor's interest in property constitutes estate property is a question of federal law. However, state law controls what interest, if any, a debtor actually has in property. In re Greer, 242 B.R. 389, 394 (Bankr. N.D. Ohio 1999) citing Butner v. United States, 440 U.S. 48, 54--55, 99 S.Ct. 914, 917--18, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an   [*9] interested party is involved in a bankruptcy proceeding."). After the state law determination is made, "federal bankruptcy law [then] dictates to what extent that interest is property of the estate." In re Thomas, 883 F.2d 991, 995 (11th Cir. 1989).

The Trustee is attempting to reacquire these funds on behalf of the Debtor's bankruptcy estate. He asserts that the Debtor's interest in the Deposit is sufficient to characterize the Deposit as property of the estate and thus subject to turnover under § 542. The Cabinet, on the other hand, maintains that the Debtor's interest in the Deposit did not include a possessory interest, that the Trustee acquires no greater interest in property than the Debtor, and thus, since the Debtor did not have the right to possess the Deposit, the Trustee may not reacquire these funds on behalf of the estate.

Upon consideration of these theories, the Court finds that the Cabinet's position is better supported by the law. Upon examination of the Purchase Agreement and applicable Kentucky law, the Court must conclude that the Deposit itself is not property of the estate. Section 541(a) "specifies

that the estate is comprised of only the debtor's "*interest*" in   [*10] property, not the actual property. This distinction is more than just academic." Coomer at 804 (emphasis added).

Section 541 cannot be used to expand the debtor's rights in property. It cannot grant the debtor or a trustee, who stands in the debtor's shoes, more rights in property than it would have possessed under state law. A basic tenet of bankruptcy law is that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. In re Lyons, 957 F.2d 444 (7th Cir. 1992). A "trustee takes the property subject to the same restrictions that existed at the commencement of the case. To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate." In re Sanders, 969 F.2d 591, 593 (7th Cir. 1992) (citations and quotations omitted). Section 542 "cannot be used to broaden the trustee's interest in the refund . . . or in any other estate property." In re Graves, 609 F.3d 1153 (10th Cir. 2010). This express limitation on a trustee's rights in property of the estate has been referred to as "[o]ne of the central precepts of bankruptcy law." Weinman v. Graves, 609 F.3d 1153, 1156 (10th Cir. 2010).

The   [*11] Lyons case involved a debtor's accumulated contributions in the State Employees' Retirement System. Employees of the State of Illinois were required to participate in the program with mandatory contributions deducted from wages. Employees were allowed to withdraw their contributions only upon termination of employment, retirement or disability. Lyons, 957 F.2d at 445. The Chapter 7 trustee filed a complaint in the bankruptcy court pursuant to § 542 seeking turnover of the debtor's contributions. The Seventh Circuit held that the trustee could not compel turnover of the debtor's contributions because, until her termination of employment, retirement or disability, the debtor had no present right to withdraw those contributions. "Even if Lyons' contributions to SERS are property of her estate, she has no right to a distribution of the funds until her termination of employment, retirement or disability. Therefore, because Lyons has no present right to withdraw her contributions, neither does the Trustee." Id. at 445-46.

In this case, like in the Lyons case, the Debtor has no present right to have the Deposit refunded. Under state law, pursuant to the contract, the Debtor's rights in the   [*12] Deposit were limited to two options: (1) it would either be applied to the purchase price balance at the closing on the Property (which cannot happen now due to the Trustee's rejection of the contract); or, (2) it would "be forfeited to the Seller as liquidated damages is (sic) the Purchaser fails to consummate this sales transaction as agreed herein." The contractual language in Purchase Agreement is unambiguous and unequivocal. The Trustee has not pointed to any law, nor has the Court found any law, that would allow the Debtor to recover and regain possession of these funds under state law. Simply stated, there is no provision in the Purchase Agreement or under state law authorizing the Debtor to regain possession. This same restriction also applies to the Trustee.

In United States v. Neary (In re Armstrong), 206 F.3d 465, 472 (5th Cir. 2000), the Fifth Circuit also addressed § 542 issues. That court held that § 542(a) could not be used to avoid a statute of limitations contained in a tax refund statute. The Fifth Circuit stated that "[b]ecause that right [to a refund] is created and circumscribed by [statute] and nothing explicitly changes its terms, § 542(a) cannot be read to expand   [*13] the right to file for a refund to give the trustee unlimited time so long as the bankruptcy continues," id. at 472. Moreover, "[b]ecause the debtor does not have a continuing interest in the tax overpayment under § 541(a)(1), other than that created by [the refund statute], *the trustee cannot use § 542(a) to create interests not otherwise in existence*." Id. at n. 6 (emphasis added).

