**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen
S. Jason Teele
Nicole Stefanelli
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| New York City Opera, Inc. | Case No. 13-13240 (SHL) |
| Debtor. | |

**RESPONSE OF NEW YORK CITY OPERA, INC. TO THE STATEMENT
OF NEW VISION FOR NYC OPERA, INC. WITH RESPECT TO
DEBTOR'S NOTICE TO WITHDRAW ITS SALE MOTION**

New York City Opera, Inc. (the "**Debtor**"), by and through its counsel, submits this Response to the *Statement of New Vision for NYC Opera, Inc. with Respect to NYC Opera, Inc.'s Notice to Withdraw Its Sale Motion* [Docket No. 273] (the "**New Vision Statement**"), and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. As the Court and parties in interest in this proceeding are aware, the Debtor ceased its operations and has used the chapter 11 process to safeguard the precious mission of the "People's Opera" for the benefit of the public, performers, musicians, and

22341/2
10/06/2015 40327968.1

supporters of the opera. Initially, the Debtor believed that a sale of assets pursuant to 11 U.S.C. § 363 provided the greatest chance of success of preserving the mission. Events beyond the Debtor's control transpired and made a sale less desirable and more perilous than the alternative of permitting would-be guardians of the Debtor's mission to propose plans of reorganization. For example, the challenges of transferring the Debtor's endowment and certain bequests to a buyer in a sale process, over the potential objections of the New York Attorney General, and the potential for multiple, time-consuming state court proceedings seeking to transfer such funds, would likely mean the Debtor's mission would remain dormant for a significant amount of time. In addition, the delays that have already been suffered (and show no signs of letting up) in connection with litigating the objections to the sale process raised by New Vision for NYC Opera, Inc. ("**New Vision**"), would harm the Debtor's mission, perhaps beyond repair.

2. Accordingly, the Debtor elected to abandon the effort to sell its assets in favor of allowing any party to propose a plan to continue the Debtor's mission. As set forth herein, the Debtor submits that it not only has the right, under applicable law, to withdraw the *Debtor's Motion for Orders (I) Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date, (II) Authorizing the Debtor to Enter Into the Assigned Contract, and (III) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances* [Docket No. 213] (the "**Sale Motion**"),[1] but that abandoning the sale process is beneficial to New Vision as well as any other potential plan sponsor and is the best way to ensure that the mission of the Debtor continues well into the future.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the *Notice of Withdrawal Without Prejudice of Debtor's Motion for Orders (I) Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date, (II) Authorizing the Debtor to Enter Into the Assigned Contract, and (III) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances* [Docket No. 273], as applicable.

**RESPONSE**

3.     In the interest of judicial economy, the Debtor adopts and joins in the Argument section of the *Response of NYCO Renaissance, Ltd. To The Statement Of New Vision For NYC Opera, Inc. With Respect To Debtor's Notice To Withdraw Its Sale Motion* [Docket No. 296].

4.     In addition, the Debtor submits that it has the right to withdraw the Sale Motion. New Vision's arguments against such withdrawal are based on misunderstandings of fundamental legal doctrines or intentionally misleading interpretations of applicable law.

**A.     The Debtor May Withdraw the Sale Motion Pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.**

5.     Rule 41(a) of the Federal Rules of Civil Procedure (the "**Federal Rules**"), which is made applicable to contested matters within bankruptcy cases under Rules 7041 and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), governs dismissals of actions. Bankruptcy Rule 9002(1) defines an "action," as used in the Federal Rules of Civil Procedure, to include contested matters. Courts agree that Federal Rule 41(a) governs the withdrawal (and, thereby, dismissal) of contested matters. Bankruptcy Rule 6004(c) provides that a sale motion is a contested matter governed by Bankruptcy Rule 9014.   Therefore, Federal Rule 41(a) governs withdrawal of the Sale Motion.

6.     Federal Rule 41(a) provides in relevant part as follows:

> **(a) Voluntary Dismissal.**
> **(1)** *By the Plaintiff.*
>> **(A)** *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
>>> **(i)** a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>>> **(ii)** a stipulation of dismissal signed by all parties who have appeared.

-3-

> **(B)** *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.
>
> **(2)** *By Court Order; Effect.* Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

7. Courts agree that a response "corresponds to an 'answer' for the purpose of applying Rule 41 to a contested matter." *See In re Rowe Furniture, Inc.*, No. 06-11143-SSM, 2007 WL 2481421, at *3 (Bankr. E.D. Va. Aug. 28, 2007) (holding that, pursuant to Federal Rule 41(a), because no response to a motion to compel assumption or rejection of lease was filed, movant had the right to right to unilaterally withdraw the motion). *See also In re Fairchild*, 969 F.2d 866, 868 (10th Cir. 1992) (affirming the bankruptcy court's holding that, pursuant to Federal Rule 41(a), a debtor could not unilaterally withdraw an objection to IRS's claim—which initiated a contested matter—after IRS responded to the objection; rather, permission of the bankruptcy court was required to withdraw objection); *In re Vale*, 180 B.R. 1017, 1025 (Bankr. N.D. Ind. 1994) (holding that trustee could not withdraw motion for determination of tax liability after the IRS filed an objection—which was equivalent to an answer—except by order of the court). In this case, objections to the Sale Motion have been filed, therefore, pursuant to Federal Rule 41(a)(1), the Debtor may not withdraw the sale motion unilaterally. However, because New Vision cannot demonstrate that it will suffer "legal prejudice" due to withdrawal of the Sale Motion, such withdrawal is proper pursuant to Federal Rule 41(a)(2). Any prejudice alleged by New Vision is contrived.

