**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| In re: | : |
| | : |
| New York City Opera, Inc., | : Case No. 13-13240 (SHL) |
| | : |
| Debtor. | : Chapter 11 |
| | : |
| | : |

---

### FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF NYCO RENAISSANCE LTD. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR NEW YORK CITY OPERA, INC.

---

Dated: December 2, 2015

**DUANE MORRIS LLP**
1540 Broadway
New York, New York 10036-4086
Telephone:     (212) 692-1000
Facsimile:     (212) 692-1020
Gerard S. Catalanello, Esq.
James J. Vincequerra, Esq.

_Counsel to NYCO Renaissance, Ltd.,_
_Plan Co-Sponsor_

**KLESTADT WINTERS JURELLER**
**SOUTHARD STEVENS, LLP**
200 West 41st Street, 17th Floor
New York,  New York 10036-7203
Telephone:     (212) 972-3000
Facsimile:     (212) 972-2245
Sean C. Southard, Esq.
Maeghan J. McLoughlin, Esq.

_Counsel to Official Committee of_
_Unsecured Creditors, Plan Co-Sponsor_

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS ...................................................................................1

    A.    Defined Terms ...........................................................................1

    B.    Exhibits ......................................................................................6

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS ...........................7

    A.    Administrative Claims ..............................................................7

    B.    Priority Tax Claims...................................................................7

    C.    Payment of Statutory Fees .......................................................7

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBERSHIP INTERESTS .....................................................................7

    A.    Summary ...................................................................................7

    B.    Classification and Treatment of Claims....................................8

        1.    *Class 1—Other Priority Claims – Severance/ Wage Claims*......................8

        2.    *Class 2—Secured Claims*...................................................8

        3.    *Class 3—PBGC Claims* .....................................................8

        4.    *Class 4—General Unsecured Claims* ..................................9

        5.    *Class 5—Unsecured Convenience Claims*...........................9

        5.    *Class 6—Deposit Claims* ...................................................9

    C.    Acceptance or Rejection of the Plan........................................10

        1.    Acceptance by an impaired Class ..............................10

        2.    Presumed Acceptance of the Plan ..............................10

        3.    Voting Class.............................................................10

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN..........................10

    A.    Funding for the Plan................................................................10

B. Corporate Existence ........................................................................................10

C. New Board Representation ...............................................................................11

D. Restructuring Transactions ..............................................................................11

E. Corporate Action.............................................................................................11

F. Effectuating Documents; Further Transactions ...............................................11

G. Exemption from Certain Transfer Taxes and Recording Fees...........................12

H. Management/Corporate Governance ................................................................12

I. Committee.......................................................................................................13

J. Vesting of Assets in the Reorganized Debtor ...................................................14

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS ...................................................14

A. Initial Distribution Date ..................................................................................14

B. Disputed Claim Reserve ..................................................................................14

    1. *Establishment of Disputed Claim Reserve* ...............................................14

    2. *Maintenance of Disputed Claim Reserve* ................................................14

C. Quarterly Distributions ...................................................................................15

D. Delivery of Distributions .................................................................................15

    1. *General Provisions; Undeliverable Distributions* ....................................15

E. Manner of Cash Payments Under the Plan ......................................................15

F. Limitations on Funding of Disputed Claim Reserve .........................................16

G. Compliance with Tax Requirements.................................................................16

H. Setoff and Recoupment...................................................................................16

ARTICLE VI. DISPUTED CLAIMS .........................................................................................16

A. No Distribution Pending Allowance .................................................................16

B. Resolution of Disputed Claims ........................................................................16

C. Objection Deadline .........................................................................................17

D.      Disallowance of Claims .........................................................................17

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ...............................................................................................17

A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ..........17

B.      Claims Based on Rejection of Executory Contracts or Unexpired Leases............18

C.      Reservation of Rights............................................................................18

ARTICLE VIII. CONDITIONS PRECEDENT TO CONFIRMATION AND
        OCCURRENCE OF THE EFFECTIVE DATE ...............................................18

A.      Conditions to Confirmation: ....................................................................18

B.      Conditions Precedent to the Effective Date ................................................19

C.      Waiver of Conditions Precedent ...............................................................19

ARTICLE IX. DISCHARGE, RELEASE, INJUNCTIVE AND RELATED
        PROVISIONS .......................................................................................19

A.      Discharge of Claims...............................................................................19

B.      Releases..............................................................................................19

C.      Exculpation .........................................................................................20

D.      Preservation of Rights of Action...............................................................20

        1.      *Vesting of Causes of Action* ............................................................20

        2.      *Preservation of All Causes of Action Not Expressly Settled or
                Released* ...............................................................................21

E.      Release and Injunction ...........................................................................21

F.      Special Provision Regarding the Pension Plan ....................................22

G.      Releases of Liens ..................................................................................23

ARTICLE X. RETENTION OF JURISDICTION .........................................................23

ARTICLE XI. MISCELLANEOUS PROVISIONS.........................................................24

A.      Modification of Plan ..............................................................................24

B.      Revocation of Plan ................................................................................25

C.      Successors and Assigns..............................................................................25

D.      Governing Law ..........................................................................................25

E.      Reservation of Rights.................................................................................25

F.      Section 1146 Exemption .............................................................................25

G.      Section 1125(e) Good Faith Compliance....................................................26

H.      Further Assurances.....................................................................................26

I.      Service of Documents .................................................................................26

J.      Filing of Additional Documents .................................................................27

K.      Fiduciary Withdrawal Option as Plan Co-Sponsor....................................27

Pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, NYCO Renaissance, Ltd. and the Official Committee of Unsecured Creditors appointed in the Debtor's bankruptcy case hereby jointly propose the following first amended plan of reorganization for New York City Opera, Inc., debtor and debtor-in-possession.

