**ERIC T. SCHNEIDERMAN,  ATTORNEY
GENERAL OF THE STATE OF NEW YORK**
Rose Firestein
120 Broadway, 3rd Floor
New York, NY 10271
(212)416-8325
*Statutory Representative of the Ultimate
Charitable Beneficiaries*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                       :

In re New York City Opera, Inc.     :        Chapter 11
                                         :
          Debtor.           :        Case No. 13-13240 (SHL)
                                         :
-------------------------------------------------------X


### <u>APPENDIX TO</u>


**Affirmation in Support of the New York Attorney General's
(1) Response to the Joint Plan for Reorganization Submitted
by NYCO Renaissance and the Official Committee of
Unsecured Creditors [Docket Nos. 314 and 315] and (2)
Objection to New Vision's § 503(b) Application for Expenses
Including Counsel Fees [Docket No. 321]**


**VOLUME 4**

**Exhibits 10-16**

# EXHIBIT 10

## Materials Relating to the DeMenasce Estate
## Including a Copy of the Will

# LAST WILL AND TESTAMENT

## OF

### PIERRE DE MENASCE

I, PIERRE DE MENASCE, unmarried, of the City, County and State of New York do hereby make, publish and declare this to be my Last Will, hereby revoking all prior Wills which relate to my property in the United States of America.

I have previously executed a Will, dated June 23, 1987, disposing of my real and/or personal property not situate in the United States of America, which continues in full force and effect. The United States Will, which I am signing today, shall govern as to all of my real and/or personal property situate in the United States of America.

**FIRST:**    All household and personal effects, including jewelry, clothing, pictures, books, objects of art, and other tangible personal property belonging to me at my death shall go as part of my residuary estate.

**SECOND:**    Should my estate be insufficient to pay all the money gifts provided in this Will, then I direct that the gifts in Paragraph THIRD shall have priority over those in Paragraph FOURTH and all said gifts shall have priority over my residuary estate. Those gifts having priority shall be paid in full before the gifts having a lower priority are to be paid pro rata.

**THIRD:**    I give:

(a)    TWO HUNDRED FIFTY THOUSAND ($250,000) DOLLARS to my cousin, JACQUES MAWAS, now of Kerridge, Bishop's Lane, Ringmer, East Sussex, BN8-5LD England;

(b)    TWO HUNDRED FIFTY THOUSAND ($250,000) DOLLARS to my cousin, FIONA ELLISON;

Should my estate be insufficient to pay all th...

_Pierre de Menasce_

PIERRE DE MENASCE

1

(c)    TWO HUNDRED FIFTY THOUSAND ($250,000) DOLLARS to my cousin, BEATRICE EMIR, (the sister of said JACQUES MAWAS), now of 48 Quai le Gallo (Apt. 1140), 92100 Boulogne, France.

(d)    TWO HUNDRED FIFTY THOUSAND ($250,000) DOLLARS to my cousin, ERIC J. VINCENDON, now of 3445 Drummond Street, Apt. 1203, H3G-1X9, Montreal, Canada.

(e)    TWENTY-FIVE THOUSAND ($25,000) DOLLARS to my friend and accountant, IRA GOLDBERG, now of Gettry Marcus Stern & Lehrer, 220 Fifth Avenue, New York, New York 10001. This bequest is being done at my own initiative and was not requested or influenced by IRA GOLDBERG.

If any of the individual beneficiaries named in this paragraph THIRD of my Will shall not survive me, his or her bequest shall lapse.

