**ERIC T. SCHNEIDERMAN, ATTORNEY
GENERAL OF THE STATE OF NEW YORK**
Rose Firestein
120 Broadway, 3rd Floor
New York, NY 10271
(212)416-8325
*Statutory Representative of the Ultimate
Charitable Beneficiaries*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                                         :

In re New York City Opera, Inc.           :         Chapter 11
                                                   :
            Debtor.                  :         Case No. 13-13240 (SHL)
                                                   :
-------------------------------------------------------X

**THE NEW YORK ATTORNEY GENERAL'S OBJECTION
TO NEW VISION'S § 503(b) APPLICATION FOR
<u>EXPENSES INCLUDING COUNSEL FEES [Docket No. 321]</u>**

I) **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF THE FACTS .......................................................................................2

THE LEGAL STANDARD FOR FINDING THAT A PARTY MADE A
"SUBSTANTIAL CONTRIBUTION"...............................................................................9

ARGUMENT....................................................................................................................13

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Federal Statutes**

11 U.S.C. § 503(b)(3)(D) ...............................................................................................1, 9

11 U.S.C. § 503(b)(4) ....................................................................................................1, 9

**New York Statutes**

Estates, Powers and Trusts Law § 8-1.1(f) .........................................................................1

**Federal Cases**

*In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. Aug. 18, 1993) .............. 10, 11, 13

*In re AMR Corp.*, 2014 Bankr. LEXIS 3298 (Bankr. S.D.N.Y. August 5, 2014) ............ 10, 11, 12

*In re Bayou Group, LLC*, 431 B.R. 549 (Bankr. S.D.N.Y. 2010) ............................. 10, 11, 12, 13

*In re Best Products Co., Inc.*, 173 B.R. 862 (Bankr. S.D.N.Y. Oct. 19, 1994) ................ 10, 12, 13

*In re Bethlehem Steel Corp.*, 2003 U.S. Dist. LEXIS 12909 (S.D.N.Y. July 28, 2003) ..................2

*In re Dana Corp.*, 390 B.R. 100 (Bankr. S.D.N.Y. 2008) ....................................................... 10, 12

*In re Kidron, Inc.*, 278 B.R. 626, 630-31 (Bankr. M.D. Fla. 2002) .............................................11

*In re Pub. Serv. Co. of N.H.*, 160 B.R. 404 (Bankr. D.N.H. 1993) ..............................................11

*In re S & Y Enterprises, LLC*, 480 B.R. 452 (Bankr. E.D.N.Y. Sept. 28, 2012,
    aff'd sub nom. Bedford JV, LLC v. S & Y Enterprises, LLC,* 2013 U.S. LEXIS
    125965 (E.D.N.Y. Sept. 3, 2013) ............................................................1, 9, 10, 11, 12

*In re United Merchants and Manufacturers, Inc. v. United Merchants and
    Manufacturers, Inc.*, 1999 U.S. Dist. LEXIS 84 (S.D.N.Y. Jan. 5, 1999) .......................10

**New York Case**

*Sherman v. Richmond Hose Co. No. 2*, 230 N.Y. 462, 473 (1921) ...............................................9

**PRELIMINARY STATEMENT**

The Office of the Attorney General of the State of New York (the "**OAG**"), as statutory representative of the ultimate beneficiaries of the charitable gifts made to New York City Opera, Inc. ("**City Opera**" or the "**Debtor**"), Estates, Powers and Trusts Law ("**EPTL**") § 8-1.1(f), objects to the award of administrative expenses, including attorneys' fees, pursuant to 11 U.S.C. § 503(b)(3)(D) and 503(b)(4), to New Vision for New York City Opera, Inc. ("**New Vision**") or Gene Kaufman.  (*Application of New Vision Pursuant to § 503(b) for Allowance of Administrative Expenses for Counsel Fees and Other Expenses in Making a Substantial Contribution in this Case* [docket no. 321] (the "**§ 503(b) Application**").

