**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>New York City Opera, Inc.,<br><br>Debtor. | Chapter 11<br><br>Case No. 13-13240 (SHL) |

**NYCO RENAISSANCE, LTD.'S REPLY TO (A) THE NEW YORK ATTORNEY
GENERAL'S RESPONSE TO THE FIRST AMENDED JOINT CHAPTER 11
PLAN OF REORGANIZATION, AND (B) THE LIMITED OBJECTION OF
THE AMERICAN GUILD OF MUSICAL ARTISTS TO THE
<u>JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>**

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................................2

    A.    Feasibility Standard Pursuant to 11 U.S.C. § 1129(a)(11) ......................................2

    B.    The Revised Projections Offer Sounds and Reasonable Assurance of Success ...................................................................................................................3

    C.    The NV Substantial Contribution Claim Should Be Allowed And Paid .................5

    D.    The Expiration of the Debtor's Collective Bargaining Agreement with AGMA Does Not Render The Plan Not Feasible ....................................................8

CONCLUSION ................................................................................................................................9

# TABLE OF AUTHORITIES

**Federal Cases**

*In re DBSD N. Am., Inc.*, No. 09-13061 (REG), 2009 Bankr. LEXIS 5260 (U.S.
    Bankr. S.D.N.Y. Oct. 26, 2009) ................................................................................... 4

*In re Hostess Brands, Inc.*, 477 B.R. 378 (Bankr. S.D.N.Y. 2012) ................................... 7

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986) ................................... 2

*Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) ........................................... 2

*In re Leslie Fay Cos.*, 207 B.R. 764 (Bankr. S.D.N.Y. 1997) ...................................... 2-5

*In re Prudential Energy Co.*, 58 B.R. 857 (Bankr. S.D.N.Y. 1986) ................................ 3

*In re Texaco Inc.*, 84 B.R. 893 (Bankr. S.D.N.Y. 1988) ................................................. 2

*In re WorldCom, Inc.*, No. 02-13533, 2003 Bankr. LEXIS 1401 (U.S. Bankr.
    S.D.N.Y. Oct. 31, 2003) ............................................................................................. 4

**PRELIMINARY STATEMENT**

1.    NYCO Renaissance, Ltd. ("**NYCO Renaissance**")[1] submits this Reply to (a) the New York Attorney General's Response to the Joint Plan for Reorganization Submitted by NYCO Renaissance and the Official Committee of Unsecured Creditors [Docket No. 331] (the "**AG's Response**"), and (b) the Limited Objection of the American Guild of Musical Artist ("**AGMA**") to Confirmation [Docket No. 335] (the "**AGMA's Response**").

2.    As an initial matter, it is important to stress that the AG's Response admittedly "does not offer an opinion about whether the Plan meets the feasibility standard for confirmation." (AG's Response, para. 15). In fact, the AG's Response essentially concedes that the Plan is financially viable in the short-term (*See* AG's Response, para. 4).

3.    The AG's primary discomfort with the Plan is the purportedly questionable "long-term" viability of the Reorganized Debtor. (*Id.*, paras. 4, 14). In that regard, the AG raises certain questions about the likelihood of liquidation or need for further financial reorganization of the Reorganized Debtor following the Effective Date of the Plan. (*Id.*, paras. 14-15).

4.    The AG contends that "the reasonableness of the Sponsor's Projections of both revenue and expenses, as well as the treatment of restricted funds, should be considered in determining the Plan's feasibility." (*Id.*, para. 25). As will become evident from the review of this Reply, the accompanying Declaration of Michael Capasso in Support of the First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc. (the "**Capasso Declaration**"), and the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance, Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc. [Docket No. 315] (the "**Plan**"), the Plan Summary [Docket No. 314], or the First Amended Disclosure Statement for the First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance, Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc. [Docket No. 314] (the "**Disclosure Statement**").

1

Declaration of Roy Niederhoffer in Support of the First Amended Joint Chapter 11 Plan of Reorganization of NYCO Renaissance Ltd. and Official Committee of Unsecured Creditors for New York City Opera, Inc. (the "**Niederhoffer Declaration**," and, together with the Capasso Declaration, the "**Declarations**"), attached hereto as **Exhibit A** and **Exhibit B**, respectively, the projections are, in fact, inherently sound and reasonable, and the Plan Sponsors contemplate proper use of the restricted funds. As such, the Plan clearly meets the feasibility test required under title 11 of the United States Code (the "**Bankruptcy Code**").

