**LOWENSTEIN SANDLER LLP**
Kenneth A. Rosen
S. Jason Teele
Nicole Stefanelli
1251 Avenue of the Americas
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

-and-

65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| New York City Opera, Inc. | Case No. 13-13240 (SHL) |
| Debtor. | |

**CERTIFICATION OF NICOLE STEFANELLI REGARDING**
**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER**
**AUTHORIZING AND APPROVING CERTAIN AGREEMENTS**

Nicole Stefanelli, pursuant to 28 U.S.C. § 1746, certifies as follows:

1.      I am an attorney with the law firm of Lowenstein Sandler LLP

("**Lowenstein Sandler**"), counsel to New York City Opera, Inc., the above-captioned debtor and

debtor in possession (the "**Debtor**").  This Certification is submitted in connection with the

*Motion of the Debtor for Entry of an Order Authorizing and Approving Certain Agreements* filed

on January 3, 2016 [Docket No. 329] (the "**Approval Motion**").[1]

---

[1]  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them
in the Approval Motion.

2.      Subsequent to filing the Approval Motion, the Debtor received an informal objection from the New York State Attorney General (the "**AG**") on the Gift Agreement between NYCO and C-CM for the transfer of the Treigle Endowment Fund to C-CM.

3.      In response to the concerns raised by the AG, NYCO entered into a revised Gift Agreement with C-CM (the "**Revised Gift Agreement**").  A copy of the Revised Gift Agreement is attached hereto as **Exhibit A**.

4.      The Revised Gift Agreement eliminates any preference for American-born scholarship recipients, and clarifies that C-CM must administer the fund in accordance with applicable state law relating to the prudent management of institutional funds.

5.      The Revised Gift Agreement further clarifies that it is subject to NYCO's receipt of a letter of no objection from the AG (a "**No Objection Letter**") regarding the proposed transfer of and modifications to the Treigle Endowment Fund pursuant to Section 555 of the New York Not-for-Profit Corporations Law ("**N-PCL**").  Receipt of the No Objection Letter is a prerequisite to seeking approval of the Revised Gift Agreement from this Court.  A copy of the AG's No Objection Letter in connection with the Debtor's proposed transfer and modifications to the Treigle Endowment Fund pursuant to Section 555 of the N-PCL is attached hereto as **Exhibit B**.

6.      Based on the AG's No Objection Letter, the Debtor now seeks approval of NYCO's entering into the Revised Gift Agreement from this Court.  A copy of a revised proposed order granting the Approval Motion is attached hereto as **Exhibit C**.  A redline of the revised proposed order against the version filed electronically with the Approval Motion is attached hereto as **Exhibit D**.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Dated:  January 11, 2016

                                             */s/ Nicole Stefanelli*
                                        Nicole Stefanelli

# Exhibit A



The University of Cincinnati
**Foundation**

January 8, 2016

New York City Opera
c/o Stephanie H. Roth
Ewenstein Young & Roth LLP
5 Columbus Circle, Suite 710
New York, NY 10019

RE:   Letter of Agreement establishing *The Norman Treigle Opera Competition Award Fund*

Dear Ms. Roth:

Thank you for your interest in establishing an endowed fund at the University of Cincinnati
College-Conservatory of Music (CCM). This agreement contains our mutual understanding
regarding your gift as described by this document. This agreement will be made a part of The
University of Cincinnati Foundation's (Foundation) records and is intended to guide those who
will administer this gift in the future.

**Background**

NYC Opera has held funds raised for the purpose of supporting students at the University of
Cincinnati College-Conservatory of Music. The Opera has awarded the *Norman Treigle Memorial
Scholarship* since the mid-1970s (the "*Treigle Fund*"). According to NYC Opera's records, the
*Treigle Fund* was established as an endowed fund to provide living expenses and other non-tuition
assistance to students enrolled in the opera program at CCM who are winners of the University of
Cincinnati College-Conservatory of Music Opera Scholarship Competition (the
"Competition"). Because the *Treigle Fund* is intended to benefit students at CCM, and CCM
administers the Competition and selects the award recipients, NYC Opera seeks to transfer the
balance of the *Treigle Fund* to the Foundation to support the stated purpose of the *Treigle Fund*.