Similarly, in In re Coomer, 375 B.R. 800 (Bankr. N.D. Ohio 2007), the trustee attempted to secure turnover of the debtor's interest in a residential security deposit. In rejecting the trustee's contention that § 542(a) gave him a substantive right to the deposit, the court stated:

> Section 542(a) is best viewed as an enabling provision, allowing the trustee to obtain possession of property only where the debtor otherwise had a right to possess the property. But where a debtor, and thus the trustee, does not have a right to possess or use property at the commencement of the case, the right generally cannot be acquired through a turnover action under § 542(a). That is, a bankruptcy trustee may not compel the turnover of property pursuant to § 542(a) if the debtor had no right to obtain the property.

Id. at 806   [*14] (citation omitted).

Like the trustee in the Coomer case, the Trustee here seemingly argues that, despite his *limited* interest in the Deposit, § 542(a) provides him a substantive right to the security deposit. The Trustee takes the position that any interest is sufficient to require a turnover of the Deposit. However, like the trustee in Coomer, the Trustee's position is misplaced. In this case, at no time during the case up to the filing of the turnover action, did the Debtor have the right to obtain the Deposit, and thus, the Trustee cannot now compel turnover of the Deposit from the Cabinet. See also In re Lauria, 243 B.R. 705, 709 (Bankr. N.D. Ill. 2000) ("if the debtor does not have the right to possess or use the property at the commencement of a case, a turnover action cannot be used to acquire such rights.").

At the hearing on the Trustee's motion, the Trustee tried to distinguish Coomer by stating that the deposit in that case was in the nature of a security deposit, while the Deposit in this case is not a security deposit. The Court sees this as a distinction without a difference. In both cases, funds were transferred to another pursuant to an agreement, to be held by the other   [*15] pending the performance of an action by the debtor.

In a case with almost identical facts as presented in this case, in Georgia Heritage Associates, LP v. Westfields Apartments, LLC (In re Westfields Apts., LLC), 2010 Bankr. LEXIS 1789, 2010 WL 2179622 (Bankr. S.D. Ga. 2010), the bankruptcy court concluded that funds the debtor had deposited into escrow [2] were not property of the estate because "*there were no circumstances under which the Debtor was entitled to distribution of the Funds under the Sales Contract*; the Funds were to be paid over to Georgia Heritage regardless of whether the Sales Contract closed." 2010 Bankr. LEXIS 1789, [WL] at *5 (emphasis added). The Westfields court distinguished the cases cited by the debtor which had held that escrow funds were property of the estate because, in those cases, those debtors had a right to return of the funds upon the occurrence of a condition specified in their respective contracts. Id. at n. 7. Because "the Funds were outside of the Debtor's control and could have been distributed only to Georgia Heritage under the Sales Contract, the Funds are not property of the estate under § 541." 2010 Bankr. LEXIS 1789, [WL] at *5. In this case, like the Westfields case, the Deposit was outside the Debtor's control on   [*16] the petition date, there were no circumstances under which the Debtor was entitled to distribution of the Deposit under the Purchase Agreement, and, thus, the funds are not property of the estate. See also In re O.P.M. Leasing Services, Inc., 46 B.R. 661, 668 (Bankr. S.D.N.Y. 1985) (concluding escrow funds were not property of the estate because the debtor "retained only a contingent right to the funds which was of no value to the estate because it was not an interest which a judgment creditor of OPM could reach.").

2    At different points in this proceeding, the Trustee has alleged that the Deposit in this case are funds being held in an escrow account, and thus title to the funds remain with the Debtor. Mobile Companies, Inc. v. American States Ins. Co., 823 S.W.2d 934 (Ky. App. 1991). However, as pointed out by the Cabinet, the requirements for an escrow account are not present here as there was never a transfer to a third person. Home Ins. Co. of New York v. Wilson, 210 Ky. 237, 275 S.W. 691 (Ky. App. 1925). Even if the Deposit had been placed in an escrow account, and the Debtor retained title, "funds that are deposited into an escrow account by a debtor, for the benefit of others,    [*17] cannot be characterized as property of the estate." In re Scanlon, 239 F.3d 1195, 1198 (11th Cir. 2001) (quoting In re S.E.L. Maduro, 205 B.R. 987, 990-91 (Bankr. S.D. Fla. 1997).

The Court will finish by addressing the Trustee's reliance on Whiting Pools from the Supreme Court. In the Whiting Pools case, the Supreme Court held that lien creditors who had seized property prior to bankruptcy, leaving debtors with the right of redemption only, may be compelled to turn over possession of property to the estate pursuant to § 542. Whiting Pools at 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). According to the Court: "As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens." 462 U.S. at 206, 103 S.Ct. at 2314. The Court held:

> § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and those rights replace the protection afforded by the possession.