8. The Bankruptcy Court for the Southern District of New York has held that under Federal Rule 41(a)(2), "a court should grant a dismissal absent a showing that defendants will suffer substantial prejudice as a result." *In re Kassover*, No. 98-43124 (BRL),

2008 WL 4845757, at *1 (Bankr. S.D.N.Y. Oct. 30, 2008). The Second Circuit has described "two lines of authority [that] have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir.2011). Under the first line of authority, the court considers whether the "the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id.* Legal prejudice in this context has been defined as "the impairment of some legal interest, some legal claim, or some legal argument." *Benitez v. Hitachi Metals Am., Ltd.*, No. 11 CIV. 6816 NRB, 2012 WL 3249417, at *2 (S.D.N.Y. Aug. 6, 2012) (citation omitted). *See also In re* Kassover, No. 98-43124 (BRL), 2008 WL 4845757, at *1. ("Legal prejudice is shown when actual rights are threatened or when monetary or other burdens appear to be extreme or unreasonable.") (citation omitted). Under the second line of analysis, the court weighs a series of factors known as the *Zagano* factors. These factors are: (1) the plaintiff's diligence in requesting the voluntary dismissal; (2) whether the plaintiff has engaged in any vexatious conduct; (3) the extent to which the suit has progressed; (4) the potential duplicative expense of relitigation; and (5) the adequacy of the plaintiff's explanation for its request. *Kwan,* 634 F.3d at 230. "[N]o one of [these factors], singly or in combination with another, is dispositive." *Id.*

    **(i)    Legal Prejudice**

    9.    New Vision cannot demonstrate that it will suffer "legal prejudice" due to withdrawal of the Sale Motion. As explained above, legal prejudice is defined as "the impairment of some legal interest, some legal claim, or some legal argument," which New Vision has not suffered. *Benitez v. Hitachi Metals Am., Ltd.*, No. 11 CIV. 6816 NRB, 2012 WL 3249417, at *2 (S.D.N.Y. Aug. 6, 2012) (citation omitted). *See also In re Kassover*, No. 98-43124 (BRL), 2008 WL 4845757, at *1. ("Legal prejudice is shown when actual rights are threatened or when monetary or other burdens appear to be extreme or unreasonable.") (citation omitted).

10. New Vision's legal interests, legal claims, or legal arguments will not be impaired by withdrawal of the Sale Motion because New Vision has no enforceable rights with respect to the Debtor's assets that can be impaired. It is well settled that until the Court has approved the Sale Motion, the Debtor is not bound to sell its assets. *See In re Asia Global Crossing, Ltd.*, 326 B.R. 240, 256 (Bankr. S.D.N.Y.), *adhered to in part on reargument*, 332 B.R. 520 (Bankr. S.D.N.Y. 2005) (concluding that a debtor's mere motion to sell all of its assets to another corporation did not "prevent it" from living up to its prior contractual commitment (and was therefore not an anticipatory repudiation of the prior contract), because the sale contract was not binding until it received Court approval; until such approval was granted, the debtor could have "withdraw[n] the application and abandon[ed] the contract."); *In re Broadmoor Place Investments, L.P.*, 994 F.2d 744, 745 n.1 (10th Cir. 1993) (agreements to purchase debtors' sole asset were not contracts "since there can be no contract . . . without Bankruptcy Court approval."); *In re Stroud Ford, Inc.*, 205 B.R. 722 (Bankr. M.D. Pa. 1996) (debtors were not bound by their commitment to sell dealership to plaintiff, and could withdraw their commitment without incurring any liability to plaintiff up until time that Bankruptcy Court disposed of third party's timely objection to proposed sale); *In re Smith*, 352 B.R. 500, 501 (Bankr. N.D. Ala. 2006) ("A motion filed by a trustee to sell assets free and clear of liens is not a binding contract that is enforceable against the estate until approved by the court."); *In re Susquehanna Chem. Corp.*, 92 F. Supp. 917, 919 (W.D. Pa. 1950) ("Until such approval upon the day of sale, this Court does not detect the existence of a binding contract. The purchaser, therefore, cannot be bound until acceptance and approval by the Court.").