## ARTICLE I.

## DEFINED TERMS

A.    *Defined Terms*

Unless context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Administrative Claims*" means Claims that have been timely filed for costs and expenses of administration under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor; and (b) all fees and charges assessed against the Estate under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930; including but not limited to the NV Substantial Contribution Claim.

2.    "*Administrative Claims Bar Date*" means sixty (60) days after the Effective Date.

3.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent or unliquidated, unless a Proof of Claim has been timely filed, and as to which the Debtor or other parties-in-interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of the amount and nature of a Claim executed prior to the Effective Date and approved by the Bankruptcy Court; or (ii) in any stipulation with the Reorganized Debtor of the amount and nature of a Claim executed on or after the Effective Date; (d) a Claim that is Allowed pursuant to the terms hereof; or (e) a Claim as to which a Proof of Claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date.

4.    "*Assumed Contract*" means any executory contract or unexpired lease assumed by the Reorganized Debtor in accordance with Article VII of the Plan.

5.    "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtor, the Reorganized Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

6.    "*Bankruptcy Code*" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, together with all amendments and modifications thereto that may be applicable to the Chapter 11 Case.

7.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York.

8.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

9.      "*Business Plan*" means the Reorganized Debtor's business plan as described in Article III of the Summary of First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance Ltd. and the Official Committee of Unsecured Creditors for New York City Opera, Inc.

10.     "*Cash*" means legal tender of the United States of America.

11.     "*Cause(s) of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims (including, without limitation, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of the Debtor, the Reorganized Debtor and/or the Estate that are or may be pending on the Effective Date against any Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

12.     "*Chapter 11 Case*" means the bankruptcy case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which is being administered under case number 13-13240 in the Bankruptcy Court.

13.     "*Claim*" means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtor.

14.     "*Claims Objection Bar Date*" means the bar date for objecting to Claims against the Debtor, which shall be six (6) months after the Effective Date; *provided, however*, that the Reorganized Debtor may seek extensions of this date from the Bankruptcy Court for cause shown.

15.     "*Class*" means a category of Holders of Claims as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

16.     "*Committee*" means the Official Committee of Unsecured Creditors for the Chapter 11 Case appointed pursuant to section 1102 of the Bankruptcy Code, on October 23, 2013, which is also a Plan Sponsor.

17.    "*Debtor*" means New York City Opera, Inc., a New York not-for-profit corporation, prior to the Effective Date.

18.    "*Deposit Claims*" means any Allowed Claim that satisfies 11 U.S.C. § 507(a)(7).

19.    "*Disclosure and Confirmation Date*" means the date on which the Disclosure and Confirmation Order is entered by the Bankruptcy Court.

20.    "*Disclosure and Confirmation Hearing*" means the combined hearing before the Bankruptcy Court to determine whether the Disclosure Statement will be approved and the Plan will be confirmed pursuant to sections 1129(a) and 1129(b) of the Bankruptcy Code.

21.    "*Disclosure and Confirmation Order*" means the order of the Bankruptcy Court in form and substance acceptable to the Plan Sponsors approving the Disclosure Statement and confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22.    "*Disclosure Statement*" means the First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance, Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc., dated December 2, 2015, as amended from time to time, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the Bankruptcy Court in the Disclosure and Confirmation Order, as it is amended, supplemented or modified from time to time.

23.    "*Disputed Claim*" means any Claim, or any portion thereof, that is not yet an Allowed Claim.

24.    "*Disputed Claim Reserve*" means the reserve fund created pursuant to Article VI of the Plan.

25.    "*Distributions*" means the distributions of Cash to be made by the Reorganized Debtor or a designee in accordance with the Plan.

26.    "*Effective Date*" means the date that is the first business day after the entry of the Disclosure and Confirmation Order on which: (a) no stay of the Disclosure and Confirmation Order is in effect; and (b) all conditions specified in Article VIII have been satisfied or waived.

27.    "*Endowment*" means the nine individual funds established prior to the Petition Date which funded, in part, Debtor's operations.

28.    "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

29.    "*Estate*" means the estate of the Debtor created on the Petition Date by section 541 of the Bankruptcy Code; *provided however*, the Estate does not include the Endowment, use-restricted funds, the Pending Bequests or annuities.

30.    "*Exculpated Parties*" means, collectively, (i) the Committee and the individual members thereof acting in their capacity as Committee members, as well as its attorneys, agents, professionals and representatives, (ii) NYCO Renaissance and its officers, directors, attorneys, agents, professionals and representatives, (iii) the Debtor and its officers, directors, attorneys, agents, professionals and representatives, and (iv) New Vision and its officers, directors, attorneys, agents, professionals and representatives.

31.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for a writ of certiorari or move for reargument or rehearing has expired and no such appeal, petition, or motion has been timely filed, or as to which any appeal, petition, or motion that has been filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or has otherwise been dismissed.

32.    "*General Unsecured Claims*" means Claims against the Debtor that are not Secured Claims, Administrative Claims or Priority Claims.

33.    "*GUC Note*" means the note issued by the Reorganized Debtor in the face amount of $1,585,000 and payable to the holders of Class 4 Claims or designee of the Committee for the benefit of non-PBGC creditors, payments under which note shall be conditioned upon the Reorganized Debtor receiving at least $5,000,000 of the Pending Bequests.  The form of the GUC Note shall be included in the Plan Supplement.

34.    "*Holder*" means any Entity holding a Claim against the Debtor.

35.    "*Initial Distribution Date*" means the date on which the Reorganized Debtor shall make its initial Distribution, which shall be a date selected by the Reorganized Debtor as soon as reasonably practicable after the Claims Objection Bar Date.

36.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

37.    "*New Board*" means the board of directors of the Reorganized Debtor to be disclosed in the Plan Supplement.

38.    "*New Vision*" means New Vision for NYC Opera, Inc., a not-for-profit entity formed by Gene Kaufman.