FOURTH:    I give the following charitable bequests:

(a)    ONE MILLION ($1,000,000.00) DOLLARS to PLANNED PARENTHOOD OF NEW YORK CITY, INC., 26 Bleecker Street, New York, New York 10012;

(b)    TWO HUNDRED FIFTY THOUSAND ($250,000) DOLLARS to the NEW YORK CITY OPERA, New York State Theater, Lincoln Center, New York, New York;

(c)    FIVE HUNDRED THOUSAND ($500,000) DOLLARS to THE EYE BANK FOR SIGHT RESTORATION, INC., 120 Wall Street, New York, New York 10005-3902;

(d)    FIVE HUNDRED THOUSAND ($500,000) DOLLARS to the MUSEUM OF THE CITY OF NEW YORK, INC., 5th Avenue and 103rd Street, New York, New York;

(e)    TWO MILLION ($2,000,000) DOLLARS to SELFHELP COMMUNITY SERVICES, INC., 520 Eighth Avenue, New York, New York 10018; and

*Pierre de Menasce*

PIERRE DE MENASCE

(f)    TWO MILLION ($2,000,000) DOLLARS to B'NAI KESHET RECONSTRUCTIONIST SYNAGOGUE, 99 South Fullerton Avenue, Montclair, New Jersey 07042, in honor of my friend and accountant, Ira H. Goldberg.

FIFTH: I give all the residue of my estate of whatsoever kind and wheresoever situate, including lapsed gifts, as follows:

(a)    FORTY (40%) PERCENT thereof to said PLANNED PARENTHOOD OF NEW YORK CITY, INC.

(b)    TEN (10%) PERCENT thereof to said NEW YORK CITY OPERA;

(c)    FORTY (40%) PERCENT thereof to said EYE BANK FOR SIGHT RESTORATION, INC.; and

(d)    TEN (10%) PERCENT thereof to said MUSEUM OF THE CITY OF NEW YORK, INC.

If any of the charitable organizations named in Paragraphs FOURTH and FIFTH of this Will should not be in existence at my death or should no longer be exempt from the estate tax, if any, then its bequest shall instead be given to the said PLANNED PARENTHOOD OF NEW YORK CITY, INC.

SIXTH:    No estate or other death tax imposed under any law of the United States, of any state or territory thereof, of the District of Columbia, and/or of any foreign country or subdivision thereof, upon or with respect to any property includible in my taxable estate shall be apportioned, but every such tax shall be paid as an expense out of my residuary estate.

SEVENTH:    Without limiting their general powers, I authorize my Executors:

(a)    To sell, lease or otherwise dispose of any part of my real or personal property, at such times and upon such terms, as they may deem best; to invest the assets of my estate in such securities and properties as they in their discretion may determine, whether or not authorized by law for investment of trust funds; and to retain for any period any investment made or property held by me, no matter how speculative; and

_Pierre de Menasce_

PIERRE DE MENASCE

3

(b)    To employ such accountants, attorneys, custodians, investment counsel and other persons as they may deem necessary in the administration of my estate, and to pay them such compensation as they may deem proper, even though they may also be Executors.

EIGHTH:    I appoint my attorneys, ERNEST L. BIAL, and ISAAC A. SAUFER, and my accountant, IRA H. GOLDBERG, as Executors of this, my Last Will.  Should both said ERNEST L. BIAL and ISAAC A. SAUFER fail or cease to act as Executor, then I appoint their law partner, PHYLLIS WEISBERG, as substitute Executor in their place.  Should two members of the firm of KURZMAN KARELSEN & FRANK, LLP be serving as my Executors at the same time, the total commissions payable to said Executors, whether named herein or appointed pursuant to the power herein conferred upon my Executors, shall not exceed a full commission payable to a single Executor under the laws of the State of New York.  I direct that wherever the term "Executors" is used in this my Last Will, it shall be construed to mean only such persons as shall qualify, and their survivors and successors, whether appointed under the power hereinafter conferred or by any Court.  I authorize my non-corporate Executors then acting, in their discretion, subject to the foregoing substitute appointments, to fill any vacancy when the same may occur, with the same rights and powers as if originally named herein as one of my Executors.  Such appointment and the acceptance thereof shall be duly acknowledged and filed in the office of the Clerk of the Court in which this Will shall have been probated.  Any appointment of a successor Executor in advance, may be similarly revoked at any time before the occurrence of such vacancy.  Such advance appointment need not be filed until the same becomes effective.  An Executor not joining in any action shall not be liable or responsible in respect thereof.  None of my Executors whether originally named herein or appointed under the power herein conferred upon my Executors shall be required to give any bond for the faithful performance of his or her duties hereunder, or in connection with issuance of preliminary letters testamentary or any application for payment of commissions on account, whether or not a resident of the State in which my Will shall have been probated.