Neither Kaufman nor New Vision has made a "substantial contribution" to City Opera's bankruptcy estate or to this case.  The only *positive* contribution New Vision and Kaufman have made is to bid against NYCO Renaissance for City Opera's assets, particularly City Opera's name, which they did solely to further their own interest in running City Opera.  In doing so, they caused NYCO Renaissance to increase its bid.  When this case became one for reorganization rather than liquidation, NYCO Renaissance's final bid became a substantial part of the payment to creditors specified in its reorganization plan.[1]  As was held in a strikingly similar case, generating a higher offer from the winning bidder does not by itself constitute a "substantial contribution."  *In re S & Y Enterprises, LLC*, 480 B.R. 452 (Bankr. E.D.N.Y. Sept. 28, 2012, *aff'd sub nom. Bedford JV, LLC v. S & Y Enterprises, LLC,* 2013 U.S. LEXIS 125965 (E.D.N.Y. Sept. 3, 2013) ("**S & Y**").  Contrary to New Vision and Kaufman's characterization of

---

[1] NYCO Renaissance and the Creditors' Committee (collectively the "**Sponsors**") have filed a joint plan to reorganize the Debtor.  This filing consists of the *First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance, Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc.* [docket no. 314] (the "**Disclosure Statement**"), which includes as Exhibit A: the *First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance, Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc.* (the "**Plan**"); and the Summary of the Plan (the "**Summary**"). The Plan was also filed separately as docket no. 315.

their involvement in this case, they did not make a meaningful – let alone a substantial – contribution.

## STATEMENT OF THE FACTS

By virtue of having purchased a $255 claim, Gene Kaufman became a creditor in this matter.[2] New Vision does not appear to be such.[3] The § 503(b) Application seeks compensation for attorneys' services that King and Spalding LLP provided to Kaufman and then to New Vision beginning on June 25, 2014. (§ 503(b) Application, Exhibit C) On July 7, 2014, Kaufman, by King and Spalding, filed the *Objection of Gene Kaufman to Debtors Third Motion to Extend Exclusivity, and Cross-Motion for the Appointment of a Chapter 11 Trustee or Responsible Person to Supervise the Sale Process of the Debtors Assets* [docket no. 174], and King and Spalding filed its appearance for Kaufman [docket no. 175]. New Vision was not incorporated until January 9, 2015 in Delaware and first registered with the New York Department of State as a foreign not-for-profit corporation on August 7, 2015. (Affirmation of Rose Firestein, sworn to on January 4, 2016 ["**Firestein Affirmation**" or "**Firestein Aff.**"),[4] ¶¶ 29, 30, Exhibits 14 and 15) (Throughout the rest of this memorandum, Kaufman and New Vision for New York City Opera, Inc. are collectively referred to as "**New Vision**.")

---

[2] Gene Kaufman, Architect PC purchased the claim and transferred it to Gene Kaufman as an individual (docket nos. 94 and 180; both are entitled *Transfer of Claim Other than for Security*.) Kaufman also used the alias "Opera New York" for some period in connection with his attempt to purchase the Debtor's assets, but does not appear to have actually filed any papers with the Court using this name.

[3] There is no record on the Docket Report that Kaufman transferred his claim to New Vision. New Vision may therefore not have standing to bring this application because it is not a creditor or one of the other types of applicants listed in 11 U.S.C. § 503(b)(3)(D). *See In re Bethlehem Steel Corp.*, 2003 U.S. Dist. LEXIS 12909, *29 (S.D.N.Y. July 28, 2003) (the applicant "was not a creditor, and thus could not have applied for reimbursement under" 11 U.S.C. § 503(b)(3)(D) and 503(b)(4)). It appears that once New Vision came into the bankruptcy proceedings, all papers were filed on behalf of it and Kaufman.

[4] The full name of the Firestein Affirmation is *Affirmation in Support of New York Attorney General's (1) Response to the Joint Plan for Reorganization Submitted by NYCO Renaissance and the Official Committee of Unsecured Creditors[Docket Nos. 314 and 315] and (2) Objection to New Vision's § 503(b) Application for Expenses Including Counsel Fees [docket no. 321]*.

New Vision claims that there is an "agreement by all interested parties to support this Application for payment of substantial contribution expenses." (§ 503(b) Application, ¶ 4, *see also* ¶ 14)  This is not true.  The OAG is a party in this matter and represents the ultimate beneficiaries of the Charitable Funds, which comprise by far the largest portion of the assets that will be transferred to a Reorganized Debtor if one is confirmed.[5]  The OAG was not consulted about the instant application and opposes it.