5.      Further, although "long-term" viability is not an appropriate hurdle for confirmation, the projections described below and more fully in the Declarations demonstrate that the Reorganized Debtor likewise clears that bar and has the wherewithal to be financially sound and viable for many years to come.

## ARGUMENT

A.    *Feasibility Standard Pursuant to 11 U.S.C. § 1129(a)(11)*

6.      Section 1129(a)(11) of the Bankruptcy Code requires the plan to be "feasible" – i.e. the plan proponent must prove that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). "[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed.*" Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *In re Leslie Fay Cos.*, 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997) ("The court must find that the plan is workable and has a reasonable likelihood of success."); *In re Johns-Manville Corp.*, 68 B.R. 618, 635 (Bankr. S.D.N.Y. 1986) ("The plan proponent is not required to guarantee the ultimate success of the reorganized company."); *In re Texaco Inc.*, 84

2

B.R. 893, 910 (Bankr. S.D.N.Y. 1988) (A plan is feasible if there is a "reasonable assurance of commercial viability.").

B.   **The Revised Projections Offer Sound and Reasonable Assurance of Success**

7.   While the AG admittedly does not offer an opinion as to whether the Plan sufficiently meets the feasibility standard in order to be confirmed by the Court, the AG's Response raises a number of questions as to the soundness of the Reorganized Debtor's Projections and the Reorganized Debtor's ability to sustain its charitable operations in the long run. (*See* AG's Response, para. 2).

8.   In that regard, the AG questions whether the Reorganized Debtor has overestimated its income projections, and underestimated its expenses, (*Id.*, paras. 5, 8), and whether the "projections of anticipated revenues and expenses [are] grounded in financial reality." (*Id.*, para. 13). The revised projections attached as an exhibit to the Capasso Declaration (the "**Revised Projections**") are, in fact, grounded in "financial reality." In order to be demonstrate feasibility of a Plan, projections must be reasonable, and "not speculative, conjectural or unrealistic. . . ." *Leslie Fay*, 207 B.R. at 789; *In re Prudential Energy Co.*, 58 B.R. 857, 862-63 (Bankr. S.D.N.Y. 1986) ("[A] plan based on impractical or visionary expectations cannot be confirmed. . . . [The president] testified that he had continuing contact with prospective investors. But that unsubstantiated and optimistic testimony hardly rises to the level of orders in hand."). The Revised Projections clearly meet this standard.

9.   As is evident from the Capasso Declaration, the projections dealing with income and expenses are based on either *actual* figures incurred by NYCO Renaissance in the last year (*i.e.*, expenses incurred in connection with the Gala, or production of *Tosca*), or realistic assumptions (*See* Capasso Decl., paras. 16-21). Similarly, as is evident from the Niederhoffer Declaration, the projected contribution amounts are partly based on (and, in fact, amount to a

3

mere fraction of) the Debtor's historical fundraising figures, as well as realistic projections based on NYCO Renaissance's tremendous fundraising efforts since March 2014, as well as the fundraising strategies and opportunities available to the Reorganized Debtor following the Effective Date of the Plan. (*See* Niederhoffer Decl., paras. 14-22).

10. Moreover, while the AG's concern that the Reorganized Debtor's Projections fail to demonstrate "a reasonable likelihood" that the Reorganized Debtor can be viable on a "long term basis" is appreciated, that concern does not constitute a valid basis for a feasibility objection in this Court.  (*See* AG's Response, para. 24).  In order to be confirmed, the Plan must only demonstrate "that there will be sufficient cash flow to fund the plan and maintain operations." *Leslie Fay*, 207 B.R. at 789.  There is a relatively low threshold of proof necessary to satisfy this requirement. *See In re DBSD N. Am., Inc.*, No. 09-13061 (REG), 2009 Bankr. LEXIS 5260, at *137 (U.S. Bankr. S.D.N.Y. Oct. 26, 2009) (internal citations omitted) ("[T]he feasibility inquiry is peculiarly fact intensive and requires a case by case analysis, using as a backdrop the relatively low parameters articulated in the statute . . . [T]here is a relatively low threshold of proof necessary to satisfy the feasibility requirement.").  It is important to emphasize that "just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility.  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds." *In re WorldCom, Inc.*, No. 02-13533 , 2003 Bankr. LEXIS 1401, at *170 (U.S. Bankr. S.D.N.Y. Oct. 31, 2003) (internal citation omitted).