**Purpose**

The purpose of this gift is to establish an endowment fund named *The Norman Treigle Opera
Competition Award Fund* (Fund) in support of student(s) who are winner(s) of the University of
Cincinnati College-Conservatory of Music Opera Scholarship Competition. Spendable
disbursements from the Fund, determined in accordance with the spending policies established by
The University of Cincinnati Foundation's Board of Trustees now in effect or as they may be
amended from time to time, will be used for scholarships in CCM with the following stipulations:

- Recipient(s) shall be selected as one of the winners of the University of Cincinnati College-Conservatory of Music Opera Scholarship Competition.
- Award(s) shall be used towards non-tuition fees or services.

## Description of Gift

New York City Opera (Donor) hereby pledges the current value of the fund to be transferred within 30 days of New York City Opera's receipt of a letter of no objection from the New York State Attorney General and entry of an order in the US Bankruptcy Court for the Southern District of New York approving this Agreement.

## Administration

- The Donor and the Foundation agree that until the principal of the Fund reaches the minimum for a named fund of this type (currently $50,000 [fifty thousand dollars]), all investment income will be reinvested in principal.
- Gifts received for the Fund will be professionally managed in accordance with policies and guidelines established by the Foundation's Board of Trustees and in accordance with UPMIFA, which Ohio has adopted at Ohio Rev. Stat. § 1715.51 through § 1715.59, and applicable law.
- The Fund may be merged or commingled with other funds held by the Foundation for investment purposes in accordance with its Investment and Spending policies. Funds that are to be distributed from the Fund in a particular year may be retained and expended for the purposes of the Fund in subsequent years, or may be reinvested as a permanent addition to the principal of the Fund, at the discretion of the Foundation.
- Funds are to be distributed on an annual basis.
- The Dean of CCM and the Provost, or their designee(s), shall have the authority to approve expenditures to carry out the purpose of this gift.
- An allocation of pro rata administrative expenses, including investment management/custodial fees and support of the University's fundraising programs to enhance private support, shall be chargeable to the Fund and paid out of income and appreciation of the Fund on an annual basis in accordance with policies established the University for endowment funds (such expenses are currently charged at 1.75% of endowment fund balances).

- The Foundation is authorized to maintain scheduled distributions for the purposes of the Fund and for support of the University's programs to enhance private support. Such distributions are considered prudent so long as the Fund is invested in an institutional investment pool and the aggregate current market value of the pool assets at the time of distribution exceeds the sum of the dollar value of all gifts to the institutional investment pool measured at the time they were made, plus any accumulations of income called for in pool asset gift agreements.
- In the event the purpose of the Donor as described above can no longer be carried out, or is impractical or inappropriate due to changing conditions, the Donor expressly authorizes and empowers the Foundation to utilize the endowment fund for such alternate purposes that may be deemed proper by the Foundation in consultation with the Dean of CCM and Provost adhering as closely as possible to the Donor's original intent as described above.

## Recognition

- The fund shall be known as *"The Norman Treigle Opera Competition Award."*
- The Foundation will provide an annual financial summary report on the Fund to the Donor, so long as it is in existence.
- The Donor agrees to allow the Foundation to publish their name in various publications and press releases in relation to this gift.

For the Donor:

_____    _____ 1/8/16
Andrea Nellis,                                            Date
General Manager and Chief Executive Officer
Managing Director

For the Foundation:

_____    _____ 1/11/16
Rodney M. Grabowski                                  Date
President

Acknowledgement of CCM:

_____          __11 January 2016__

Peter Landgren                                    Date
Dean

**The University of Cincinnati Foundation**

The Foundation represents that it is qualified as a tax-exempt charitable organization (federal identification
number 31-0896555), for which the Donor(s) is (are) or will be entitled to charitable contribution tax
deductions under Internal Revenue Code sections 170(b)(1)(A), 170(c), 2055 and 2522. The donor(s) is(are)
encouraged to consult their own professional tax advisor regarding the tax deductibility of this gift.