462 U.S. at 207, 103 S.Ct. at 2315. Under the holding    [*18] of Whiting Pools, a trustee may compel turnover of property of the estate only so long as the debtor could have obtained possession of the property. Conversely, "where the debtor had no right to the property, and thus could not have obtained the property through legal process, § 542(a) will not afford the trustee a substantive right to the property." Coomer at 807. In this case, the Debtor had no right to the Deposit, and could not have obtained the Deposit through a legal process. As such, § 542 does not grant the Trustee the right to compel turnover of the Deposit.

In conclusion, under § 541(a), the Trustee's right to the Deposit held by the Cabinet is derived solely from the Debtor's interest in the deposit. The Debtor's "interest" in the Deposit does not include the right to have the Deposit returned under either the terms of the Purchase Agreement or under applicable state law. As such, the Cabinet may not be compelled to turnover the Deposit. Section 542(a) does not provide the Trustee a substantive right for the immediate possession of the security deposit held by the Cabinet.

Accordingly, based upon these findings, the Court is unable to find that, pursuant to Fed. R. Bankr. P. 7056,    [*19] the Trustee is entitled to judgment as a matter of law and his Motion for Partial Summary Judgment must be denied. An Order in accordance with this Memorandum will be entered this same date.

/s/ Alan C. Stout

Alan C. Stout

2013 Bankr. LEXIS 2249, *

United States Bankruptcy Judge

Dated: June 3, 2013

## **ORDER**

Pursuant to the Memorandum entered this same date, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that the Trustee's Motion for Partial Summary Judgment be, and is hereby, **DE-NIED**.

It is **FURTHER ORDERED** that the Court will hold a status conference in this case on June 18, 2013 at 9:00 a.m. (EST) in Courtroom #1, Fifth Floor, Gene Snyder U.S. Courthouse, 601 West Broadway, Louisville, Kentucky.

/s/ Alan C. Stout

Alan C. Stout

United States Bankruptcy Judge

Dated: June 3, 2013



WILLIAM W. LAWRENCE, as Trustee for the Estate of SHEL-
BYVILLE ROAD SHOPPES, LLC, APPELLANT v. COMMON-
WEALTH OF KENTUCKY TRANSPORTATION CABINET, AP-
PELLEE

CIVIL ACTION NO. 3:13CV-971-S

UNITED STATES DISTRICT COURT FOR THE WESTERN DIS-
TRICT OF KENTUCKY

2014 U.S. Dist. LEXIS 9490; Bankr. L. Rep. (CCH) P82,571

January 27, 2014, Decided
January 27, 2014, Filed

**PRIOR HISTORY:**   [*1]
    BANKR. ACTION NO. 11-30124.
Lawrence v. Commonwealth of Ky. Transp. Cabinet (In re Shelbyville Rd. Shoppes, LLC), 2013
Bankr. LEXIS 2249 (Bankr. W.D. Ky., June 3, 2013)

**COUNSEL:** For William W. Lawrence, As the Trustee for the Estate fo Shelbyville Road Shoppes,
LLC, estate of Shelbyville Road Shoppes, LLC, Appellant: Carolyn Marie Bauer, Robert W. Adams
, III, LEAD ATTORNEYS, Adams Law Group, Louisville, KY.

For Commonwealth of Kentucky Transportation Cabinet, Appellee: Bradley S. Salyer, John A.
Majors, Megan M. McLain, LEAD ATTORNEYS, DelCotto Law Group PLLC, Lexington, KY;
Taylor McCoy Hamilton, LEAD ATTORNEY, Morgan & Pottinger, PSC, Louisville, KY.

For Shelbyville Road Shoppes, LLC, Debtor: William W. Lawrence, LEAD ATTORNEY, Louis-
ville, KY.

**JUDGES:** Charles R. Simpson III, Senior United States District Judge.

**OPINION BY:** Charles R. Simpson III

**OPINION**

<u>**MEMORANDUM OPINION AND ORDER**</u>

2014 U.S. Dist. LEXIS 9490, *; Bankr. L. Rep. (CCH) P82,571

This matter is before the court on appeal from a decision of the United States Bankruptcy Court that a $962, 574.43 good faith deposit paid under a real estate purchase assigned to Shelbyville Road Shoppes, LLC ("the Debtor") is not property of the Debtor's estate subject to turnover under 11 U.S.C. §§ 541 and 542.[1]

1    This ruling of the Bankruptcy Court (Adv. No. 12-3049, DN 55) disposed of the single remaining claim (Count I) of the Adversary Proceeding. The dismissal of Counts II-IV   [*2] is not before the court.