11. Further, the Bidding Procedures Order provides in paragraph 4(j) that "The Debtor will not be bound by the Successful Bid(s) or Alternate Bid(s) unless and until such Bids shall have been approved by the Bankruptcy Court pursuant to an unstayed order." Importantly, that same paragraph provides that "If the Debtor receives more than one Qualified Bid, then, at the Sale Hearing, the Debtor shall seek approval of the Successful Bid(s), and <u>may also seek approval</u> of the second highest or best Qualified Bid (the "<u>Alternate Bid(s)</u>"

and such Bidder, the "Alternate Bidder(s)"). Bidding Procedures Order ¶ 4(j) (emphasis added). At the Status Conference held on January 22, 2015, the Debtor announced to the Court that it selected NYCO Renaissance as the Successful Bidder. The Debtor did not, nor was it required to, declare New Vision as the Alternate Bidder. Thus, the Debtor is not bound by New Vision's bid (or even the Successful Bidder's bid) until the court has approved the Sale Motion

12.     More importantly, New Vision will suffer no prejudice as a result of the Debtor's withdrawal of the Sale Motion because New Vision will have the opportunity to propose a plan of reorganization, as will NYCO Renaissance and any other party interested in doing so.

**(ii)     *Zagano* Factors**

13.     As stated above, the five *Zagano* factors are: (1) the plaintiff's diligence in requesting the voluntary dismissal; (2) whether the plaintiff has engaged in any vexatious conduct; (3) the extent to which the suit has progressed; (4) the potential duplicative expense of relitigation; and (5) the adequacy of the plaintiff's explanation for its request.

14.     Here, all five factors weigh in favor of withdrawal of the Sale Motion. First, the Debtor has been diligent in seeking voluntary dismissal of the Sale Motion. The Debtor did not fully analyze the Bequest until February of 2015, after the DeMenasce estate filed a stay relief motion in this Court. When the Debtor initially inquired about the Bequest in 2013, it was told that the DeMenasce estate would not be in a position to make a distribution for several years, which is why the Debtor suspended its analysis. It was after the analysis was completed, and after extensive discussions with the Committee, NYCO Renaissance and the Attorney General's office (as well as New Vision), that the Debtor decided not pursue the sale, and the Debtor's request to withdraw the sale motion was made shortly thereafter. Second, the Debtor has not engaged in vexatious conduct. The Debtor conducted the sale process in an honest manner, in an effort to maximize value for its estate *and* to find a steward to continue the Debtor's mission. There was no ill motive in bringing the Sale Motion and the Debtor has not

harassed New Vision or any other opposing parties at any point during the sale process. Third, the Sale Motion has been on hold since the Debtor completed its analysis with respect to the Bequest and the Debtor has not sought approval of NYCO Renaissance as the Successful Bidder. Fourth, any amounts New Vision has expended opposing the Debtor's Sale Motion will likely not be duplicative because the Debtor does not intend to pursue a second sale motion. Moreover, any expenses New Vision has incurred in discovery related to opposing the Sale Motion may be relevant to any objection he may file to the plan. Finally, and most importantly, the basis for withdrawing the Sale Motion and pursuing a plan of reorganization to continue the charitable activities of NYCO under the name "New York City Opera, Inc." is more than reasonable. It gives any new opera company that continues the Debtor's mission the best chance of receiving substantial bequests and avoiding possibly multiple state court proceedings regarding the distribution of certain testamentary gifts. This would put the new opera company, whether it is being run by NYCO Renaissance, New Vision or someone else, in the best position to continue the Debtor's mission in the future.

**B.    Specific Performance is Not an Available Remedy for New Vision Because No Contract Exists Between the Debtor and New Vision.**

15.    It is well settled that specific performance is a proper remedy where "the subject matter of the particular contract is unique and has no established market value." *Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 415 (N.Y. 2001). Inherent in this rule of law is that a contract must exist for a party to demand specific performance. A complaint for specific performance must show: (1) the making of the contract and its terms, including a description of the subject matter; (2) that the plaintiff is ready, willing, and able to perform the contract and has fulfilled all of plaintiff's duties to date; (3) that it is within defendant's power to perform (as, in the case of specific performance of a real estate purchase agreement, a plaintiff should allege that defendant held title to the realty); and (4) that there is no adequate remedy at law. *Lezell v Forde*, 26 Misc. 3d 435, 441 (N.Y. Sup. Ct. 2009) (internal citations omitted).

-8-

16. As set forth at length above, no contract exists between the Debtor and New Vision because (i) the Debtor did not select New Vision as the Successful Bidder, (ii) the Debtor did not declare New Vision as the Alternate Bidder and (iii) the Debtor is not bound to sell its assets to any party until such time as the Court has approved the Sale Motion.

17. Moreover, to the extent New Vision has opposed the Debtor's withdrawal of the Sale Motion simply because it seeks a remedy, that remedy has already been provided to New Vision: New Vision may propose a plan of reorganization, as will NYCO Renaissance and any other party interested in doing so.

**WHEREFORE**, the Debtor respectfully requests that the Court deny the relief requested by New Vision in the New Vision Statement, grant the Debtor's request to withdraw the Sale Motion (without prejudice) and grant the Debtor such other and further relief as the Court deems just and proper.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Respectfully submitted,

Dated: October 6, 2015          **LOWENSTEIN SANDLER LLP**

/s/ *Nicole Stefanelli*
Kenneth A. Rosen
S. Jason Teele
Nicole Stefanelli
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
steele@lowenstein.com
nstefanelli@lowenstein.com

*Counsel to the Debtor and Debtor in Possession*