39.    "*NV Substantial Contribution Claim*" means an Allowed Administrative Claim in the amount of $300,000 payable to New Vision pursuant to section 503(b) and entitled to priority pursuant to section 507(a)(2).  The NV Substantial Contribution Claim will be the subject of a separate motion to be filed with the Court and heard on the same day as confirmation of the Plan.

40.    "*NYCO Renaissance*" means NYCO Renaissance, Ltd.

41.    "*PBGC*" means the Pension Benefit Guaranty Corporation.

42. "*PBGC Claims*" means the Proofs of Claim filed by the PBGC for unfunded benefit liabilities, unpaid minimum funding contributions and statutory premiums relating to the Pension Plan.

43. "*PBGC Note*" means the promissory note to be issued by Reorganized Debtor in the face amount of $340,000 and payable to the PBGC. The form of the PBGC Note shall be included in the Plan Supplement.

44. "*Pending Bequests*" means charitable bequests made for Debtor's benefit by supporters of the Debtor who passed prior to the Petition Date or during the pendency of the Chapter 11 Case, described more fully in the Disclosure Statement.

45. "*Pension Plan*" means the Retirement Plan for Salaried Employees of New York City Opera established effective July 1, 2010, maintained and administered by the Debtor, and covered by Title IV of ERISA.

46. "*Petition Date*" means October 3, 2013.

47. "*Plan*" means this first amended joint plan under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, and the Plan Supplement, which is incorporated herein by reference.

48. "*Plan Sponsors*" means NYCO Renaissance and the Committee.

49. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to the Plan which shall be filed no later than ten (10) days prior to the Disclosure and Confirmation Hearing.

50. "*Priority Claims*" means Claims entitled to priority under section 507(a) of the Bankruptcy Code.

51. "*Priority Tax Claims*" means Priority Claims entitled to priority under section 507(a)(8) of the Bankruptcy Code.

52. "*Pro Rata*" means the ratio of the amount of an individual Claim in any particular Class of Claims to the aggregate amount of all Claims in such Class that have not yet been disallowed.

53. "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

54. "*Quarterly Distribution Date*" means the first business day after the end of each quarterly calendar period.

55. "*Releasees*" means, collectively, (i) the Committee and the individual members thereof acting in their capacity as Committee members, as well as its attorneys, agents, professionals and representatives, (ii) NYCO Renaissance, and its officers, directors, attorneys,

agents, professionals and representatives, (iii) the Debtor, and its officers, directors, attorneys, agents, professionals and representatives, and (iv) New Vision, and its officers, directors, attorneys, agents, professionals and representatives.

56.    "*Reorganized Debtor*" means the Debtor or any successor thereto, by merger, affiliation, consolidation or otherwise, on or after the Effective Date.

57.    "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs, as may be amended from time to time, filed with the Bankruptcy Court by the Debtor pursuant to section 521 of the Bankruptcy Code.

58.    "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

59.    "*Severance/ Wage Claims*" means Priority Claims entitled to priority under sections 507(a)(4) and 507(a)(5).

60.    "*Solicitation Order*" means the order of the Bankruptcy Court, which among other things, approved the solicitation of acceptances and rejections of the Plan, and scheduled a combined hearing to consider approval of the Disclosure Statement and confirmation of the plan.

61.    "*Unsecured Convenience Claims*" means those Allowed General Unsecured Claims of $2,000 or less.

62.    "*Voting Deadline*" means the date established by the Bankruptcy Court for casting ballots concerning confirmation of the Plan.

B.    *Exhibits*

The Plan Supplement shall be filed with the Bankruptcy Court no later than ten (10) days prior to the Disclosure and Confirmation Hearing and shall include, among other things: (i) the amended and restated corporate documents; and (ii) the identity and background information of the members of the New Board.  The Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Holders of Claims may also obtain a copy of the Plan Supplement, once filed, by calling or by a written request sent to either of the Plan Sponsors whose information is set forth below in Article XI.I.

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

A.    *Administrative Claims*

Subject to the provisions of sections 328, 330(a), 331, 503 and 507(a)(2) of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash, on or as soon as practicable after the later of: (a) the Effective Date; and (b) the date such Allowed Administrative Claim becomes Allowed.

B.    *Priority Tax Claims*

In accordance with Bankruptcy Code section 1123(a)(1), Priority Tax Claims have not been classified and are treated as described in this Article II. Unless otherwise agreed by the Holder of an Allowed Priority Tax Claim, the Debtor or the Reorganized Debtor shall pay each Holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim in Cash, on or as soon as practicable after the later of: (a) the Effective Date; and (b) the date such Allowed Priority Tax Claim becomes Allowed.

C.    *Payment of Statutory Fees*

All fees payable pursuant to Article 1930 of title 28 of the United States Code assessed against the Debtor's estate shall be paid in full by the Reorganized Debtor as they become due and owing.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS
## AND MEMBERSHIP INTERESTS

A.    *Summary*

1.    This Plan constitutes a chapter 11 plan for the Debtor.  Except for Administrative Claims and Priority Tax Claims, all Claims against the Debtor are placed in Classes.   In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan Sponsors have not classified Administrative Claims and Priority Tax Claims, as described in Article II.

2.    Because there are no interests in the Debtor, the Plan Sponsors have not classified membership interests in the Debtor.

3.    The table in Article III.A.4 below summarizes the classification of Claims against the Debtor for all purposes under this Plan, including voting, confirmation and Distributions.