_Pierre deMenasce_

PIERRE DE MENASCE

I further direct that should any of my Executors named in my Will, or appointed pursuant to the provisions of this Will, desire to resign, he may do so by instrument in writing addressed to his or her co-Executors and any release or discharge executed by such co-Executors to the Executor resigning shall be a complete release from any liability whatsoever to my estate on the part of such Executor so resigning, and upon the consent to the judicial discharge of such Executor so resigning executed by his or her Co-Executors for the time being, any court of competent jurisdiction may grant the proper order or decree permitting such Executor to resign and discharging him or her from all liability without an accounting and without notice to or consent of any of the beneficiaries under my will.

I have appointed the above-named ERNEST L. BIAL and ISAAC A. SAUFER, as Executors, and PHYLLIS WEISBERG, as substitute Executor, in this my Last Will, because I have no relatives or friends whom I would choose for such position. The aforementioned persons are members of the firm of KURZMAN KARELSEN & FRANK, LLP, successor to KURZMAN & FRANK, who have been attorneys for myself and my family for a great number of years. I understand that they will receive compensation for their services as Executors and their said law firm will also receive compensation for legal services rendered to my estate. I have appointed the above-named IRA H. GOLDBERG as a co-Executor, in this my Last Will, because he has been my accountant for many years and is familiar with my financial affairs.

NINTH:    In the event that any beneficiary named herein shall, directly or indirectly, under any pretense or for any cause or reason whatever, oppose the probate of my Last Will and Testament, or institute, abet, take or share, directly or indirectly, in any action or proceeding against my estate to impeach, impair, set aside, or invalidate any of the provisions of my Last Will and Testament, or make any agreement, direct or indirect, in connection with any of the foregoing, with any person instituting, abetting, taking or sharing in such action, directly or indirectly, I do hereby

*Pierre deMenasce*

PIERRE DE MENASCE

revoke any and all devises, bequests, or other provisions to or for the benefit of any such person, and

I direct that any such devises, bequests or other provisions, to or for the benefit of any such person,

shall be disposed of as if such person had predeceased me.

IN WITNESS WHEREOF, I have duly executed this, my Last Will, on

December 3                                    Two Thousand and Ten.

*Pierre de Menasce*

**PIERRE DE MENASCE**

SIGNED, SEALED, PUBLISHED and DECLARED by PIERRE DE
MENASCE, the Testator, as his Last Will in the presence of us and
each of us, who, at his request, in his presence and in the presence of
each other have hereunto subscribed our names as witnesses the day
and year last above written; this clause having first been read to us
and we having noted and hereby certifying that the matters herein
described took place in fact and in the order stated. This Will consists
of six sheets, each of which bears the signature of the Testator.

Signature: _____    Address: _____

Print Name: ERNEST L. BIAL              9 Beechdale Road
                                         Dobbs Ferry, NY 10522

Signature: _____    Address: _____

Print Name: Lydia Beckerman             321 Crista Dr.
                                         C. Walson, N.J. 08520

Signature: _____    Address: _____

Print Name: MARY ANN LAMBETH            26-45 29th St.
                                         Astoria, NY 11102

6

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK     )

Each of the undersigned, individually and severally being duly sworn, deposes and says:

The within Will was subscribed in our presence and sight at the end thereof by PIERRE DE MENASCE, the Testator, on the 3rd day of December    , 2010 at 230 Park Avenue, New York, New York 10169.

Said Testator, at the time of making such subscription, declared the instrument so subscribed to be his Last Will.

Each of the undersigned thereupon signed his or her name as a witness at the end of said Will at the request of said Testator and in his presence and sight and in the presence and sight of each other.

Said Testator was, at the time of so executing said Will over the age of 18 years and, in the respective opinions of the undersigned, of sound mind, memory and understanding and not under any restraint or in any respect incompetent to make a Will.