New Vision's recitation of the facts on which it relies to support its application is not entirely accurate in several material respects.  New Vision is not either the "not for profit entity of Gene Kaufman," since a not-for-profit corporation cannot belong to an individual as a privately held commercial entity might do, or a creditor of the Debtor.  (§ 503(b) Application, ¶ 1)

But the heart of the OAG's disagreement with New Vision's version of the facts arises from the following description of its role in the bankruptcy proceeding:

> 2.     New Vision has been instrumental in the successful resolution of this chapter 11case. It has aggressively made proposals to purchase the Debtor's assets, and to fund a plan of reorganization. Based on those efforts, creditor recoveries have substantially increased. Had New Vision not challenged the Debtor's efforts to sell its assets, the Debtor would have sold its assets for a *de minimis* amount to a former insider, and lost a substantial gift (the DeMenasce bequest), which is an essential part of the Creditors Committee/ NYCO Renaissance plan of reorganization ("**NYCO Plan**").

(§ 503(b) Application, ¶ 2)  New Vision has certainly "aggressively made proposals to purchase the Debtor's assets[] and to fund a plan of reorganization," but this had nothing to do with preserving the DeMenasce bequest for a Reorganized Debtor.  Nor is it clear that New Vision

---

[5] The only existing assets that will be transferred to a Reorganized Debtor other than the Charitable Funds are Roy Niederhoffer's $1.25 million pledge and the Debtor's remaining cash-on-hand, slightly more than $200,000.  The Charitable Funds consist of an estimated $7,612,500 to $8,112,500 in Pending Bequests, the Endowment Fund with a current value estimated at $4,573,481 and the use-restricted funds of approximately $105,535. (Firestein Aff. ¶¶ 10, 11, 12, Exhibits 5, 6, 16.)

can take credit for the increase in NYCO Renaissance's bid for City Opera's assets, even if that were significant here which it is not (see discussion of *S & Y* below).

The DeMenasce bequest, which is likely to yield more than $5 million to a Reorganized Debtor, net of estate expenses (Firestein Aff. ¶ 19, and *see* ¶ 12, Exhibit 16), came into this case when the executors of the estate sought relief from the automatic stay so they could distribute the bequest that named City Opera to the gift-over beneficiary specified in the Will (Planned Parenthood) [docket no. 253, 4/6/15].[6] At that time, the Debtor was proceeding toward liquidation having filed its motion to sell most or all of its remaining assets, including its name. If the sale had occurred, the purchaser of City Opera's name would not have been entitled to the DeMenasce bequest. It would have had to be confirmed as the Reorganized Debtor to have a right to the bequest, and a Chapter 11 reorganization was not then on the table.

By May 2015, it appeared that reorganization of the Debtor might be possible. The OAG met with the Debtor, NYCO Renaissance and the Creditors' Committee at their request on June 18, 2014, to discuss reorganization. Also discussed was how the DeMenasce bequest could be distributed – whether it could go to a Reorganized Debtor of City Opera without having to obtain cy pres relief. The OAG expressed the view that if a reorganization plan were confirmed, the Reorganized Debtor would be the New York City Opera, Inc. and would be entitled to the DeMenasce bequest. This view was communicated to the executors of the DeMenasce estate and was set out in papers the OAG filed with the Court on August 13, 2015 [docket no.282].[7] During this time, the OAG indicated to New Vision's counsel that it was available to discuss any

---

[6] Docket no. 253 is entitled *Motion of the Executors of the Estate of Pierre DeMenasce for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)* (the "**Executors' Motion**").

[7] Docket no. 282 was entitled *Statement of the New York Attorney General Relating to the Upcoming Settlement Discussions (Consent Order Regarding Sale Motion, Docket No. 281).*

aspect of the case. (Firestein Aff. ¶ 32) The Executors' Motion was adjourned repeatedly [docket nos. 259, 4/23/2015; 264, 5/20/15; 270, 7/2/15; 271, 7/6/15].