11. The Revised Projections more than adequately satisfy the required threshold.  As is more fully explained in the Declarations, the Revised Projections demonstrate that, even if the Reorganized Debtor receives no Pending Bequests other than the initial distribution of DeMenasce Bequest, the Reorganized Debtor will have sufficient liquidity to maintain

4

operations through the five year period following the Effective Date *and well beyond*. (Niederhoffer Decl., para. 11). Indeed, the total liquid assets by the end of the Year 5 will total anywhere from $6,867,858 to $7,767,858. (*Id.*) And, not one single dollar of the principal of the Endowment ($4,573,481) will have been used. (*Id.*, para. 12).

12. Significantly, the Plan in this case has the overwhelming support of the creditors. "The overwhelming support of the creditors, garnered after their professionals reviewed the debtors' projections, lends credenceto the debtors' belief in the feasibility of the plan." *In re Leslie Fay Cos.*, 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997). Indeed, the Committee is the co-sponsor of the Plan. Further, as is evident from the Certification of Nicole Stefanelli Regarding Tabulation of Ballots and Results of Voting with respect to the Plan, which will be submitted prior to the Disclosure and Confirmation Hearing, each and every creditor who was entitled to vote to accept or reject the Plan, and who in fact voted, voted to accept the Plan.[2]

13. It is no surprise that the Plan has overwhelming support of creditors since NYCO Renaissance, its business plan, and its management have all been extensively vetted by the existing board of the Debtor, the Debtor's Special Committee, and the Committee for almost eighteen (18) months. It is clear that the creditors of the Debtor also trust that the Plan is feasible and should be a confirmed, as is evident by the unanimous acceptance rate.

C.    *The NV Substantial Contribution Claim Should Be Allowed And Paid*

14. The AG's argument that allowance and payment of the NV Substantial Contribution Claim is improper overlooks several important points. First, the AG's contention that the payment of the NV Substantial Contribution Claim would somehow "reduce the assets

---

[2] The only creditor who voted to reject the Plan is AGMA. AGMA was not entitled to vote to accept or reject the Plan, as its interests under the Plan are unimpaired (Class 1).

5

DM3\3718487.2

that are transferred to the Reorganized Debtor and will thus affect its financial viability and sustainability and the Plan's feasibility" is entirely misplaced. (*See* AG's Response para. 48).

15. The Revised Projections make abundantly clear that the Reorganized Debtor has more than sufficient funds to make all of the payments required to be made under the Plan to creditors, including the NV Substantial Contribution Claim and the payments on account of the GUC Note and PBGC Note. Indeed, neither the feasibility of the Plan nor the long-term viability of the Reorganized Debtor's business is jeopardized by the payment of a claim in the amount of $300,000. That fact cannot be seriously disputed.

16. Second, the AG's position also ignores the well-established record in this case. As the Court is well aware, there is no doubt that the Debtor's case was mired in lengthy and costly litigation between NYCO Renaissance and New Vision, all at the expense of the Debtor and its estate. The payment of the NV Substantial Contribution Claim was part of a global agreement under which the path was cleared to move ahead with confirmation of only one plan of reorganization, rather than competing plans, and the Creditors' Committee agreed to support the Plan (as modified). Simply put, the allowance of the Substantial Contribution Claim does not impede the feasibility of the Plan. On the contrary, it solidifies the feasibility of the Plan and permits the Debtor to finally emerge from this proceeding with the unanimous support of the creditors.

17. For this reason, as well as the reasons set forth more fully in the Application of New Vision Pursuant to § 503(b) for Allowance of Administrative Expense for Counsel Fees and Other Expenses in Making a Substantial Contribution in this Case [Docket No. 321] (the "**New Vision Application**"), New Vision has clearly satisfied the standards required under section 503(b) of the Bankruptcy Code. While the Plan Sponsors acknowledge the high hurdle placed

6

upon creditors seeking to obtain the allowance of section 503(b) claim, here the record created since the Petition Date demonstrates that New Vision went well-beyond acting simply as an interested purchaser or plan sponsor in this case.

18.     The record indicates, among other things, that New Vision played an extremely active role in this case since the Petition Date not only in connection with its efforts to acquire the Debtor' assets, but rather to ensure a full and transparent process that would permit any other interested party to pursue an acquisition or plan sponsorship.  That New Vision was the only entity other than NYCO Renaissance to actually take the initiative to pursue a transaction does not minimize its contributions or, equally important, the material monetary benefits afforded to creditors.  Indeed, it is beyond question that the Debtor had planned to sell substantially all of the assets to NYCO Renaissance in December 2014 and that, absence any objection by New Vision, that sale would have occurred in early 2015 after the auction closed and the Debtor selected NYCO Renaissance as the highest and best bid.