# Exhibit B



**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

ERIC T. SCHNEIDERMAN
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CHARITIES BUREAU

Writer's Direct Dial: 212-416-8325
E-mail: rose.firestein@ag.ny.gov

January 11, 2016

**By e-mail and USPS**
Stefanie Roth
Special Counsel, New York City Opera, Inc.
Ewenstein & Roth LLP
5 Columbus Circle, Suite 710
New York, NY 10019

Re:    Proposed modifications to restrictions on the use of the Norman Treigle Endowment
        Fund

Dear Ms. Roth:

        This letter responds to the January 11, 2015 revised notice you sent to the Office of the
Attorney General (the "OAG") pursuant to Not-for-Profit Corporation Law ("N-PCL") § 555(d)
(the "§ 555(d) Notice") stating that New York City Opera, Inc. ("NYCO") intends to release and
modify certain restrictions that donors imposed on the Norman Treigle Endowment Fund.  This
letter constitutes the OAG's notification to NYCO within the meaning of N-PCL § 555(d)(3).

        N-PCL  § 555(d) allows the donee of a charitable gift to modify a donor-imposed
restriction on the management, investment, purpose or use of an institutional fund only if it is
unlawful, impracticable, impossible to achieve or wasteful and only if the revised management,
investment or purpose "uses the property in a manner consistent with the purpose expressed in
the gift instrument."  The donor's purpose is assessed based on the original gift instrument or,
when the gift instrument is no longer available, on the best available evidence of the donors'
intent.

## The Norman Treigle Endowment Fund

        In the case of the Treigle Endowment Fund, it appears that the only available evidence of
the donors' intent is a letter dated March 6, 1976 from John Stamford and Chester Ludgin on
behalf of the Norman Treigle Memorial Fund of the New York City Opera Guild to the members
of the Norman Treigle Memorial Fund Committee of the Guild (the "Purpose Letter").  It
describes the fund-raising efforts that had been and would be made to establish the Normal

Treigle Endowment Fund in memory of Mr. Treigle who was a revered member of the NYCO artistic community.

The Treigle Endowment Fund was established through public solicitations and fundraising events. The Purpose Letter provided that the Treigle Endowment Fund will be used to establish the Norman Treigle Memorial Scholarship in coordination with the College-Conservatory in Cincinnati, which is now the University of Cincinnati College-Conservatory of Music ("CCM"). The Purpose Letter states, "The Norman Treigle Memorial scholarship is open to all American-born singers for study on the graduate level. The Award will provide a $3,000 stipend in addition to a full-tuition scholarship given by the College-Conservatory of Music (stipend paid quarterly). The graduate level studies will be in the professional opera program of the College-Conservatory."

The Purpose Letter further states that, at the conclusion of the graduate course of study, the recipient will be given a stage audition with NYCO and that the funds provided by this endowment fund will be applied to the scholarship recipient's living costs, not tuition. The § 555(d) Notice notes that the $3,000 amount of the stipend portion of the scholarship has not been consistently adhered to. The revised letter agreement between the University of Cincinnati Foundation and NYCO, dated January 8, 2016 and signed on January 8 and 11, 2016 (the "Agreement"), states that CCM, not NYCO, has selected the recipients of the Treigle Scholarships and describes CCM's process for selecting the scholarship winners: the stipend-scholarship was awarded "to students enrolled in the opera program at CCM who are winners of the University of Cincinnati College-Conservatory of Music Opera Scholarship Competition (the 'Competition')."