On appeal from a decision of the Bankruptcy Court, the district court reviews findings of fact under the clearly erroneous standard and conclusions of law *de novo. In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002).

The underlying facts are not in dispute.[2]

2    The factual background is taken from the Bankruptcy Court's decision. References to that decision and other documents will be cross-referenced to the appellate record ("AR")

On July 18, 2007, a "Purchase Agreement - Public Sale" ("Purchase Agreement") was entered into between Eagle Development, LLC ("Eagle") and the Commonwealth of Kentucky Transportation Cabinet ("Cabinet") whereby Eagle agreed to pay the sum of $4,812,874.65 to purchase certain property owned by the Cabinet. Pursuant to the Purchase Agreement, Eagle paid a good faith deposit of $962,254.43 to the Cabinet. On August 8, 2007, the Purchase Agreement was assigned to the Debtor.

The Agreement contains the following pertinent provisions:

As required by the terms of this sale, a good faith deposit is hereby made in the amount of $962,574.93 to be held in a special deposit trust fund by the Transportation Cabinet, Division of Right of Way &   [*3] Utilities, pending the arrangement of a closing date, to be no sooner than 60 days from date written notice is given by Transportation Cabinet to Purchaser, unless otherwise agreed upon by Purchaser and Transportation Cabinet, at which time, upon delivery of the deed, the balance of $3,850,299.72 will be due and payable. The deed shall be a special warranty deed.

...The Purchaser agrees that the above mentioned good faith deposit will be forfeited to the Seller as liquidated damages is [sic] the Purchaser fails to consummate this sales transaction as agreed herein.

AR 23, Compl., DN 1, Ex. A at 1.

On July 13, 2009, the Debtor and the Cabinet executed an addendum to the purchase agreement which, in pertinent part, extended the deadline for closing for one year to enable the Debtor to seek a zoning change for the property. The addendum further provided for an additional six-month extension should the parties agree to extend the time beyond the one year period.

The Debtor filed a voluntary petition for Chapter 7 relief on January 11, 2011, two days before the expiration of the eighteen-month extension to close the transaction. William W. Lawrence was appointed as Chapter 7 Trustee ("Trustee")   [*4] for the Bankruptcy Estate.

2014 U.S. Dist. LEXIS 9490, *; Bankr. L. Rep. (CCH) P82,571

The Trustee made a demand that the Cabinet turn the good faith deposit over to the bankruptcy estate. The Cabinet refused. The Trustee then instituted an adversary proceeding seeking, among various theories of relief, a turnover of the property to the estate pursuant to 11 U.S.C. § 542.

Property of the bankruptcy estate is defined in 11 U.S.C. § 541. This provision must be read in conjunction with § 542. As noted in *In re Coomer*, 375 B.R. 800, 803 (Bankr. N.D. Ohio 2007), '[g]enerally, a trustee can only use or sell property of the estate," and "although not specifically stated in § 542, fundamental to the concept of "Turnover" is that the asset to be turned over must be property of the debtor's bankruptcy estate. [citation omitted]."

The turnover provision, § 542(a), provides, in pertinent part:

> ...an entity...in possession, custody, or control, during the case, of property that the debtor may use, sell, or lease under section 363 of this title...shall deliver to the trustee, and account for, such property of the value of such property...

The court stated in *Coomer*, 375 B.R. at 806:

> Section 542(a) is best viewed as an enabling provision, allowing the trustee to  [*5] obtain possession of property only where the debtor otherwise had a right to possess the property. But where a debtor, and thus a trustee, does not have the right to possess or use the property at the commencement of the case, the right generally cannot be acquired through a turnover action under 542(a). That is, a bankruptcy trustee may not compel the turnover of property pursuant to § 542(a) if the debtor had no right to obtain the property.

The Bankruptcy Court determined that

> At no time during the case up to the filing of the turnover action, did the Debtor have the right to obtain the Deposit, and thus, the Trustee cannot now compel turnover of the Deposit from the Cabinet...The Debtor's "interest" in the Deposit does not include the right to have the Deposit returned under either the terms of the Purchase Agreement or under applicable state law. As such, the Cabinet may not be compelled to turnover the Deposit. Section 542(a) does not provide the Trustee a substantive right for the immediate possession of the security deposit held by the Cabinet.

AR 326, 328, Bankr. Mem., pp. 8, 10.

The property of the bankruptcy estate is comprised of "all legal or equitable interests of the debtor  [*6] in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541, however, does not expand the debtor's interest in property. The existence and extent of a debtor's interest in property is defined by applicable state law; in this case, Kentucky law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). "A trustee takes the property subject to

2014 U.S. Dist. LEXIS 9490, *; Bankr. L. Rep. (CCH) P82,571

the same restrictions that existed at the commencement of the case. To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate." *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992)(citations omitted).