4.    *Summary of Classification and Treatment of Classified Claims*

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims – Severance/ Wages | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | PBGC Claims | Impaired | Yes |
| 4 | Unsecured Claims | Impaired | Yes |
| 5 | Unsecured Convenience Claims | Impaired | Yes |
| 6 | Deposit Claims | Unimpaired | No (deemed to accept) |

B.    *Classification and Treatment of Claims*

1.    <u>*Class 1—Other Priority Claims – Severance/ Wage Claims*</u>

(a)    *Classification*: Class 1 consists of Severance/ Wage Claims

(b)    *Treatment*:  Except to the extent that the Holders of Claims in Class 1 agree to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of the Severance/ Wage Claims, the Severance/ Wage Claims shall be paid in full in Cash on or as soon as practicable after the later of: (a) the Effective Date; and (b) the date such Allowed Severance/ Wage Claim becomes Allowed.

(c)    *Impairment and Voting*:  Class 1 is unimpaired by the Plan.  The Holders of Claims in Class 1 are presumed to accept and therefore are not entitled to vote to accept or reject the Plan.

2.    <u>*Class 2—Secured Claims*</u>

(a)    *Classification*: Class 2 consists of Secured Claims.

(b)    *Treatment*: Except to the extent that a holder of an Allowed Secured Claim and the Plan Sponsors agree to a different treatment, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim, (i) each Allowed Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) each Holder of an Allowed Secured Claim shall receive Cash in an amount equal to such Allowed Secured Claim on the later of the Initial Distribution Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable, or (iii) each Holder of an Allowed Secured Claim shall receive the collateral securing its Allowed Secured Claim on the later of the Initial Distribution Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is practicable.

(c)    *Impairment and Voting*: Class 2 is unimpaired by the Plan.  The Holders of Secured Claims are presumed to accept and therefore are not entitled to vote to accept or reject the Plan.

3.    <u>*Class 3—PBGC Claims*</u>

(a)    *Classification:* Class 3 consists of the PBGC Claims.

(b)     *Treatment:* The PBGC and the Plan Sponsors have agreed that, in full satisfaction, discharge, settlement, release, and compromise of and in exchange for the PBGC Claims, the PBGC Claims shall be Allowed in the amount of $4,616,067, and the PBGC shall receive on the Initial Distribution Date, or as soon as practicable thereafter, (i) its Pro Rata Share of Distribution of the assets of the Debtor's Estate (other than the proceeds of the GUC Note), and (ii) the PBGC Note.

(c)     *Impairment and Voting:* Class 3 is impaired by the Plan. The PBGC is entitled to vote to accept or reject the Plan.

### 4.     *Class 4—General Unsecured Claims*

(a)     *Classification*: Class 4 consists of all General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in full satisfaction, discharge, settlement, release, and compromise of and in exchange for each General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive on the Initial Distribution Date, or as soon as practicable thereafter, its Pro Rata Share of Distribution of (i) the assets of the Debtor's Estate, and (ii) proceeds of the GUC Note. The Reorganized Debtor reserves its right to dispute the validity of any General Unsecured Claim, whether or not objected to prior to the Effective Date.

(c)     *Impairment and Voting*: Class 4 is impaired by the Plan. Each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

### 6.     *Class 5—Unsecured Convenience Claims*

(a)     *Classification*: Class 5 consists of all Unsecured Convenience Claims.

(b)     *Treatment*: In full satisfaction, discharge, settlement, release, and compromise of and in exchange for the Unsecured Convenience Claims, each Holder of an Allowed Unsecured Convenience Claim shall receive on the Initial Distribution Date, or as soon as practicable thereafter, sixty percent (60%) of each individual Allowed Unsecured Convenience Claim.

(c)     *Impairment and Voting*: Class 5 is impaired by the Plan. Each Holder of an Unsecured Convenience Claim is entitled to vote to accept or reject the Plan.

### 7.     *Class 6—Deposit Claims*

(a)     *Classification*: Class 6 consists of all Claims held on account of prepaid ticket purchases.

(b)     *Treatment*: Except to the extent that the Holders of Claims in Class 6 agree to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of the Deposit Claims, the Deposit Claims shall be paid in full in Cash on or as soon as practicable after the later of: (a) the Effective Date; and (b) the date such Allowed Deposit Claim becomes Allowed.

(c)    *Impairment and Voting*:  Class 6 is unimpaired by the Plan.  The Holders of Claims in Class 5 are presumed to accept and therefore are not entitled to vote to accept or reject the Plan.

C.    *Acceptance or Rejection of the Plan*

1.    <u>Acceptance by an impaired Class</u>.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

2.    <u>Presumed Acceptance of the Plan</u>. Classes 1, 2 and 6 are unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

3.    <u>Voting Class</u>.  Classes 3, 4 and 5 are impaired under this Plan and are entitled to vote to accept or reject this Plan.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Funding for the Plan*

The Plan will be funded from Cash on hand of the Reorganized Debtor in the approximate amount of $208,000, the Cash the Reorganized Debtor derives from NYCO Renaissance in the amount of $1,250,000, the PBGC Note in the amount of $340,000, the GUC Note in the amount of $1,585,000, the Endowment in the approximate principal amount of $4.8 million, and the Pending Bequests.

B.    *Corporate Existence*

Except as otherwise provided in the Plan or Plan Supplement, the Reorganized Debtor shall continue to exist after the Effective Date as a not-for-profit corporate entity with all the powers of a corporation pursuant to the applicable laws of New York and pursuant to the corporate documents in effect prior to the Effective Date, as same may be amended, modified or revised by the Plan Sponsors to effectuate the transactions contemplated by the Plan.  In this regard, the Reorganized Debtor anticipates that it will adopt (to the extent not already in existence), amend or modify some or all of the following corporate documents, including the Certificate of Incorporation; By-Laws; Code of Conduct and Ethics; Conflict of Interest Policy; Board Member Evaluation Policy Statement; Gift Acceptance Policy; Investment Policy for all Institutional Funds; Investment Policy for Endowment Funds; Complaint Procedures for Accounting and Auditing Matters; Recommended Record Retention Guidelines; Whistleblower Policy; and Board Committee Charters for any Board Committees that currently exist or that may be formed, including an executive and finance committee to effectuate the transactions contemplated by the Plan as well as to bring the Reorganized Debtor's corporate documents into

compliance with the New York's Nonprofit Revitalization Act of 2013. All materially amended or modified corporate documents will be included in the Plan Supplement.