The Testator, in the respective opinions of the undersigned, could read, write and converse in the English language and was suffering from no defect of sight, hearing or speech, or from any other physical or mental impairment which would affect his capacity to make a valid Will. The Will was executed as a single, original instrument and was not executed in counterparts.

Each of the undersigned was acquainted with said Testator at such time and makes this affidavit at his request.

The within Will was shown to the undersigned at the time the affidavit was made, and was examined by each of them as to the signature of said Testator and of the undersigned.

The foregoing instrument was executed by the Testator and witnessed by each of the undersigned affiants under the supervision of the undersigned, Ernest L. Bial, an attorney at law.

Sworn to before me this

3rd day of December 2010

Notary Public

PATRICIA M. BOTTONE
Notary Public, State of New York
No. 01BO4920634
Qualified in Suffolk County
Commission Expires February 16, 20__

# EXHIBIT 11

## New York Times Article that Identifies
## The Date of City Opera's Last Performance



**The New York Times** | http://nyti.ms/1hdIY8m

MUSIC

# Veterans of City Opera, Proudly Wistful, Reflect as the Curtain Falls

**By MICHAEL COOPER**   SEPT. 29, 2013

Shortly before New York City Opera put on what will most likely be its final performance on Saturday night, Julius Rudel, the maestro who helped build and lead the company in its heyday, sat in his Manhattan apartment and, surrounded by mementos from the troupe's glory days, expressed his dismay at its probable impending demise.

"I would not have thought in my wildest dreams," said Mr. Rudel, 92, "that I would outlive the opera company."

The walls of his apartment bear testament to the creation of a company that rose to ambitious heights. A framed program from its very first season credits him for the job he landed there 70 years ago this month: Julius Rudel, répétiteur (a musician who assists at rehearsals). A sketch shows the diabolical costume for the title role in Boito's "Mefistofele." Another shows the set of "Pelléas et Mélisande." Now Mr. Rudel is closely following the company's peril.

"I think it's a real operatic tragedy," said Mr. Rudel, who led City Opera for 22 eventful years, presenting daring new works and crowd-pleasing productions and conducting treasured performances with singers like Beverly Sills and, on the company's first night at its new home in Lincoln Center in 1966, a young Plácido Domingo.

That sense of shock and dismay was palpable later on Saturday night at the Brooklyn Academy of Music, where the members of the company presented the final performance of Mark-Anthony Turnage's "Anna Nicole." Absent a last-minute gift of millions, it was expected to be the final performance City Opera ever gives. The opera's board voted last week to begin dissolving the company if it fails to raise the $7 million needed to finish the current season by Monday — a target that is proving elusive.

Nancy McAlhany, a first violinist who has been with the company for more than three decades, said that even after all the bad news in recent years, it was difficult to believe that the troupe would really close. "I'm having trouble grasping this," she said.

To opera fans, the all-but-certain demise of City Opera portends a future with fewer choices and fewer off-the-beaten-path works. To arts administrators, it offers lessons in how a series of bad management decisions over the years could ultimately prove fatal. But to the singers and musicians who make up the backbone of the company, it would mean a loss of performing traditions, the disappearance of another

13-13240-shl    Doc 331-5    Filed 01/04/16    Entered 01/04/16 15:19:13    Exhibits
10-16    Pg 12 of 32

To opera fans, the all-but-certain demise of City Opera portends a future with fewer choices and fewer off-the-beaten-path works. To arts administrators, it offers lessons in how a series of bad management decisions over the years could ultimately prove fatal. But to the singers and musicians who make up the backbone of the company, it would mean a loss of performing traditions, the disappearance of another company that gives performers work, and farewells to colleagues who have grown close over the years.

Bridget Hendrix, a soprano who started in the City Opera chorus three decades ago — her first role was as one of the cigarette-factory girls in "Carmen" — said that "the beauty of the company was that we were such a family."

"We spent 12 hours a day there between rehearsals and performance — we lived there," she recalled. "The fun that we have in the dressing room, that's going to be sorely missed. Having the girls in the dressing room talking about everything, it was like group therapy. We know too much about each other."