The Debtor gave notice on July 13, 2015 that it was withdrawing the Sale Motion [docket no. 273, 7/13/2015],[8] which New Vision opposed [docket nos. 277, 7/22/2015, and 293, 9/30/2015].[9]  Subsequently, the OAG, Kaufman and Kaufman/New Vision's counsel had a telephone meeting at which Kaufman/New Vision expressed their view about whether the sale of Debtor's assets should proceed and how this related to a possible reorganization of the Debtor, a view with which the OAG did not agree. (Firestein Aff. ¶ 33)

Eventually the matter of the DeMenasce bequest was resolved by a so-ordered stipulation of settlement agreed to by the DeMenasce executors, the Debtor, NYCO Renaissance, the Creditors' Committee and the OAG – not New Vision [docket no. 311, 11/23/2015].[10]  The settlement contains Planned Parenthood's waiver of any interest it might have in the Will's gift-over as it pertains to the bequest to City Opera and provides that the DeMenasce bequest will be held in a segregated account until further order of this Court.  New Vision's attempt to claim credit for preventing the Debtor from having "lost a substantial gift (the DeMenasce bequest)" simply is not credible.

New Vision also exaggerates its contribution to moving the case to its current status.  It states that without its involvement, NYCO Renaissance would have been able to purchase City

---

[8] Docket no. 273 is entitled *Notice of Withdrawal Without Prejudice of Debtor's Motion for Orders (I) Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date, (II) Authorizing the Debtor to Enter Into the Assigned Contract, and (III) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances* ("**Notice of Withdrawal of Sale Motion**") , and docket no. 299  is a redacted version of docket no. 273.

[9] Docket no. 277 is entitled *Statement of New Vision for NYC Opera, Inc. with Respect to NYC Opera, Inc.'s Notice to Withdraw its Sale Motion* ("**New Vision's Statement Opposing Withdrawal of the Sale Motion**").

[10] Docket no. 311 is entitled *So Ordered Stipulation and Consent Order Signed on 11/23/2015, Regarding Motion of the Executors of the Estate of Pierre DeMenasce for Relief from the Automatic Stay.*

Opera's assets, including its name, for a paltry $10,000, not its $1.25 million final bid. (§ 503(b) Application, ¶ 12) As New Vision acknowledges, NYCO Renaissance made its $10,000 bid as the "stalking horse." What New Vision does not mention is that the Order approving the bidding procedures [docket no. 228, 12/22/14][11] provided in the Reservation of Rights section (¶ 4(k)) that the Debtor reserved the right to adjourn the auction, terminate the bidding procedures at any time to pursue confirmation of a chapter 11 plan and reject at any time any bid that is inadequate or insufficient or contrary to the best interests of the Debtor, the Debtor's estate or creditors. The Debtor was not obligated to accept NYCO Renaissance's $10,000 bid. It was a starting point for the auction, at which the parties knew NYCO Renaissance and New Vision would be pitted against each other to make the highest and best offer for City Opera's name and other assets.

In contrast to New Vision's description of its contribution to the case and the purported benefit its participation provided to the estate and the creditors, the Docket Report in the Court's ECF database shows the following as New Vision's participation in the case after June 25, 2014, which begins the period covered by the § 503(b) Application:

- Objected to the third extension of exclusivity and moved for appointment of a trustee [docket no. 174, 7/7/14].[12] In a Consent Order [docket no. 185, 7/16/14], Kaufman withdrew the objection and agreed to adjourn without date his motion for appointment of a trustee. The Debtor agreed (a) to timely provide Kaufman with the information he requested to finalize his bid for the Debtor's business, (b) to meet with Kaufman to discuss his bid for the Debtor's business, and (c) to give Kaufman the opportunity to make a "higher or better" bid in the event the Debtor sought to transfer its business (either through a plan or asset sale) to a third party other than Kaufman.

---

[11] Docket no. 228 is entitled *Order Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date.* This Order was amended twice, docket nos. 284, 8/21/14, and 289, 9/25/15. Both of the amended orders provided that "[t]he rights of all parties in connection with the Sale Motion are preserved in all respects."