19.     While NYCO Renaissance would have personally benefitted from the absence of any other party challenging the Debtor's sale at that time, it likewise cannot be seriously questioned that, as a direct result of the actions taken by New Vision, creditors of the Debtor's Estate will be receiving substantially better recoveries under the Plan than they would have received from the sale.  That, after all, should be the ultimate goal of every chapter 11 case – increased recoveries for creditors.  That there may have been some element of the work performed that benefitted New Vision is, of course, not fatal to the New Vision Application. Indeed, it is quite common for a party seeking allowance of a claim under § 503(b) to have had some personal interest in the outcome of the case.

20. For these reasons, as well as those contained in the New Vision Application and the Reply to Objections Filed by the New York Attorney General and the United States Trustee to New Vision's Substantial Contribution Application [Docket No. 337], the Court should approve the NV Substantial Contribution Claim as provided for under the Plan.[3]

D.  *The Expiration of the Debtor's Collective Bargaining Agreement with AGMA Does Not Render The Plan Not Feasible*

21. AGMA objects to the confirmation of the Plan because the Plan does not provide for an assumption of the Collective Bargaining Agreement with AGMA (the "**CBA**") is misguided for two reasons. First, since the term of the CBA has expired, the Reorganized Debtor need not either assume nor reject the CBA as part of the Plan. *See In re Hostess Brands, Inc.*, 477 B.R. 378, 383 (Bankr. S.D.N.Y. 2012) (finding that upon expiration of the term of a collective bargaining agreement, the agreement can neither be assumed nor rejected, because only "certain provisions of the collective bargaining agreement remain in effect by operation of the NLRA" and an agreement under the Bankruptcy Code can only be assume in toto).

22. Second, while NYCO Renaissance does not dispute that "producing opera requires singers and musicians" (AGMA's Response, para. 2), AGMA's allegation that "unless [NYCO] Renaissance is able to reach agreements with AGMA, it is unlikely that it will be able to successfully produce opera in New York" (*Id.*), cannot be farther from the truth. In fact, NYCO Renaissance has successfully produced dozens of productions (large and small) in the last

---

[3] The AG's further contention that NYCO Renaissance cannot use its funds to pay the NV Substantial Contribution Claim should the Court not grant the claim is likewise misplaced. First, this issue is not properly before this Court as the matter concerns two non-debtors – New Vision and NYCO Renaissance. In addition, NYCO Renaissance is a Delaware not-for-profit company, not a New York company. As such, the New York cases and statutes cited in the AG Response are not dispositive. Further, NYCO Renaissance will be prepared, if necessary, to demonstrate that any such payment is clearly permissible under Delaware law as, among other things, the payment would be made in furtherance of NYCO Renaissance's pursuit of the production of opera as part of the merger with NYCO.

8

year without an agreement with AGMA. That, in and of itself, demonstrates that the Plan is feasible.

23. Simply put, AGMA should not be permitted to hold the Debtor's estate hostage until and unless it obtains every benefit it so desires from the Reorganized Debtor under a new collective bargaining agreement. That, of course, would not be an appropriate use of the Bankruptcy Code or the resources of this Court.

## CONCLUSION

NYCO Renaissance submits that, while the AG's concerns regarding the long-term viability of the Reorganized Debtor post-confirmation are appreciated, these concerns do not form an appropriate basis for denying confirmation. Nevertheless, the Plan Sponsors believe that the Revised Projections demonstrate both short-term and long-term viability of the Reorganized Debtor and, thus, the Plan clearly meets the feasibility test under the Bankruptcy Code. Moreover, despite AGMA's allegations to the contrary, the Plan is feasible. For the aforementioned reasons, the Plan should be confirmed.

Dated:  January 8, 2016
         New York, New York

Respectfully submitted,

 */s/ Gerard Catalanello, Esq.*
Gerard S. Catalanello, Esq.
James J. Vincequerra, Esq.
DUANE MORRIS LLP
1540 Broadway
New York, New York 10036-4086
Telephone: (212) 692-1000
Facsimile: (212) 692-1020

*Counsel to NYCO Renaissance, Ltd.,*
*Plan Co-Sponsor*

9