The Treigle Endowment Fund was established more than 20 years ago and the § 555(d) Notice states that its balance as of October 31, 2015 was $58,814.77. NYCO's notice of its intent to release or modify the restrictions on this gift is, therefore, within the operation of N-PCL § 555(d).

The § 555(d) Notice contains evidence that the Norman Treigle Endowment Fund has been used as intended by the donors and that NYCO's Board of Directors voted to approve the release and modification of the restrictions described in the N-PCL § 555(d) Notice. The Board's authorization of the transfer of the Treigle Endowment Fund is evidenced by the excerpt from the Board's Minutes of November 22, 2014, a copy of which is attached to the § 555(d) Notice.

### The Need to Release or Modify the Restrictions on the Norman Treigle Endowment Fund

NYCO filed a Chapter 11 bankruptcy petition on October 3, 2013. It ceased its charitable activities before that date. As of the date it ceased its charitable activities, it no longer had the authority to use its charitable assets, including charitable donations that were restricted as to use or spending. *E.g., E.g., Matter of Lally*, 112 A.D.3d 1099 (3d Dep't 2013), *Matter of Hummel*, 30 A.D.3d 802 (3d Dep't 2006); *Matter of Kraetzer*, 119 Misc. 2d 436 (Sur. Ct. Kings Count 1983). The Treigle Endowment Fund is restricted as to both spending and use. NYCO is,

-2-

therefore, not able to administer the Norman Treigle Endowment Fund. Although a proposed reorganization plan has been filed with the Bankruptcy Court for the Southern District of New York, the confirmation hearing has not yet been held and the outcome of the bankruptcy case remains uncertain. In light of this uncertainty, it is impracticable and potentially wasteful for NYCO to continue to administer the Norman Treigle Endowment Fund.

The Treigle Endowment Fund, moreover, did not directly benefit NYCO even while it was engaged in its charitable activities. NYCO was merely the conduit through which the scholarship money flowed. CCM, not NYCO, conducted the Competition and selected the winner of the Competition, who then became the winner of the non-tuition scholarship supported by the Treigle Endowment Fund. The proposed reorganization plan for NYCO is based on a very lean budget with little operational staff, much smaller than NYCO's budget and staffing model before it filed the bankruptcy petition. If the Court were to confirm the proposed reorganization plan for NYCO, it would still be wasteful to require the reorganized NYCO to continue to administer the Treigle Endowment Fund essentially for the benefit of CCM and its students.

In light of the small amount remaining in the Treigle Endowment Fund, it would also be wasteful to require it to make $3,000 annual payments as anticipated in the Purpose Letter, rather than to continue the practice of varying the amount of the annual payment as needed and deemed prudent. Even assuming the $3,000 annual payment amount is a restriction and not merely the preference of the authors of the Purpose Letter, it is impracticable.

For these reasons, retaining NYCO as the holder of the Treigle Endowment Fund is impracticable and wasteful.

### NYCO's Proposed Modification and Release of the Restrictions on the Norman Treigle Endowment Fund

NYCO proposes to transfer the Treigle Endowment Fund to CCM which will administer it in accordance with the Agreement between the UC Foundation and NYCO which is attached to the § 555(d) Notice. The § 555(d) Notice provides that CCM will hold this fund as an endowment fund named the "Norman Treigle Opera Competition Award Fund," thus preserving the spending restriction and the donors' intent to honor Norman Treigle. The fund's purpose will remain the same after the transfer – to pay some non-tuition costs of the CCM graduate students in the opera program who have won CCM's Opera Scholarship Competition.

NYCO also seeks to modify certain original terms of the gift made to support the Treigle Endowment Fund. As disclosed in the Purpose Letter, only American-born students were eligible for the Treigle Endowment Fund scholarship. In the OAG's opinion, this is an illegal requirement. UC is an instrumentality of the State of Ohio. Discrimination on the basis of alienage under color of state law violates the Fourteenth Amendment to the United States Constitution absent a compelling state interest that is furthered by the least restrictive means available. *E.g. Bernal v. Fainter*, 467 U.S. 216 (1984); *Dandamudi v. Tisch*, 686 F.3d 66 (2d Cir. 2012). Such an interest has not been shown here.