The Trustee appealed this decision of the Bankruptcy Court, urging a number of principles of Kentucky law that he contends would permit the Debtor to regain possession of the deposit, and therefore, standing in the Debtor's shoes, enable the Trustee to do so. "The burden of proof in a turnover proceeding under Code § 542 is at all times on the party seeking turnover. That party must establish a prima facie case." *In re Weiss-Wolf, Inc.* 60 B.R. 969, 975 (Bankr. S.D.N.Y. 1986), *citing Gorenz v. State of Illinois Dept. of Agriculture*, 653 F.2d 1179 (7th Cir. 1981).

The  [*7] term "regain" is a bit of a misnomer in that it was Eagle who paid the deposit. "For good and valuable consideration," Debtor was assigned "all of Assignor's right, title and interest in, under and to that certain Sealed Bid (the "Bid")...including, without limitation, all powers, privileges, claims, remedies, actions, causes of action and choses in action of the successful bidder under the Bid." AR 32, 33. The concluding paragraph of the Assignment states "In consideration of the above and other good and valuable consideration, Shelbyville Road Shoppes, LLC hereby assumes the above assigned Bid and agrees to perform and keep all covenants, agreements and obligations of the Assignor as the successful bidder thereunder." *Id.* The Trustee's Complaint alleges that:

> 1. In July, 2007, KTC advertised a public sale by sealed bid of the property...

> 2. Eagle Development...entered into the Purchase Agreement for Public Sale resulting from Bid Invitation No. 07-07-01 for the Property...

> 3. ...Eagle Development assigned all of its rights in the Purchase Agreement to the Debtor. The Assignment, however, memorializes an assignment of Eagle's rights in, under, and to something called the "Sealed Bid."  [*8] The Trustee indicated in its Complaint that the Purchase Agreement resulted from Eagle's successful sealed bid for the purchase of the property. There is no mention in the Assignment of the resulting "Purchase Agreement - Public Sale."

There is no question, though, that the Debtor assumed the position of Purchaser, and that such assumption was acknowledged and accepted by the Cabinet, as evidenced by the Addendum to Purchase Agreement for Public Sale. AR 25-29. In light of this sequence of events, the Trustee would, in the court's view, be hard-pressed to assert that Eagle's payment of the 20% good faith deposit is somehow an independent asset of the Debtor's estate. If it is anything to the Debtor, it must be a payment which is inseverable from the Purchase Agreement which was assumed by the Debtor. This payment does not appear to be assigned to the Debtor by operation of any other document.

The parties agree that on the date of the filing of the bankruptcy petition, two days remained for performance under the Purchase Agreement, and thus the contract was executory. The Trustee was permitted to assume the contract within sixty days, which he did not do. It was therefore deemed rejected,  [*9] constituting a breach of the contract deemed to have occurred immediately before the date of the filing of the petition, pursuant to 11 U.S.C. § 365(d)(1) and (g)(1).

The Purchase Agreement's provision for forfeiture of the good faith deposit in the event of the Debtor's failure to perform is a term the Trustee wishes to disregard. However, it is hornbook law

13-13240-shl    Doc 218    Filed 12/18/14    Entered 12/18/14 08:42:43    Main Document
Pg 31 of 37

Page 5

2014 U.S. Dist. LEXIS 9490, *; Bankr. L. Rep. (CCH) P82,571

that "a trustee cannot accept part of an unseverable executory contract and reject that portion of no benefit to the estate." *In re Meadows*, 39 B.R. 538, 540 (Bankr. W.D.Ky. 1984).

Rather, the Trustee urges that rejection of the contract under § 365 has no bearing on the analysis at all. The Trustee appears to be making a timing argument; that is, that the court, being tasked with determining the interest of the Debtor at the time of the filing of the petition, cannot consider the impact of after-petition events such as the ramifications of the Trustee's decision not to assume the contract on behalf of the estate.

The relation back of the breach to a date prior to the filing of the petition is a mere legal construct to provide the Trustee a period of time in which to evaluate an executory contract. However, the filing of the petition    [*10] two days prior to the expiration of the period for closing was, admittedly, an attempt by the Debtor to also create a scenario in which the expiration of the term would be halted and the Debtor would be able to avoid breach, all in order to prevent a forfeiture of the deposit. To buy into the Trustee's argument would be to permit the Bankruptcy process to be used as a failsafe mechanism to avoid the operation of clear and unequivocal contract terms which were assumed by the Debtor. The Bankruptcy Court found, without regard to the rejection of the contract by the Trustee, that on the date of the filing of the petition, the Debtor had no interest in the deposit which would allow the Debtor, and thus the Trustee, to regain possession.