C.    *New Board Representation*

    1.    On the Effective Date, the New Board shall be deemed appointed.

    2.    Michael Capasso shall be the initial General Director of the Reorganized Debtor.

    3.    Roy Niederhoffer shall be the Chair of the New Board.

    4.    The member(s) of the New Board shall be disclosed in the Plan Supplement prior to the Disclosure and Confirmation Date in accordance with section 1129(a)(5) of the Bankruptcy Code.

    5.    The New Board shall be responsible for all activities of the Reorganized Debtor and shall oversee the administration and implementation of the Plan.

D.    *Restructuring Transactions*

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan; (2) the filing of appropriate corporate governance documents, including but not limited to, any new, amended or modified documents contained in the Plan Supplement with the appropriate governmental authorities pursuant to applicable law; and (3) all other actions that the Reorganized Debtor determines are necessary or appropriate.

E.    *Corporate Action*

Each of the matters provided for by the Plan (including the Plan Supplement) involving the corporate structure of the Reorganized Debtor or corporate, financing or related actions to be taken by or required of the Debtor or Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified as of the Effective Date in all respects without any requirement of further action by holders of Claims, the directors of the Debtor or any other entity. The Reorganized Debtor shall enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and conditions of the Plan.

F.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor, and the officers of the Reorganized Debtor and members of the New Board thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on

behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

G.    *Exemption from Certain Transfer Taxes and Recording Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from the Debtor to the Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

H.    *Management/Corporate Governance*

Jeffrey Laikind shall be the President of the Reorganized Debtor.  The names and qualifications of persons that will act as officers/ senior management of the Debtor as of the Effective Date shall be disclosed in the Plan Supplement in accordance with section 1129(a)(5) of the Bankruptcy Code.  The Reorganized Debtor's officers and other senior management, including Capasso, shall serve in accordance with any employment agreement that may be entered into with the Reorganized Debtor and applicable nonbankruptcy law.

The New Board will act to carefully protect accumulated assets and the Endowment and, to the extent received, the Pending Bequests, and ensure that current income is managed properly, acting as trustees in the literal and legal sense of the term. The New Board will draw on only the investment income (interest and dividends) of the Endowment, thereby preserving and ultimately restoring the principal thereof.  In addition, any use-restricted funds will be applied by the New Board only in a manner as intended by the donor.  Regardless of the degree of authority delegated to staff, committees, or affiliates, the New Board, and therefore the individual trustees, is ultimately accountable.  The New Board has the principal responsibility for fulfillment of the organization's mission and the legal/fiduciary accountability for its operations.  Members of the New Board are expected to act responsibly and in good faith, and with the basic interests of the company as the foremost objective.

As part of this process, the New Board will develop and approve the annual budget, and meticulously monitor the ongoing financial results of the Reorganized Debtor.  To do so, the New Board will engage management and staff to produce accurate and timely financial reports on a regular basis.  All New Board members will receive quarterly balance sheets with a

consolidated accounting of all assets and current liabilities.  Reports will also include statements of income and expenses, at a level of detail that clarifies the attribution of revenues and costs to various programs, and these reports also include clear analyses of ticket sales, fundraising results, deviations from projections, etc.  Monthly financial reports ("**MFRs**") will be provided to the treasurer and members of the finance and executive committees.  New Board members are expected to understand and comment on these reports, and are encouraged to suggest improvements in the formats and presentations of financial reports.  The New Board will also engage an annual audit by an independent certified public accountant or accounting firm.  A finance committee (the "**Finance Committee**") will be created on the Effective Date to work with the auditor during and after this process, and all New Board members will receive the audit report prior to the meeting at which it is to be discussed.  The Finance Committee will also help develop and approve the annual budget and monitor the ongoing financial results of the Reorganized Debtor through detailed data and reports.  Further, a strong financial overseer will be engaged with arts experience to ensure (and reassure donors) that funds will be spent appropriately and thoughtfully and to provide the New Board and management with clear and accurate financial data.

Additionally, for so long as the PBGC Note and the GUC Note remain outstanding, copies of all MFRs will also be delivered on a monthly basis to (a) a responsible person designated by the Committee prior to the Effective Date (and disclosed in the Plan Supplement), and (b) the Office of the New York Attorney General (Charities Bureau).  Further, the Finance Committee so established by the Reorganized Debtor shall make itself available for a standing conference call with such recipients on a quarterly basis in order to answer questions or discuss issues or matters related to the MFRs.  The following protocol shall be included in an amendment to the By-Laws and the Finance Committee Charter of the Reorganized Debtor described above.

The New Board will monitor current and proposed programs and services to ensure that they are consistent with the organization's stated mission and purposes.  Given limited resources and unlimited demands on them, the New Board will assist the General Director in deciding among competing priorities.  Recognizing the close ties between financial and programming decisions, the impact of programming choices on fundraising, audience attendance and earned income, and the impact of both of these on unearned income from funders, financial and programmatic decisions are not made independently of each other.  The New Board intends to strike a balance between its responsibility to ensure quality, cost-effective programs and services, and the staff's responsibility to creatively initiate and conduct them. Candor, openness and explicit job descriptions help negotiate an accommodation satisfactory to everyone.

As set forth above, the Reorganized Debtor shall maintain the Debtor's existing mission and historical practice in order to meet the needs of the various constituencies as determined by the New Board.

I.    *Committee*

As of the Effective Date, the Committee shall dissolve, its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case, and the retention and employment of the professionals retained

by the Committee shall terminate as of the Effective Date, *provided*, *however*, that the Committee shall exist, and its professionals shall be retained, after such date solely with respect to applications filed pursuant to sections 330 and 331 of the Bankruptcy Code.