Several veterans of the company said that they feared their fate was sealed when the troupe left its Lincoln Center home in 2011 and drastically cut back on the number of performances that it gave each year. They shared some favorite memories from their tenure with the company as it stood on the brink of extinction.

Stewart Rose, a principal horn player who began with the orchestra in 1977, remembered playing in the pit during his first few years while Sills, the company's reigning diva, sang performances of "Manon" and "The Merry Widow."

"Just incredible," he recalled. "It was the end of her career, but it was still magical to hear her."

Ms. McAlhany thought back to the company's popular production of "Mefistofele," which was originally mounted for the bass-baritone Norman Treigle but, in her era, became a star vehicle for Samuel Ramey in his prime. She recalled the dramatic flourish that Mr. Rudel used to begin the piece, with the house cloaked in darkness.

"The house was completely black," she said. "Julius was on the podium, and in the blackness, he had a baton with a little light on the end — very tiny. He would raise it for the upbeat, and we would play in the dark."

(Mr. Rudel also recalled those performances fondly. Asked about the lighted baton he used to signal the players, he said, "They had to start together somehow.")

Ms. Hendrix remembered rehearsing for a production of Stephen Sondheim's "Sweeney Todd" when Mr. Sondheim suddenly got up on the stage, introduced himself and offered some advice. "He said, 'You want to seduce the audience, pull them in — then you destroy them,'" she recalled. "Seduce and destroy!"

Several troupers recalled the 2001 season — which had been scheduled to start on Sept. 11 with a new production of Wagner's "Fliegende Holländer." It was canceled after the terrorist attacks, and presented a few days later at a Saturday matinee.

Mr. Rose said the company had been unsure of what to do. "That was quite a show," he recalled. "People asked, should we be doing this or not? And it turned out we were absolutely right to be doing it. There was such a feeling of warmth and love in the house from the audience and the company. I'll never forget that."

Ms. Hendrix said that the Saturday evening performance, of Gilbert and Sullivan's "Mikado," was an even bigger challenge. "It's a comedy," she recalled. "We wondered, how are we going to do this in this tragic time, with a cloud looming over everyone?"

"And the most wonderful thing was when we came out and sang 'The Star-Spangled Banner' onstage, with the orchestra and the cast," she remembered. "It was like the audience wanted it. They wanted, for those couple of hours, to escape, and that's what we gave them. They were just ready for something light, to forget for a while."

Mr. Rudel recalled how he had initially been wary of leaving the company's first home, at City Center, for the newly built Lincoln Center. "We were used to such frugal living, it seemed a bit daring to come within 60 feet of the Met," he said. But he said that he came to see it as the right thing to do. "Suddenly, you were playing with the grown-ups," he said, adding that he thought it was a mistake for the company to leave Lincoln Center and cut back on operas in 2011.

After the curtain fell on "Anna Nicole" on Saturday night, Ms. Hendrix said, there were sobs in the dressing rooms. She said that Robert Brubaker — the tenor who played Anna Nicole Smith's elderly billionaire husband, who collapses at one point only to sing the phrase "Not dead yet!" — told members of the company that the line was dedicated to them.

Then the members of the chorus, and a few of the principals, gathered in an Italian restaurant on DeKalb Avenue for a closing-night party — and goodbyes. They celebrated a dancer's birthday with a rousing rendition of "Happy Birthday" as only an opera company can give, with intricate harmonies and clarion high notes.

It may be the last time they sing together.

A version of this article appears in print on September 30, 2013, on page C1 of the New York edition with the headline: Veterans of City Opera, Proudly Wistful, Reflect as the Curtain Falls.