[12] Docket no. 174 is entitled *Objection of Gene Kaufman to Debtors' Third Motion to Extend Exclusivity, and Cross-Motion for the Appointment of a Chapter 11 Trustee or Responsible Person to Supervise the Sale Process of the Debtors Assets.*

- Objected to the fifth extension of exclusivity and moved to require the Debtor to sell its assets in a court-supervised auction [docket no. 204, 11/12/14].[13] The Court entered an Order extending the period of exclusivity and requiring the Debtor to file a motion to approve the sale procedures and/or a motion for approval of the sale of its remaining assets, subject to higher and better offers [docket no. 211, 12/3/14].[14] The Order required the Debtor's motion to provide for a public auction before the Court. Unless Kaufman agreed to the sale procedures, they would be set by the Court. The Debtor filed the required motion [docket no. 213, 12/10/14] (the "**Sale Motion**") [docket no. 213, 12/10/14].[15]

- Objected to the Sale Motion [docket no. 219, 12/18/14].[16] The Court entered an order overruling on the merits, with prejudice, all objections and responses to the Debtor's motion that had not been withdrawn, waived or settled [docket no. 228, 12/22/14].

- Participated in the auction of Debtor's assets, which occurred on January 20, 2015.

- Filed New Vision's Statement of Objection to Withdrawal of Sale Motion [docket no. 277]. By withdrawing its Sale Motion, the Debtor sought to redirect the case from liquidating City Opera to reorganizing it. New Vision's Statement Objecting to Withdrawal of the Sale Motion was made a restricted document and New Vision substituted a redacted version of it [docket no. 293, 9/30/15].[17]

- Participated in a status conference for the purpose of exploring settlement, which focused on whether it would be possible for NYCO Renaissance and/or New Vision to submit only one plan to reorganize the Debtor. This was held on September 9, 2015 [*see* the *Amended Consent Order Regarding Sale Motion*, docket no.284, 8/21/15].

---

[13] Docket no. 204 is entitled *Objection of Gene Kaufman to Debtors Fifth Motion to Extend Exclusivity, and Cross-Motion to Compel the Debtor to Sell its Assets in a Court-Supervised Auction*.

[14] Docket no. 211 is entitled *Fifth Order Extending the Debtor's Exclusive Periods in which to File a Chapter 11 Plan and Solicit Votes Thereon*.

[15] Docket no. 213 is entitled *Motion for Orders (I) Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date, (II) Authorizing the Debtor to Enter Into the Assigned Contract, and (III) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances*.

[16] Docket no. 219 is entitled *Objection of Gene Kaufman to Debtors Motion for Orders (I) Approving (A) Bidding Procedures, (B) Certain Bid Protections, (C) Form and Manner of Sale Notice, and (D) Sale Hearing Date, (II) Authorizing the Debtor to Enter into the Assigned Contract, and (III) Authorizing the Sale of Certain Assets Free and Clear of Liens, Claims, and Encumbrances*.

[17] Docket no. 293 is entitled *Statement of New Vision for NYC Opera, Inc. with Respect to NYC Opera, Inc.'s Notice to Withdraw its Sale Motion (Redacted Version)*.

- Filed the disclosure statement for a reorganization plan. [docket no. 303, 10/28/15].[18]

- Withdrew its competing Chapter 11 plan for reorganizing the Debtor as a result of a settlement that created the "NV Substantial Contribution Claim" in the first amended joint Plan of NYCO Renaissance and the Creditors' Committee [docket no. 316, 12/2/15].[19] The first amended joint Plan describes the NV Substantial Contribution Claim as "an Allowed Administrative Claim in the amount of $300,000 payable to New Vision pursuant to section 503(b) and entitled to priority pursuant to section 507(a)(2). The NV Substantial Contribution Claim will be the subject of a separate motion to be filed with the Court and heard on the same day as confirmation of the Plan" [docket no. 315, 12/02/15].

In addition to participating in the auction and unsuccessful settlement conference, New Vision's counsel participated in Court status and other conferences and hearings. The hearing on the Sale Motion was repeatedly adjourned and was never held.

New Vision has not adduced any evidence of – or even suggested that – it took any of these actions for any purpose other than to secure City Opera's name or to become City Opera's Reorganized Debtor. It did not undertake any of its actions in this case for the purpose of benefiting the estate or facilitating progress in the case, but only to promote its own interests.