Additionally, UC receives federal funds and is therefore prohibited from discriminating on the basis of national origin. 42 U.S.C. §§ 2000d, *et seq.* (Title VI of the 1964 Civil Rights Act). It is immaterial if the federal funding that UC receives is awarded to parts of UC other than CCM. 42 U.S.C. § 2000d-4a. *See O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997); *Lopez v. Webster Cent. Schl. Dist.*, 682 F. Supp. 274, 280 (W.D.N.Y. 2010). Finally, the UC Foundation is exempt from federal taxes under § 501(c)(3) of the Internal Revenue Code as an organization operated exclusively for charitable or educational purposes. Discriminating on the basis of race – or national origin or alienage – deprives an organization of its charitable or educational character and makes it ineligible for tax-exempt status. *Jones University v.* IRS, 461 U.S. 574, 595-96 (1983).

The modification that NYCO seeks, to eliminate the American-born requirement for eligibility for the scholarship supported by the Treigle Endowment Fund, is necessary and consistent with the overriding purpose of the gift – to provide a non-tuition supplement to the winners of the scholarship that CCM awards to the Competition's winner.

The Agreement providing for the transfer of the Treigle Endowment Fund to CCM sets out standards CCM will apply in managing, investing and using this Fund for its intended purpose. This "Administration" section of the agreement provides that CCM (or the UC Foundation) will administer this Fund in accordance with Ohio Rev. Stat. §§ 1715.51-1715.59 and all other relevant statutes. Ohio Rev. Stat. §§ 1715.51-1715.59 is Ohio's enactment of the Uniform Prudent Management of Institutional Funds Act ("UPMIFA"). It is the equivalent of New York's enactment of the same uniform statute, N-PCL §§ 551-558. The OAG understands that CCM will manage, invest and use the Treigle Endowment Fund in accordance with Ohio's UPMIFA. Finally, the Agreement does not set a specific amount for each non-tuition scholarship to be paid from the Norman Treigle Opera Competition Award Fund once this fund is transferred to CCM. This modification is reasonable and prudent.

## C.    The Adequacy of the § 555(d) Notice

NYCO's § 555(d) Notice conforms to the statute's requirements. The § 555(d) Notice states that NYCO is unable to notify available donors of the proposed transfer and modification and release of restrictions to the Treigle Endowment Fund. N-PCL § 551(j) (donors are "available" when they "can be identified and located with reasonable efforts"). The Purpose Letter shows that the New York City Opera Guild was the driving force for establishing the Treigle Endowment Fund and raised the funds for the original gifts toward its creation. The § 555(d) Notice states that the New York City Opera Guild no longer exists and that the Norman Treigle Memorial Fund Committee did not exist separately from the New York City Opera Guild.

The § 555(d) Notice contains: an explanation of NYCO's determination that the Treigle Endowment Fund is more than 20 years old, has a value of less than $100,000 and has been used in a manner consistent with the donors' purpose, § 555(d)(2)(A)(i); a description of the requested release or modification, § 555(d)(2)(A)(ii); a copy of the Minutes of the meeting of the NYCO Board of Directors approving the transfer of the Treigle Endowment Fund to CCM,

-4-

§ 555(d)(2)(B); and a description of the proposed use and transferee of the Treigle Endowment Fund, § 555(d)(2)(C).

For the foregoing reasons, the Office of the Attorney General of the State of New York does not object to the modification and release of the restrictions on the Norman Treigle Endowment Fund outlined in the § 555(d) Notice dated January 11, 2016.