The Purchase Agreement defined the Debtor's right to the benefit of the deposit as follows: (1) application of the deposit to the balance of the purchase price at the closing; or (2) forfeiture of the deposit to the Cabinet as liquidated damages if the Debtor failed to close on the transaction. The Bankruptcy Court found that the terms were unambiguous and unequivocal, and that "[t]he Trustee has not pointed to any law, nor has the Court found any law, that    [*11] would allow the Debtor to recover and regain possession of these funds under state law. Simply stated, there is no provision in the Purchase Agreement or under state law authorizing the Debtor to regain possession. This same restriction also applies to the Trustee." AR 325, Bankr. Mem., p. 7.

The Court correctly rejected the argument that the good faith deposit was held in escrow.

In an attempt to meet the requirements of an escrow under Kentucky law, the Trustee argued that the Kentucky State Treasurer is a third party holding the deposit for the Cabinet. The Bankruptcy Court found this argument to be without merit under the authority of *Home Insurance Co. of New York v. Wilson*, 210 Ky. 237, 275 S.W. 691 (Ky.App. 1925), as there is an absence of evidence that the Kentucky State Treasurer is a third party or that the parties intended to escrow the deposit, mandatory elements under Kentucky law for the formation of an escrow arrangement. Indeed, the contract between the parties evidences a contrary intention. While the Bid Invitation required a check to be made out to the "Kentucky State Treasurer," the bid document and deposit were delivered together to the Cabinet, which, in accordance with the    [*12] terms of the contract, retained the deposit to be applied to the balance of the purchase price on closing, or to be forfeited as liquidated damages should the Debtor fail to close. There was no delivery to a third party nor was there a clear and definite term establishing a future condition required to occur before the Cabinet was entitled to the deposit. Rather, the contract left the Debtor no right to redeem the deposit. At the time of the commencement of the case, the Debtor merely retained a future right to a credit toward the purchase price upon closing of the sale. Thus the delivery to the Cabinet was absolute, rather than in escrow. *City National Bank of Cairo v. Anderson*, 189 Ky. 487, 225 S.W. 361 (Ky. 1920); *Ball v. Sandlin*, 176 Ky. 537, 195 S.W. 1089 (Ky. 1917). As found by the Bankruptcy Court, the Debtor did not have the right to possess or use the property at the commencement of the case, and thus a

2014 U.S. Dist. LEXIS 9490, *; Bankr. L. Rep. (CCH) P82,571

turnover pursuant § 542 to could not be accomplished by the Trustee to reach the deposit. AR, 326, Bankr. Mem., p. 8, *citing In re Lauria*, 243 B.R. 705, 709 (Bankr. N.D.Ill. 2000).

Additionally, the Trustee seeks to have this court address *ab initio* two arguments which he raised before the Bankruptcy    [*13] Court but which that court declined to address. AR 371, 8/28/13 Bankr. Order, p. 4. This court may, in its discretion, decline to address such arguments on appeal. *In re Cannon*, 277 F.3d 838 (6th Cir. 2002). However, it is not an abuse of discretion to consider for the first time on appeal a question of law intimately bound up with the power of the trustee under the bankruptcy code. *Id.* at 848.

These two new arguments are easily dispatched.

First, the Trustee argues that the transaction was in the nature of a contract for deed. A contract for deed is "a contract for the purchase and sale of real estate under which the purchaser acquires the immediate right to possession...and the vendor defers delivery of a deed until a later time to secure all or part of the purchase price." *Restatement (Third) of Property*: Mortgages § 3.4(a)(1997). This clearly was not the agreement between the parties in this case. The Debtor had no immediate right of possession.

Second, the Trustee argues that the Debtor retained a equitable right to the deposit as a vendee in the event the vendor, the Cabinet, refused or was unable to deliver title to the property. This does not establish an interest which would    [*14] entitle the Trustee to turnover of the deposit under § 542. There is no evidence that the Cabinet could not or would not deliver title upon closing. The Trustee's argument is premised upon his incorrect contention that at the time of the filing, the Debtor was not in breach of the agreement because the closing period had not yet expired. But this contention would be equally true for the Cabinet as of the date of the filing. Further, the Debtor was required to pay the balance of the purchase price before the Cabinet was required to deliver the deed.