J.      *Vesting of Assets in the Reorganized Debtor*

On the Effective Date, NYCO Renaissance will be dissolved and its assets will be distributed to the Reorganized Debtor in accordance with its Certificate of Incorporation, Delaware law and the requirements of the Internal Revenue Code.  Except as otherwise provided in this Plan or in any agreement, instrument or other document relating thereto, on and after the Effective Date pursuant to section 1141 of the Bankruptcy Code, all property of the Estate (including Avoidance Actions) and any property acquired by the Debtor pursuant hereto shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances; *provided however*, that nothing in this Plan shall release or terminate any restrictions donors imposed on the Endowment, any use-restricted funds or the Pending Bequests, nor shall anything contained herein change, alter or affect any loan made from the Endowment prior to the Petition Date.  Except as may be provided in this Plan or the Disclosure and Confirmation Order, on and after the Effective Date, the Reorganized Debtor may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE V.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Initial Distribution Date*

On the Initial Distribution Date or as soon thereafter as is reasonably practicable, the Reorganized Debtor shall make the Distributions required to be made under the Plan.

B.      *Disputed Claim Reserve*

1.      *Establishment of Disputed Claim Reserve*

On the Initial Distribution Date, and after making all Distributions required to be made on such date under the Plan, the Reorganized Debtor shall establish a separate Disputed Claim Reserve for Disputed Claims, which Disputed Claim Reserve shall be administered by the Reorganized Debtor.  The Reorganized Debtor shall reserve Distributions sufficient to provide Holders of Disputed Claims the treatment such Holders would be entitled to receive under the Plan if all such Disputed Claims were to become Allowed Claims (or such lesser amount as may be estimated by the Bankruptcy Court).

2.      *Maintenance of Disputed Claim Reserve*

The Reorganized Debtor shall hold Distributions in the Disputed Claim Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed.  The Reorganized Debtor shall, in its sole discretion, make such Distributions (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final

14

Order, and such Distributions will be distributable in respect of such Disputed Claims as such Distributions would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.

C.     *Quarterly Distributions*

On each Quarterly Distribution Date or as soon thereafter as is reasonably practicable, the Reorganized Debtor shall make the Distributions required to be made under the Plan on such date.  Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Reorganized Debtor as applicable, in the Disputed Claim Reserve pursuant to Article V.B.2 and Distributed on the first Quarterly Distribution Date after such Claim is Allowed.

D.     *Delivery of Distributions*

1.     <u>*General Provisions; Undeliverable Distributions*</u>

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Reorganized Debtor

Distributions to Holders of Allowed Claims will be made at (i) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim filed by such Holder or (ii) the last known address of such Holder if no Proof of Claim is filed.  Neither the Debtor, the Reorganized Debtor or their respective professionals shall incur any liability whatsoever on account of any Distributions under this Plan except for gross negligence, willful misconduct or fraud.

If any Distribution is returned as undeliverable, the Reorganized Debtor may, in its discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Reorganized Debtor deems appropriate. Amounts in respect of any undeliverable Distributions made by the Reorganized Debtor shall be returned to, and held in trust by, the Reorganized Debtor until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and as is set forth in the Plan.

Distributions that are not claimed by the expiration of one year from the Initial Distribution Date or Quarterly Distribution Date applicable to such Distribution, shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Debtor, and the Claims with respect to which those Distributions are made shall be automatically canceled, discharged and forever barred.  Except as otherwise provided herein, all funds or other property that vests or revests in the Reorganized Debtor pursuant to this Article shall be distributed by the Reorganized Debtor in accordance with the provisions of the Plan.

E.     *Manner of Cash Payments Under the Plan*

Cash payments made pursuant to the Plan shall be in United States dollars.

F.      *Limitations on Funding of Disputed Claim Reserve*

Except as expressly set forth herein, neither the Debtor nor the Reorganized Debtor shall have any duty to fund the Disputed Claim Reserve.

G.      *Compliance with Tax Requirements*

In connection with making Distributions under the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.D.

H.      *Setoff and Recoupment*

The Reorganized Debtor may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtor, the Estate or the Reorganized Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, or the Reorganized Debtor of any Claim or right of setoff or recoupment that any of them may have against the Holder of any Claim.

## ARTICLE VI.

## DISPUTED CLAIMS

A.      *No Distribution Pending Allowance*

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties and subject to the establishment of the Disputed Claim Reserve, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as provided in Article V.

B.      *Resolution of Disputed Claims*

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor shall, in its discretion, make, file, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims.

C.    *Objection Deadline*

All objections to Disputed Claims shall be filed and served upon the Holders of each such Claim on or before the Claims Objection Bar Date, unless otherwise ordered by Bankruptcy Court after notice and a hearing.

D.    *Disallowance of Claims*

Except as otherwise agreed, any and all Proofs of Claim filed after the applicable deadline shall be deemed disallowed and expunged as of the Effective Date without any further notice or action, order or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Disclosure and Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

1.    The Debtor was a party to a number of collective bargaining agreements ("**CBAs**") with various unions.  In connection with certain of the CBAs, the Debtor was required to maintain certain defined benefit pension plans.  A number of the collective bargaining agreements have expired.  NYCO Renaissance has reached an agreement in principle with Associated Musicians of Greater New York, Local 802, American Federations of Musicians and has commenced negotiations with certain unions with respect to new agreements, or amendments or modifications to existing agreements.  With respect to any other CBAs that have not yet expired, NYCO Renaissance intends to seek in good faith to amend or modify such agreements and cause the Reorganized Debtor to assume the CBAs as so revised.