© 2015 The New York Times Company

# EXHIBIT 12

**E-Mail from NYCO Renaissance's
Counsel Concerning (1) Missing 5th Year of
Plan's Projections, (2) NYCO Renaissance's
Intention to Pay New Vision the Amount of Its
§ 503(b) Demand and (3) the Increase in the
Amount of the GUC and PBGC Promissory Notes**

| | |
|---|---|
| **From:** | Catalanello, Gerard S. <GCatalanello@duanemorris.com> |
| **Sent:** | Thursday, December 24, 2015 11:29 AM |
| **To:** | Rose Firestein |
| **Cc:** | Kordas, Anna |
| **Subject:** | Re: Projections for year 5 are missing; payment to New Vision |

Rose - I forgot to mention in my email below that my client also agreed to increase the payments to creditors (GUCs and PBGC) as part of the amended plan from $1,400,000 to 1,925,000. The increase was made in part to limit any impact of the 503b application on theses creditors. Specifically, the GUC Note was increased from $1,150,000 to $1,585,000, and the PBGC Note was increased from $250,000 to $340,000. I want to be sure that you are aware of these material increases for creditors from our initial plan.

Thanks.

Gerard S. Catalanello
Partner
Duane Morris LLP
1540 Broadway
New York, New York 10036
(p) 212-692-1037
(f) 212-672-1173
(c) 347-205-2920
gcatalanello@duanemorris.com

Sent from iPhone

On Dec 23, 2015, at 6:08 PM, Rose Firestein <Rose.Firestein@ag.ny.gov> wrote:

> Thanks for the clarification.
>
> **From:** Catalanello, Gerard S. [mailto:GCatalanello@duanemorris.com]
> **Sent:** Wednesday, December 23, 2015 5:14 PM
> **To:** Rose Firestein
> **Cc:** Stefanelli, Nicole (NStefanelli@lowenstein.com); Sean Southard (SSouthard@klestadt.com); Stefanie Roth (Stefanie@eyrlaw.com); Kordas, Anna
> **Subject:** Re: Projections for year 5 are missing; payment to New Vision
>
> Rose - We went back and confirmed that the PDF cut off year 5. Anna will send it to you now. Apologies for the confusion. As for the 503b Application, as we discussed last week, when we settled the litigation Kaufman's counsel requested some protection so that, in the event the Application was denied, his client would have some recourse given that his client was withdrawing his plan before my client's plan was confirmed by the court. Given that all of the parties desired to move forward with the plan process without further delay, and because the withdrawal of Kaufman's plan would leave Kaufman with no meaningful recourse if my client's plan was not approved with his Application, NYCOR agreed to guarantee the payment of the claim. Since the claim is to be paid under the plan and because the plan is being funded on the effective date primarily by Roy's $1.25m contribution, it all comes back to NYCOR. Let me know if you have any other questions.

1

Gerard S. Catalanello
Partner
Duane Morris LLP
1540 Broadway
New York, New York 10036
(p) 212-692-1037
(f) 212-672-1173
(c) 347-205-2920
gcatalanello@duanemorris.com

Sent from iPhone

On Dec 23, 2015, at 4:22 PM, Rose Firestein <Rose.Firestein@ag.ny.gov> wrote:

> Gerard,
>
> Are you aware that the projections that assume the Reorganized Debtor will receive the Pending Bequests and Endowment (the right side of the page) only go to year four? I checked the document on PACER to make sure I hadn't just cut the last year off, but it really isn't there. If there are year five projections, would you please send them to me.
>
> Also, I just want to make sure I have this right. It is my understanding from our earlier conversation that if the Court were to deny New Vision's § 503(b) application for allowance of administrative expenses for counsel fees and other expenses in making a substantial contribution in this case (docket no. 321), NYCO Renaissance and/or the Reorganized Debtor will pay New Vision and/or Kaufman the amount sought by the application (or some other amount) to cover these costs.
>
> Thanks for your help.
>
> Rose
> Rose Firestein
> Assistant Attorney General
> Charities Bureau
> 120 Broadway, 3rd Floor
> New York, NY 10271
> 212-416-8325

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

For more information about Duane Morris, please visit http://www.DuaneMorris.com

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed. If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

# EXHIBIT 13

## NYCO Renaissance's
## Certificate of Incorporation

CERTIFICATE OF INCORPORATION
A NON-STOCK AND NON-PROFIT CORPORATION
OF
NYCO RENAISSANCE, LTD.