New Vision and the Sponsor have agreed that if the Court denies the § 503(b) Application, NYCO Renaissance will pay New Vision and/or Kaufman a total of $300,000. (Firestein Aff. ¶ 25, Exhibit 12) As discussed in the *New York Attorney General's Response to the Joint Plan for Reorganization Submitted by NYCO Renaissance and the Official Committee of Unsecured Creditors*, which is being filed simultaneously with this document, it would be improper for NYCO Renaissance to make such a payment if this Court holds that New Vision did not make a substantial contribution to the estate or the case.

---

[18] Docket no. 303 is entitled *Joint Disclosure Statement For Competing Chapter 11 Plans Of Reorganization For New York City Opera, Inc.*

[19] Docket no. 316 is entitled *Notice of Withdrawal of New Vision for NYC Opera, Inc.'s Competing Chapter 11 Plan of Reorganization.*

-8-

## THE LEGAL STANDARD FOR FINDING THAT A
## PARTY MADE A "SUBSTANTIAL CONTRIBUTION"

11 U.S.C.§ 503(b)(3)(D) and 503(b)(4) provide the following:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title [11 USCS § 502(f)], including--
. . .
   (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by--
. . .
   (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title [11 USCS § 1102], in making a substantial contribution in a case under chapter 9 or 11 of this title [11 USCS §§ 901 et seq. or 1101 et seq.];
. . .
   (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

The OAG does not disagree with New Vision's statement of the applicable law under 11 U.S.C. § 503(b) as far as its description goes, but New Vision has omitted a number of important principles. Strict adherence to these principles is particularly important here because all of the funds that would be used to pay New Vision are "gifts for charity" and are therefore "impressed with the public trust." *Sherman v. Richmond Hose Co. No. 2*, 230 N.Y. 462, 473 (1921). The public character of such a payment makes it qualitatively different from one demanded from a commercial entity and subjects it to more exacting scrutiny.

A substantial contribution award, including "shifting counsel fees and expenses to the Debtor's estate, is warranted only in 'rare and extraordinary' circumstances where the entity's involvement has 'truly enhance[d] the estate'"; it is the exception, not the rule. *S & Y,* 480 B.R. at 459, 461 (*quoting In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008) ("**_Dana_**");

-9-

*accord, e.g., In re United Merchants and Manufacturers, Inc. v. United Merchants and Manufacturers, Inc.*, 1999 U.S. Dist. LEXIS 84, *6 (S.D.N.Y. Jan. 5, 1999) ("**United Merchants**"). "Substantial contribution" is narrowly construed because "[t]he integrity of section 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate." *In re Bayou Group, LLC*, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010) ("**Bayou**"); *In re AMR Corp.*, 2014 Bankr. LEXIS 3298, * 6 (Bankr. S.D.N.Y. August 5, 2014) ("**AMR**"); *S & Y*, 480 B.R. at 459; *Dana,* 390 B.R. at 108; *In re Best Products Co., Inc.*, 173 B.R. 862, 866 (Bankr. S.D.N.Y. Oct. 19, 1994) ("**Best Products**").

Rigorous application of the standards for granting a § 503(b) allowance is especially important when a reorganization plan is ultimately confirmed because these expenses are paid on a priority basis and reduce the funds available to be distributed to the reorganized debtor. *S & Y,* 480 B.R. at 461. When the applicant fails to meet the standards for an award of administrative expenses, the general rule – the American Rule – applies: each party pays its own attorneys' fees and expenses. *E.g., S & Y*, 480 B.R. at 462; *Dana*, 390 B.R. at 108; *Best Products*, 173 B.R. at 866; *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr. S.D.N.Y. Aug. 18, 1993) ("**Alert Holdings**"). The applicant has the burden of proving its entitlement to the § 503(b) award by the preponderance of the evidence. *E.g., AMR*, 2014 Bankr. LEXIS 3298 at *6; *S & Y*, 480 B.R. at 562; *Bayou*, 431 B.R. at 560.