Very truly yours,

Rose Firestein
Assistant Attorney General

# **<u>Exhibit C</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| New York City Opera, Inc. | Case No. 13-13240 (SHL) |
| Debtor. | |

### ORDER AUTHORIZING AND APPROVING CERTAIN AGREEMENTS

This matter having been brought before the Court by the above-captioned debtor and debtor in possession (the "**Debtor**") upon the *Motion of the Debtor for Entry of an Order Authorizing and Approving Certain Agreements* (the "**Motion**");[1] and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Standing Order of Reference* dated February 1, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors; and it appearing that notice of the Motion is sufficient under the circumstances; and any objections to the requested relief having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Letter Agreement by and between TIAA-CREF Life Insurance Company and the Debtor for the issuance of certain Single Premium Immediate Annuity Contracts (the "**TIAA Life Letter Agreement**") is hereby approved.

3.      In accordance with and subject to the letter of no objection of the New York State Attorney General dated January 11, 2016, the revised Gift Agreement between the

---

[1]      Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Motion

Debtor and the College-Conservatory of Music at the University of Cincinnati ("**C-CM**") for the transfer of the Debtor's Norman Treigle Endowment Fund (the "**Revised Gift Agreement**" and together with the TIAA Life Letter Agreement, the "**Agreements**") is hereby approved.

        4.      The Debtor is authorized, empowered and directed to perform all of its obligations under the Agreements, and execute all documents necessary to effectuate the Agreements in accordance with this Order.

        5.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the local rules of this Court are satisfied by such notice.

        6.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

        7.      The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: January ___, 2016

                                         _____
                                         HONORABLE SEAN H. LANE
                                       UNITED STATES BANKRUPTCY JUDGE

# **Exhibit D**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| New York City Opera, Inc. | Case No. 13-13240 (SHL) |
| Debtor. | |

## ORDER AUTHORIZING AND APPROVING CERTAIN AGREEMENTS

This matter having been brought before the Court by the above-captioned debtor and debtor in possession (the "**Debtor**") upon the *Motion of the Debtor for Entry of an Order Authorizing and Approving Certain Agreements* (the "**Motion**");[1] and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Standing Order of Reference* dated February 1, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors; and it appearing that notice of the Motion is sufficient under the circumstances; and any objections to the requested relief having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

~~2. The Agreements are hereby approved.~~

2.      The Letter Agreement by and between TIAA-CREF Life Insurance Company and the Debtor for the issuance of certain Single Premium Immediate Annuity Contracts (the "**TIAA Life Letter Agreement**") is hereby approved.

---

[1]      Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Motion

22341/2
01/11/2016 34020444.3

13-13240-shl    Doc 341    Filed 01/11/16    Entered 01/11/16 15:27:27    Main Document
Pg 19 of 20


3.      In accordance with and subject to the letter of no objection of the New York State Attorney General dated January 11, 2016, the revised Gift Agreement between the Debtor and the College-Conservatory of Music at the University of Cincinnati ("**C-CM**") for the transfer of the Debtor's Norman Treigle Endowment Fund (the "**Revised Gift Agreement**" and together with the TIAA Life Letter Agreement, the "**Agreements**") is hereby approved.

4.      ~~3.~~ The Debtor is authorized, empowered and directed to perform all of its obligations under the Agreements, and execute all documents necessary to effectuate the Agreements in accordance with this Order.

5.      ~~4.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of the local rules of this Court are satisfied by such notice.

6.      ~~5.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      ~~6.~~ The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: January ___, 2016

 

 

                     _____
                     HONORABLE SEAN H. LANE
                     UNITED STATES BANKRUPTCY JUDGE

-2-

| Summary report: | |
|---|---|
| **Litéra® Change-Pro 7.5.0.145 Document comparison done on 1/11/2016 11:18:21 AM** | |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:**iw://ROS-IWODMSCLSTR/dbiwov/34324336/1 | |
| **Modified DMS:** iw://ROS-IWODMSCLSTR/dbiwov/34324336/2 | |
| **Changes:** | |
| Add | 8 |
| Delete | 7 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 15 |