The Trustee cites the case of *United States Rock Asphalt Corporation v. Covington Trust & Banking Co*, 227 Ky. 451, 13 S.W.2d 488 (Ky. 1929) in which the plaintiff was found to have the right to reclaim funds which had been deposited in escrow upon the failure of the defendant to tender a deed. There are no factual similarities between that case and the one at bar. Further, to the extent that the Trustee urges that the filing of the petition eliminated the ability of the Cabinet to deliver the deed, this is, as a practical matter, untrue. The Cabinet could have delivered the deed if the Trustee had assumed the contract for the estate. The Trustee cannot    [*15] have it both ways. If the Trustee wishes to require the court takes a snapshot view of the Debtor's interest at the moment the petition is filed, the period for performing the parties' respective duties under the contract had not yet expired, and no equitable interest in the deposit for failure to deliver the deed could or ever would come to fruition. Alternatively, if the Trustee wishes to consider the rejection of the contract by the Trustee as the mechanism cutting off the Cabinet's ability to deliver the deed, the rejection necessarily results in a breach by the Debtor and the equitable theory of relief would be ineffectual.

In conclusion, **IT IS HEREBY ORDERED AND ADJUDGED** that, for the reasons stated in the June 3, 2013 Memorandum of the Bankruptcy Court, and on other grounds recited herein, the order denying the motion for partial summary judgment as to Count I of the Complaint in Adversary Proceeding and judgment of the Bankruptcy Court dismissing Count I are **AFFIRMED**. A separate judgment will be entered this date in accordance with this memorandum opinion and order.

January 27, 2014

2014 U.S. Dist. LEXIS 9490, *; Bankr. L. Rep. (CCH) P82,571

/s/ Charles R. Simpson III

**Charles R. Simpson III, Senior Judge**

**United States District Court**

## JUDGMENT [*16]

The court having entered a Memorandum Opinion and Order this date affirming the decision on appeal from of the United States Bankruptcy Court, **IT IS HEREBY ORDERED** that **JUDGMENT** is entered in this action as follows:

(1) Judgment is entered in favor of the Appellee, Commonwealth of Kentucky Transportation Cabinet on the Appellant's appeal of the June 3, 2013 Memorandum Opinion and Order of the United States Bankruptcy Court denying the Trustee's motion for partial summary judgment as to Count I of the Complaint in Adversary Proceeding No. 12-3049.

(2) The action is **DISMISSED WITH PREJUDICE.**

(3) There being no just reason for delay in its entry, this shall constitute the final judgment of the court.


January 27, 2014

**IT IS SO ORDERED.**

/s/ Charles R. Simpson III

**Charles R. Simpson III, Senior Judge**

**United States District Court**



MATTER OF MARGARET McCLELLEN JONES, as Settlor

[NO NUMBER IN ORIGINAL]

SURROGATE'S COURT OF NEW YORK, NEW YORK COUNTY

2006 N.Y. Misc. LEXIS 8186; 235 N.Y.L.J. 46

March 9, 2006

**JUDGES:**   [*1]   Surrogate Roth

**OPINION BY:** Roth

**OPINION**

United States Trust Company, trustee of a charitable lead annuity trust created by Margaret McClellen Jones under an agreement dated December 19, 1995, asks the court to construe the instrument to determine whether the trustee is required to distribute approximately $ 45,000 in accumulated income to Mary McClellan Hospital (the "hospital"), which is bankrupt and no longer treats patients.

The relevant clause provides as follows:

Until Termination ... of the Trust, the Trustee shall pay an annuity amount in each year equal to ... (7%) of the net fair market value of the assets of the Trust valued as of this date, in equal shares, to Smith College, Mary McClellen Hospital, Emma Willard School, and Arlington Symphony Association, *to be used for each of their respective general educational or charitable purposes*. If any one or more of [such entities] *is not an organization described in Sections 170(c), 2055(a) and 2511(a) of the [Internal Revenue] Code at the time when any principal or income of the Trust is to be distributed to them* (emphasis added), then the Trustee shall distribute such principal and income to one or more organizations [*2]   that, at that time, are described in [such sections] ... as the Trustee shall select in its sole discretion.

The Internal Revenue Code provisions cited above define a charitable organization as one "*organized and operated exclusively for ... charitable ... purposes*" (26 U.S.C. 170[c][1][B]; 2055[a][2]); 2522[a][2]) (emphasis added).

2006 N.Y. Misc. LEXIS 8186, *; 235 N.Y.L.J. 46

It is undisputed that the hospital ceased to provide services by May 2003 and that it has surrendered its operating licenses to the New York Department of Health. It filed for bankruptcy on February 6, 2004 and is currently in the process of liquidation.

It is will established that the primary objective in a construction proceeding is to ascertain the settlor's intent (Matter of Carmer, 71, NY2d 781) as gleaned "not from a single word or phrase but from a sympathetic reading of the [instrument] as an entirety ..." (Matter of Fabbri, 2 NY2d 236, 240).