2.    Executory contracts and unexpired leases that are listed in the Plan Supplement as executory contracts or unexpired leases to be assumed shall be deemed assumed by the Debtor as of immediately prior to the Effective Date, and the entry of the Disclosure and Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

3.    Executory contracts and unexpired leases that have not expired by their own terms on or prior to the Effective Date, which the Debtor has not assumed or rejected during the pendency of the Chapter 11 Case, which are not listed in the Plan Supplement as executory contracts or unexpired leases to be assumed, and that are not the subject of a motion to assume pending as of the Effective Date, shall be deemed rejected by the Debtor on the Effective Date. The entry of the Disclosure and Confirmation Order by the Bankruptcy Court shall constitute approval of any such assumptions or rejections, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

4.    Any objections to the proposed assumption or rejection of a contract must be filed by the applicable date established in the Solicitation Order.  Any counterparty to an executory

contract or unexpired lease that fails to object timely to the proposed assumption or rejection of any executory contract or unexpired lease will be deemed to have consented to such treatment.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Claims created by the rejection of executory contracts and unexpired leases pursuant to Article VII.A, or the expiration or termination of any executory contract or unexpired lease prior to the Effective Date, must be filed and served no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease pursuant to Article VII.A for which Proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Reorganized Debtor, the Estate, its successors and assigns, and its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.E  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III.

C.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor or the Reorganized Debtor that any such contract or lease is in fact an executory contract or unexpired lease or that the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## ARTICLE VIII.

## CONDITIONS PRECEDENT TO CONFIRMATION AND OCCURRENCE OF THE EFFECTIVE DATE

A.      *Conditions to Confirmation:*

The following are conditions precedent to confirmation that must be satisfied or waived in accordance with Article VIII.C:

1.      The Bankruptcy Court shall have approved the Disclosure Statement and the Plan as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code.

2.      All objections to confirmation of the Plan have either been withdrawn, resolved or overruled.

3.      The most current version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed.

B.    *Conditions Precedent to the Effective Date*

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with Article VIII.C:

1.    Entry of the Disclosure and Confirmation Order containing findings of fact and conclusions of law satisfactory to the Plan Sponsors.

C.    *Waiver of Conditions Precedent*

The Plan Sponsors may waive the occurrence of or modify any condition precedent in this Article VIII.  Any such waiver of a condition precedent set forth in this Article may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  The failure of the Plan Sponsors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## ARTICLE IX.

## DISCHARGE, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

A.    *Discharge of Claims*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge, effective as of the Effective Date, of all Claims and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against the Debtor, Reorganized Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such Claim, debt, or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim based upon such Claim, debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim has accepted the Plan.  The Disclosure and Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the Effective Date occurring, except as otherwise expressly provided herein.

B.    *Releases*

Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date, the Debtor on behalf of itself and the Estate, for the good and valuable consideration provided by each of the Releasees, hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released by the Debtor) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies and liabilities whatsoever, whether known or

unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor or Reorganized Debtor would have been legally entitled to assert or that any Holder of a Claim against the Debtor or other Entity would have been legally entitled to assert for or on behalf of the Debtor, the Reorganized Debtor or the Estate and further including those in any way related to the Chapter 11 Case or the Plan; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to be solely due to such Releasee's own gross negligence or willful misconduct.

Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date, each Holder of a Claim against the Debtor who votes in favor of the Plan, in consideration of the obligations provided under the Plan and for other good and valuable consideration provided by the Debtor and the Plan Sponsors, hereby provides a full release to the Releasees (and each such person or party so released shall be deemed released by each such Holder) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Releasees, the Chapter 11 Case or the Plan, *provided, however*, that the foregoing provisions shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to be solely due to such Releasee's own gross negligence or willful misconduct.

C.    *Exculpation*

Notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken after the Petition Date or omitted to be taken in connection with or in contemplation of the transactions occurring in the Chapter 11 Case; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Exculpated Party that results from any act or omission that is determined in a Final Order to be solely due to such Exculpated Party's own gross negligence or willful misconduct.

D.    *Preservation of Rights of Action*

1.    <u>*Vesting of Causes of Action*</u>

(a)    Except as otherwise provided in the Plan or Disclosure and Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of

Action that the Debtor may hold against any Entity shall vest upon the Effective Date in the Reorganized Debtor.

(b)    Except as otherwise provided in the Plan or Disclosure and Confirmation Order, after the Effective Date, the Reorganized Debtor shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action, in accordance with the terms of the Plan and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case. Without limiting the generality of the foregoing, upon the Effective Date, the Reorganized Debtor shall be deemed substituted for the Debtor in any pending adversary proceedings to which the Debtor is a party.

2.    _Preservation of All Causes of Action Not Expressly Settled or Released_

Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Disclosure and Confirmation Order), the Reorganized Debtor expressly reserves such Cause of Action for later adjudication by the Reorganized Debtor (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere or of which the Debtor or Reorganized Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or Reorganized Debtor at this time or facts or circumstances which may change or be different from those the Debtor or Reorganized Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of _res judicata,_ collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Disclosure and Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Disclosure and Confirmation Order, except where such Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B and C) or any other Final Order (including the Disclosure and Confirmation Order). In addition, the Reorganized Debtor expressly reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

E.    _Release and Injunction_

1.    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Reorganized Debtor, the Releasees, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released, exculpated, or to be exculpated, pursuant to the Plan or the Disclosure and Confirmation Order.