The undersigned, a natural person of the age of eighteen (18) or over, desiring to form a corporation pursuant to the provisions of the General Corporation Law of the State of Delaware does hereby certify:

1.     The name of the corporation is NYCO Renaissance, Ltd. (the "Corporation").

2.     The registered office of the Corporation in the State of Delaware is to be located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801  The name of the registered agent is The Corporation Trust Company.

3.     This Corporation shall be a nonprofit corporation, and is organized and shall at all times be operated exclusively for charitable, education or scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), or any corresponding section of any future United States federal tax code, including (among other things):

(a)     To encourage the study of the art of the opera and to provide the means for popular instruction and enjoyment through the production or presentation of operatic performances;

(b)     To present, develop and encourage the highest excellence in the art of the opera;

(c)     To make performances accessible to the largest possible audiences, encompassing a diverse economic and social spectrum;

(d)     To provide the Corporation's artists, performers, managers and employees with an atmosphere of freedom to pursue creative objectives, and with working conditions altogether encouraging excellence in the arts, human dignity and individual freedom;

(e)     To engage in the public solicitation of funds by means of public and private appeals, special fund raising events, and any other means that are lawful; and

(f)     To conduct any and all other activities as shall from time to time be found appropriate in connection with the foregoing as are lawful for not-profit corporations.

4.     The Corporation shall not have any capital stock, and the conditions of membership shall be stated in the By Laws.

5.     No part of net earnings of the Corporation shall inure to the benefit of its members, trustees, officers or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make

payments and distributions in furtherance of the purposes set forth in Article 3. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise the attempting to influence legislation, and the Corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office. Notwithstanding any other provision of this Certificate, the Corporation shall not carry on any other activities not permitted to be carried on by a corporation (a) exempt from United States federal income tax under Section 501(c)(3) of the Code, or the corresponding section of any future United States federal tax code, or (b) contributions to which are deductible under Section 170(c)(2) of the Code, or the corresponding section of any future United States federal tax code.

6.    Upon dissolution of the Corporation, assets shall be distributed for one or more exempt purposes within the meaning of Section 501(c)(3) of the Code, or corresponding section of any future United States federal tax code, or shall be distributed to the United States government, or to a state or local government, for a public purpose. Any such assets not so distributed shall be disposed of by a court of competent jurisdiction of the jurisdiction in which the principal office of the Corporation is then located exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes.

7.    The name and mailing address of the incorporator are as follows:

Alexandra Slavet, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036

THE UNDERSIGNED, declares and certifies that the facts herein stated are true, and accordingly have hereunto set my hand this ___ day of March, 2014.

/s/ Alexandra Slavet
Alexandra Slavet
Incorporator

NYCO Renaissance, Ltd.          46-5145029      Form 1023 Supplemental Response

# Certificate of Incorporation

# Delaware

PAGE 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF INCORPORATION OF "NYCO RENAISSANCE, LTD.", FILED IN THIS OFFICE ON THE TENTH DAY OF MARCH, A.D. 2014, AT 5:51 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1196074

DATE: 03-11-14

5495543  8100

140311796

You may verify this certificate online
at corp.delaware.gov/authver.shtml

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:11 PM 03/10/2014*
*FILED 05:51 PM 03/10/2014*
*SRV 140311796 - 5495543 FILE*

CERTIFICATE OF INCORPORATION

OF

NYCO RENAISSANCE, LTD.

under

The Delaware General Corporation Law

# EXHIBIT 14

**Page from the Website of the
Delaware Department of State,
Division of Corporations, Stating
New Vision's Date of Incorporation**



Delaware.gov | Text Only                    Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

Frequently Asked Questions    View Search Results

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
Bulk Tax Payment (alternative entity payment only)
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of Documents

## Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | |
|---|---|---|
| File Number: | 5671980 | Incorporation Date / Formation Date: | 1/9/2015 (mm/dd/yyyy) |
| Entity Name: | NEW VISION FOR NYC OPERA, INC. | | |
| Entity Kind: | Corporation | Entity Type: | Exempt |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| | | |
|---|---|---|
| Name: | NATIONAL CORPORATE RESEARCH, LTD. | |
| Address: | 850 NEW BURTON ROAD SUITE 201 | |
| City: | DOVER | County: Kent |
| State: | DE | Postal Code: 19904 |
| Phone: | 302-734-1450 | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information [Submit]

[Back to Entity Search]

For help on a particular field click on the Field Tag to take you to the help area.

site map | about this site | contact us | translate | delaware.gov | release notes

# EXHIBIT 15

### Pages from the Website of the
### New York Department of State,
### Division of Corporations, Stating
### The Dates New Vision (1) Registered
### With the New York Department of State as
### A Business Corporation, (2) Surrendered
### Its Authority and (3) Registered as a
### Foreign Not-for-Profit Corporation

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 24, 2015.

Selected Entity Name: NEW VISION FOR NYC OPERA, INC.

Selected Entity Status Information

**Current Entity Name:** NEW VISION FOR NYC OPERA, INC.

**DOS ID #:** 4773381

**Initial DOS Filing Date:** JUNE 11, 2015

**County:** NEW YORK

**Jurisdiction:** DELAWARE

**Entity Type:** FOREIGN BUSINESS CORPORATION

**Current Entity Status:** INACTIVE - Surrender of Authority (Aug 07, 2015)

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

NEW VISION FOR NYC OPERA, INC.
C/O GENE KAUFMAN
525 BROADWAY, 8TH FLOOR
NEW YORK, NEW YORK, 10012

Registered Agent

NONE

This office does not record information regarding the names
and addresses of officers, shareholders or directors of
nonprofessional corporations except the chief executive officer,
if provided, which would be listed above. Professional
corporations must include the name(s) and address(es) of the
initial officers, directors, and shareholders in the initial
certificate of incorporation, however this information is not
recorded and only available by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| JUN 11, 2015 | Actual | NEW VISION FOR NYC OPERA, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 24, 2015.

Selected Entity Name: NEW VISION FOR NYC OPERA, INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | NEW VISION FOR NYC OPERA, INC. |
| **DOS ID #:** | 4801737 |
| **Initial DOS Filing Date:** | AUGUST 07, 2015 |
| **County:** | NEW YORK |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN NOT-FOR-PROFIT CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
NEW VISION FOR NYC OPERA, INC.
C/O GENE KAUFMAN
525 BROADWAY, 8TH FLOOR
NEW YORK, NEW YORK, 10012

Registered Agent

NONE

This office does not record information regarding the names
and addresses of officers, shareholders or directors of
nonprofessional corporations except the chief executive officer,
if provided, which would be listed above. Professional
corporations must include the name(s) and address(es) of the
initial officers, directors, and shareholders in the initial
certificate of incorporation, however this information is not
recorded and only available by viewing the certificate.

*Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| No Information Available | | |

12/26/2015 12:18 PM

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| AUG 07, 2015 | Actual | NEW VISION FOR NYC OPERA, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

12/26/2015 12:18 PM

# EXHIBIT 16

**E-Mail Thread Between the Debtor's
Counsel and the OAG Identifying the
Estimated Value of the Pending Bequests
As a Gross, not a Net, Number**

**Rose Firestein**

| | |
|---|---|
| **From:** | Stefanie Roth <Stefanie@eyrlaw.com> |
| **Sent:** | Thursday, December 31, 2015 2:33 PM |
| **To:** | Rose Firestein |
| **Subject:** | Re: A quick NYCO question |

Gross!  Happy new year!

Sent from my iPhone

On Dec 31, 2015, at 1:31 PM, Rose Firestein <Rose.Firestein@ag.ny.gov> wrote:

> Stefanie,
>
> Sorry to bother you on the last day of the year, but I cannot remember if you said the estimated values of the Pending Bequests are gross or net numbers.  If you could let me know today or tomorrow by e-mail or phone, I would really appreciate it.
>
> Thanks and have a great new year.
>
> Rose

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.