An applicant makes a "substantial contribution" "when it has provided 'actual and demonstrable benefit to the debtor's estate, its creditors and to the extent relevant, the debtor's shareholders." *Dana*, 390 B.R. at 108 (*quoting U.S. Lines*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989), *aff'd* 1991 U.S. Dist. LEXIS 5262 (S.D.N.Y. 1991); *accord, e.g., United Merchants*, 1999

U.S. Dist. LEXIS at *6. The "applicant must show a 'causal connection' between the service and the contribution." *S & Y*, 480 B.R. at 462 (*quoting In re Granite Partners*, 213 B.R. 440, 447 (Bankr. S.D.N.Y. 1997) (*quoting Hall Fin. Grp. v. DP partners, Ltd. (In re DP Partners, Ltd.,*) 106 .3d 667 673 (5th Cir. 1997).

"Inherent in the term 'substantial' is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests." *AMR*, 2014 Bankr. LEXIS 3298 at *4-5 (*quoting Dana*, 390 B.R. at 108 (*citing Lebron v. Mechem Financial Inc.,* 27 F.3d 937, 944 (3d Cir. 1994)); *accord, e.g., S & Y*, 480 B.R. at 463. While acting in one's self-interest is not a bar to recovering under § 503(b), *S & Y*, 480 B.R. at 464,

> "Creditors face an especially difficult burden in passing the 'substantial contribution' test since they are presumed to act primarily for their own interests" and "[e]fforts undertaken by creditors solely to further their own self interest are not compensable under section 503(b)" and "services calculated primarily to benefit the client do not justify an award even if they also confer an indirect benefit on the estate."

*Bayou*, 431 B.R. at 561 (*quoting Dana,* 390 B.R. at 108); *accord, e.g., Alert Holdings*, 157 B.R. at 757 (*citing In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). This principle applies equally to the costs bidders incur as part of the bidding process. *E.g., S & Y*, 480 B.R. at 462; *In re Pub. Serv. Co. of N.H.*, 160 B.R. 404, 452 (Bankr. D.N.H. 1993) ("[W]hen a creditor is pursuing its own economic self-interest, as by definition it does as a bidder at a bankruptcy auction, then that creditor cannot establish the requisite 'direct benefit' which the case law requires in order to grant a creditor a section 503(b) award."); *see In re Kidron, Inc.*, 278 B.R. 626, 630-31 (Bankr. M.D. Fla. 2002) (the court held that "expenses incurred by a creditor with respect to merely participating as a bidder in the purchase of a debtor's assets in a chapter 11 case are not 'incurred

by a creditor in making a substantial contribution' to a chapter 11 case") (*quoted in Dana*, 390

B.R. at 109-10).

This Court has noted the following:

> Courts have stated that services that warrant a substantial contribution award "generally take the form of constructive contributions in key reorganizational aspects, when *but for* the role of the creditor, the movement towards final reorganization would have been substantially diminished." *U.S. Lines, Inc.*, 103 B.R. at 430 (emphasis added) (*quoting In re D.W.G.K. Rest., Inc.*, 84 B.R. 684, 690 (Bankr. S.D. Cal. 1988)).

*AMR*, 2014 Bankr. LEXIS 3298 at *5.

In *S & Y*, the court held that the unsuccessful bidder for the debtor's assets did not make a substantial contribution to the bankruptcy case. This bidder's claim of having made a substantial contribution was based on the following activities:

> Most important, Bedford JV points to the fact that CAB Bedford increased its offer for the Debtors' properties by $4.5 million and provided a greater ownership interest in CAB Bedford to the Backers [the debtors' principals]. Bedford JV also urges that it made a substantial contribution by entering into a contract with the Debtors to purchase the properties that enhanced the Debtors' negotiating leverage with CAB Bedford, formulating and defending the second amended plans on the Debtors' behalf [which were not confirmed], participating in extensive discovery to demonstrate that it was a "real" bidder and that the second amended plans were viable, and preparing the motion to reject and conducting the discovery in connection with that motion.

480 B.R. at 464. The court held that, "[a]t most, Bedford JV has shown that its activities led to an indirect benefit to these bankruptcy cases and plainly, that is not enough." It also noted that under Bedford JV's reasoning, serious but unsuccessful bidders for the debtors' assets would be able to shift their counsel fees and expenses to the estate. *Id.* at 465. This would make such awards common, not rare or extraordinary.

A party's extensive involvement in the bankruptcy case does not by itself support an award under § 503(b). *E.g., Id.* at 466; *Bayou*, 431 B.R. at 561; *Best Products*, 173 B.R. at 866.