The Attorney General of the State of New York, appearing on behalf of charitable beneficiaries (EPTL 8-1.1 [c]c [2]), points out that the settlor's intent is clearly expressed by her direction that the trust funds "be used for [the] ... charitable [*3]   purposes' of the designated entities and that such intent would be defeated if the income in question were paid to the hospital under its present circumstances. The Attorney General therefore urges that the trustee obey the settlor's directions by distributing such income to an entity which, unlike the hospital at this juncture, is "described in" the Code provisions.

The hospital, on the other hand, contends that it is entitled to such income since it is still listed as a qualified organization described in section 170(c) of the Code and its tax exempt status has not been revoked. The hospital thus rests on the proposition that settlor intended to benefit it so long as it receives no formal notice that its tax exemption has been terminated (even if such inaction is merely inertia on the part of the IRS). To accept such proposition, the court would have to conclude that the settlor intended the trust funds to be used to benefit the hospital's creditor rather than to advance charitable purposes. Such conclusion is belied by the plain language of the provisions quoted above. Moreover, it is at odds with a long line of cases recognizing that donors of gifts to charitable entities invariably [*4]   do not intend their gifts to be received by such entities if they cease to function as charities (see Matter of Kraetzer; 119 Misc 2d 436, and cases cited therein).

Based upon the foregoing, Article THREE of the trust is construed to mean that the hospital is not entitled to the income at issue.

Settle decree accordingly.



8 of 32 DOCUMENTS

Copyright 1994 ALM Media Properties, LLC
All Rights Reserved
Further duplication without permission is prohibited

𝔑𝔢𝔴 𝔜𝔬𝔯𝔨 𝔏𝔞𝔴 𝔍𝔬𝔲𝔯𝔫𝔞𝔩

New York Law Journal

November 7, 1994 Monday

**SECTION:** Pg. 27, (col. 1) Vol. 212

**LENGTH:** 479  words

**HEADLINE:** ESTATE OF CRUCIEN LUIGGI, DECEASED;
Court Decisions;
First Judicial Department;
New York County;
Surrogate's Court

**BYLINE:** Surrogate Roth

**BODY:**

Court Decisions

First Judicial Department

New York County

Surrogate's Court

The trustee of a trust created under the will of Crucien Luiggi who died in 1948, requests the court to exercise its cypress power and detemrine to which charity the remainder should be paid.

Mr. Luiggi created a trust under Article Fifth of his will for the life income benefit of Georgette (Jorgelina) Hertelendy, Countess Gerard de Failly, with remainder to the

French Hospital of the French Benevolent Society of New York.  He made no provision for a gift over.  The trust, valued at approximately $375,000, terminated with the death of the life income beneficiary on March 12, 1993.  The French Hospital ceased operating in Mary 1977, after an adjudication of bankruptcy.

Under the governing statute, EPTL 8-1.1(c), the court has the authority to direct the manner in which a charitable disposition should be administered in order to most effectively accomplish its general purpose whenever circumstances have so changed that literal compliance with the terms of the bequest is mpracticable or impossible. Furthermore, such a gift will not fail because the intended charity does not exist, or if in existence, lacks the capacity to take such a disposition (EPTL 8-1.1[d]).

Although the court must first find that decedent had a general charitable intent, it will liberally construe the terms of a will to uphold a bequest where a testator has apparently sought to leave money for charitable purpose (Matter of Nurse, 35 NY2d, 381, 388; Matter of Potter, 307 NY 504, 517; Matter of Kaetzer, 119 Misc 2d 436).  The requisite general charitable intent clearly exists in the instant case, where the bequest is subject to no diversting condition (Matter of Goehringer, 69 Misc. 2d 145 and there is no gift over (Matter of Fletcher, 280 NY 867; Matter of Price, 267 App Div 29, affd 289 NY 751.

This particular institution has been the subject of at least two other proceedings in this court (Matter of Lauterbach, NYLJ, July 11, 1980, at 7 col 3 and Matter of McNeils, NYLJ, Jan. 5, 1981 at 11, col. 5).  In both instances, the trustee in bankruptcy unsuccessfully argued that because the hospital had not yet been formerly dissolved, the dispositions in its name should be paid to him to be used for the benefit of its creditors. In both instances, the court conclude that the charitable purpose ofthe gifts would be defeated by paying the trustee and instead applied the cy pres doctrine and named alternate charitable beneficiaries in order to effectuate testator's intent.  There are no facts in this case which would mandate a different determination.

Accordingly, the remainder interest of the tertamentary trust under Article Fifth of testator's will shall be inserted in the decree to be settled herein.

The parties shall be notified of a date for a conference to determine the appropriate hopsitals.

**LOAD-DATE:** August 4, 2011