2.    Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Reorganized Debtor, or their successors and assigns and their assets and properties, any other Claims based upon any documents, instruments, or any act or

omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

3.       Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or Reorganized Debtor or any of their assets or properties.  On the Effective Date, all such Claims against the Debtor shall be satisfied and released in full.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PARTIES AND ENTITIES ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, ON ACCOUNT OF ANY CLAIM AGAINST THE DEBTOR THAT IS SATISFIED AND RELEASED HEREBY, FROM:

(a)       COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR THEIR SUCCESSORS AND ASSIGNS AND THEIR ASSETS AND PROPERTIES;

(b)       ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR, THE REORGANIZED DEBTOR THEIR SUCCESSORS AND ASSIGNS AND THEIR ASSETS AND PROPERTIES;

(c)       CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE REORGANIZED DEBTOR OR THE PROPERTY OR ESTATE OF THE DEBTOR OR REORGANIZED DEBTOR;

(d)       ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR AGAINST THE PROPERTY OR ESTATE OF THE DEBTOR OR REORGANIZED DEBTOR, EXCEPT TO THE EXTENT A RIGHT TO SETOFF OR SUBROGATION IS ASSERTED WITH RESPECT TO A TIMELY FILED PROOF OF CLAIM; OR

(e)       COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND IN RESPECT OF ANY CLAIM AGAINST THE DEBTOR OR CAUSE OF ACTION THAT IS RELEASED OR SETTLED HEREUNDER.

F.       *Special Provision Regarding the Pension Plan*

Nothing in the Debtor's bankruptcy proceeding, the Bankruptcy Code (and section 1141 thereof), the Disclosure and Confirmation Order or the Plan (including Article IX) shall in any way be construed to discharge, release, limit, or relieve any party for fiduciary breach related to the  Pension Plan.  The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan, Disclosure and

Confirmation Order, Bankruptcy Code, or any other document filed in the Debtor's bankruptcy case.

G.    *Releases of Liens*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate shall be fully released and discharged and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Reorganized Debtor.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding entry of the Disclosure and Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Reorganized Debtor and the Plan as is legally permissible, including, without limitation, jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

2.    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.    resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor or Reorganized Debtor, as applicable, is party or with respect to which the Debtor or Reorganized Debtor, as applicable, may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.A adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

4.    ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, *provided, however*, that the Reorganized Debtor shall reserve the right to commence actions in all appropriate jurisdictions;

6.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplement or the Disclosure Statement;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      enforce Article IX;

10.     resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

11.     enter and implement such orders as necessary or appropriate if the Disclosure and Confirmation Order is modified, stayed, reversed, revoked or vacated;

12.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Disclosure and Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

13.     enter an order and/or the decree contemplated in section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 concluding the Chapter 11 Case.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.    *Modification of Plan*

Subject to the limitations contained in the Plan: (1) the Plan Sponsors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Disclosure and Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Disclosure and Confirmation Order, the Plan Sponsors, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.      *Revocation of Plan*

The Plan Sponsors reserve the right to withdraw the Plan prior to the entry of the Disclosure and Confirmation Order, and to file subsequent chapter 11 plans.  If the Plan Sponsors withdraw the Plan, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission of any sort by the Debtor or any other Entity.

C.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

D.      *Governing Law*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

E.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Disclosure and Confirmation Order and the occurrence of the Effective Date.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Plan Sponsors or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtor with respect to the Holders of Claims or other parties-in-interest; or (ii) any Holder of a Claim or other party-in-interest prior to the Effective Date.

F.      *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Disclosure and Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

G.    *Section 1125(e) Good Faith Compliance*

Each of the Plan Sponsors, the Committee and the individual members thereof acting in their capacity as Committee members and members of NYCO Renaissance shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

H.    *Further Assurances*

The Debtor, the Reorganized Debtor, all Holders of Claims receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Disclosure and Confirmation Order.

I.    *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by first class U.S. mail, postage prepaid as follows:

To the Plan Sponsors:

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS LLP**
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Telephone:    (212) 972-3000
Facsimile:    (212) 972-2245
Sean C. Southard, Esq.
Maeghan J. McLoughlin, Esq.
ssouthard@klestadt.com
mmcloughlin@klestadt.com

*Counsel to Official Committee*

**DUANE MORRIS LLP**

1540 Broadway
New York, New York 10036-4086
Telephone:    (212) 692-1000
Facsimile:    (212) 692-1020
Gerard S. Catalanello, Esq.
James J. Vincequerra, Esq.
gcatalanello@duanemorris.com
jvincequerra@duanemorris.com

*Counsel to NYCO Renaissance, Ltd.*

To the Debtor:

**Lowenstein Sandler LLP**
Kenneth A. Rosen, Esq.
Nicole Stefanelli, Esq.
1251 Avenue of the Americas
New York, New York 10020
-and-
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)
krosen@lowenstein.com
nstefanelli@lowenstein.com

J.     *Filing of Additional Documents*

On or before the Effective Date, the Plan Sponsors or Reorganized Debtor, as applicable, may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

K.     *Fiduciary Withdrawal Option as Plan Co-Sponsor*

Notwithstanding anything to the contrary contained herein, prior to confirmation of the Plan, the Committee reserves the right to withdraw as joint proponent of this Plan and support an alternative plan of reorganization in the event that the Committee, in the reasonable exercise of its fiduciary responsibilities, should determine that a superior plan of reorganization is more advantageous for creditors of the Debtor.

Dated: December 2, 2015

**KLESTADT WINTERS JURELLER**                **DUANE MORRIS LLP**
**SOUTHARD STEVENS, LLP**
200 West 41st Street, 17th Floor                1540 Broadway
New York, New York 10036-7203                New York, New York 10036
Telephone:     (212) 972-3000                Telephone:     (212) 692-1000
Facsimile:     (212) 972-2245                Facsimile:     (212) 692-1020
Sean C. Southard, Esq.                       Gerard S. Catalanello, Esq.
Maeghan J. McLoughlin, Esq.                  James J. Vincequerra, Esq.
ssouthard@klestadt.com                       gcatalanello@duanemorris.com
mmcloughlin@klestadt.com                     jvincequerra@duanemorris.com

*Counsel to Official Committee of*           *Counsel to NYCO Renaissance, Ltd.,*
*Unsecured Creditors, Plan Co-Sponsor*       *Plan Co-Sponsor*