To be entitled to receive payment for attorneys' fees and other expenses under § 503(b) based on the party's contribution to the progress of the case, it must facilitate, not retard, that progress. *Best Products,* 173 B.R. at 865; *Alert Holdings*, 157 B.R. at 757. "[S]ection 503(b)(3)(D) and (b)(4) may not be used to buy off a pest, who did little if anything to advance, and in fact may have impeded, the proper administration of the estate." *Bayou*, 431 B.R. at 561. Nor is compensation under § 503(b) proper when the applicant, while pursuing its own interests, causes the other parties' fees to increase or when the benefit to the estate was primarily the result of another's actions. *See Alert Holdings*, 157 B.R. at 759.

## ARGUMENT

None of New Vision's actions expedited the case, facilitated its resolution or benefitted the bankruptcy estate, other than bidding against NYCO Renaissance at the auction of the Debtor's assets. This raised the amount the Debtor would have garnered on behalf of its creditors if it had pursued liquidation and this amount remains important because it is the Sponsor's contribution to the Reorganized Debtor for payment of creditors. But forcing the competing bidder to raise its offer is part and parcel of the auction process. It does not constitute unusual creditor or bidder conduct and courts do not grant reimbursement under § 503(b) for this type of indirect benefit. The most New Vision's counterbids added to NYCO Renaissance's purchase price was $1.15 million (the final bid of $1.25 million less the stalking horse bid of $10,000). This is much less than the $4.5 million increase that the court found did not constitute a substantial contribution in *S & Y.*

New Vision and Kaufman are also disqualified from receiving an award under § 503(b) because they impeded the progress of the case by, for example, filing New Vision's Statement Opposing Withdrawal of the Sale Motion. In light of the provisions in the Court's Order [docket

no. 228] giving the Debtor the right to terminate the bidding process in favor of pursing reorganization, New Vision had no legal basis for its motion. Yet the parties had to respond to it, increasing the cost of the bankruptcy case to them [docket nos. 296, 10/6/15, 297, 10/6/15, and 301, 10/14/15].[20] Moreover, the time New Vision's counsel spent on this one unnecessary filing and the subsequent negotiations to settle on the redactions that had to be made to New Vision's Statement and its exhibits represent a significant amount of the attorneys' fees New Vision and Kaufman seek to shift onto the bankruptcy estate for payment, depleting the already severely limited assets a Reorganized Debtor would have to operate City Opera.

Everything else New Vision and Kaufman did in this case was just the normal activity of a bidder or proponent of a reorganization plan, which was subsequently withdrawn. They have failed to prove by a preponderance of the evidence that they are entitled to recover administrative expenses including attorneys' fees under 11 U.S.C. § 503(b). Indeed, they have not even suggested the existence of a legally valid ground for such an award and the § 503(b) Application should be denied.

## CONCLUSION

For the reasons set forth above, the Attorney General of the State of New York requests that the Court deny New Vision and Gene Kaufman's *Application of New Vision Pursuant to § 503(b) for Allowance of Administrative Expenses for Counsel Fees and Other Expenses in Making a Substantial Contribution in this Case*,

---

[20] Docket no. 296 is entitled *NYCO Renaissance, Ltd.'s Response to the Statement of New Vision for NYC Opera, Inc. with Respect to NYC Opera Inc.'s Notice to Withdraw its Sale Motion;* Docket no. 297 is entitled *Response of New York City Opera, Inc. to the Statement of New Vision For NYC Opera, Inc. with Respect to Debtors Notice to Withdraw its Sale Motion;* Docket no. 301 is entitled *Response to Motion NY Attorney General's Response to the Statement of New Vision for the New York City Opera, Inc. with Respect to NYC Opera, Inc.'s Notice to Withdraw its Sale Motion (related documents.*

-14-

Dated: January 4, 2016

                            Respectfully submitted,

                            ERIC T. SCHNEIDERMAN
                            Attorney General of the State of New York
                            Attorney for the Ultimate Charitable Beneficiaries

                            By: /s/ Rose Firestein
                                Assistant Attorney General, Charities Bureau
                                120 Broadway, 3rd Floor
                                New York, New York 10271
                                (212) 416-8325
                                rose.firestein@ag.ny.gov